UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

BENJAMIN CASPER, KATHERINE
EVANS, AND ROBERT KOULISH,

Plaintiffs,

vs.

U.S. DEPARTMENT OF HOMELAND
SECURITY and U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT,

Defendants.

Civil File No. _____

**COMPLAINT**

---

Plaintiffs Benjamin Casper, Katherine Evans, and Robert Koulish (together

"Requesters"), for their Complaint against Defendants U.S. Department of Homeland Security

("DHS") and U.S. Immigration and Customs Enforcement ("ICE"), state and allege as follows:

**INTRODUCTION**

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, seeking disclosure of records concerning ICE's use of its "risk classification assessment"

tool ("RCA") and the components that compose the RCA.  Requesters seek declaratory,

injunctive, and other appropriate relief with respect to ICE's unlawful withholding of these

records.

2.      In 2013, ICE completed its nationwide deployment of the automated RCA.

The RCA contains criteria to guide ICE's decision as to whether a noncitizen should be detained

or released.  If detained, the RCA suggests the appropriate custody classification level, (*e.g.*,

low-, low/medium-, medium/high-, or high-security).

3.       Information regarding ICE's use of the RCA and its components is of great relevance to the public debate concerning immigration detention practices.  Information about the RCA, however, is difficult to ascertain.  As a result, Requesters submitted three FOIA requests to ICE in October 2014.

4.       Requesters plan to use produced information for future scholarly research to be publicized through a variety of publicly available media.  Requesters are not planning to use the produced information for any commercial purpose.

5.        The FOIA process for all three requests has been riddled with errors and inefficiencies.  For example, ICE responded to Requesters' first request by stating that it had no responsive documents to several of the categories of documents in that request.  Yet, ICE had previously produced multiple responsive documents to a different requester.

6.       To date, ICE has failed to produce a single responsive document to Requesters in response to two of its requests.  For the remaining request, ICE has produced one compilation spreadsheet that is heavily redacted purportedly pursuant to several inapplicable FOIA exemptions.

7.       Requesters have been forced to file six administrative appeals.  These appeals and ICE's refusal to produce responsive documents even after remand have resulted in significant delay.

8.       In this lawsuit, Requesters challenge the substantive responses to all three of their FOIA requests, and the denial of a fee waiver as to one of the FOIA requests:

a)   ICE responded to two of the requests by stating that it has no responsive documents, despite the fact that Requesters sought certain ICE-created documents known to exist, and identified them by date and title.  After

Requesters appealed, DHS remanded both requests to ICE in April 2015 for "re-tasking" and further searches to locate additional documents.  ICE has failed to produce any documents in response to either request, and has not informed Requesters of the results of any further searches.

b) In response to the third request, ICE has only produced one heavily-redacted compilation spreadsheet.  Requesters challenged these redactions as improper.  In July 2015, DHS upheld ICE's non-production of underlying documents and certain of ICE's redactions, but ruled that ICE had improperly redacted internal agency case numbers from the spreadsheets.  DHS also encouraged Requesters to contact ICE to discuss modification of the search that would allow for ICE to produce more information.  However, when Requesters contacted ICE (specifically referencing DHS's recommendation), ICE failed to respond.  In addition, ICE has failed to produce a revised copy of the spreadsheet that provides the internal agency case numbers.

c) ICE erroneously denied Requesters' request for a fee waiver in connection with the third request, and DHS erroneously affirmed that denial.  (Defendants eventually granted fee waivers as to the other two FOIA Requests.)

9.      ICE's failure to turn over requested records violates FOIA and is impeding Requesters' efforts to educate the public regarding ICE's use of the RCA in noncitizen detention decisions and to understand the RCA's role in making these life-altering decisions.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B), 28 U.S.C. § 1331, and 28 U.S.C. § 1346.  This Court has jurisdiction to grant declaratory and further necessary or proper relief pursuant to 28 U.S.C. §§ 2201-02 and Federal Rules of Civil Procedure 57 and 65.

11.     Venue in this district is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e), because Requesters Benjamin Casper and Katherine Evans reside in this district.

## THE PARTIES

12.     Plaintiff Benjamin Casper is a Professor at the University of Minnesota Law School.  Professor Casper teaches the Federal Immigration Litigation Clinic, which engages students in litigation on behalf of immigrants and refugees.  He is also Director of the Center for New Americans where he works to expand legal services for noncitizens.  Professor Casper has more than 16 years of experience in immigration litigation and serves on the amicus curiae committee of the American Immigration Lawyers Association.

13.     Professor Casper resides in the State of Minnesota, within the federal judicial District of Minnesota.  His primary personal residence is in the City of Northfield in the State of Minnesota, and he is domiciled in Minnesota.

14.     Plaintiff Katherine Evans is a teaching fellow at the University of Minnesota Law School.  She co-teaches the Federal Immigration Clinic and works at the Center for New Americans with Professor Casper.  Evans is a member of the American Immigration Lawyers Association and serves as the federal court liaison for the Minnesota-Dakotas chapter.

15.     Plaintiff Evans resides in the State of Minnesota, within the federal judicial District of Minnesota.  Her primary personal residence is in the City of Minneapolis in the State of Minnesota, and she is domiciled in Minnesota.

16.     Plaintiff Professor Robert Koulish is a political scientist at the University of Maryland.  He serves as Director of the MLAW program, an undergraduate program for students interested in law, justice, and society.  He is also a Joel J. Feller Research Professor of Government and Politics.  His current research focuses on risk and immigration detention.

17.     Professor Koulish resides in the City of Baltimore in the State of Maryland.

18.     Defendant DHS is a Department of the Executive Branch of the United States Government and is an agency within the meaning of 5 U.S.C. § 552(f).  DHS is responsible for enforcing federal immigration laws, and for deciding administrative appeals of FOIA responses by ICE.

19.     Defendant ICE is a component of DHS and is an agency within the meaning of 5 U.S.C. § 552(f).  ICE is the principal investigative arm of DHS and is charged with criminal and civil enforcement of the immigration laws.  Among ICE's primary duties are the investigations of persons suspected to have violated the immigration laws and the apprehension, detention, and removal of noncitizens who are unlawfully present in the United States.

20.     ICE has possession and control over the records sought by Requesters.

## PLAINTIFFS' FOIA REQUESTS

I.     **FOIA REQUEST FOR RCA METHODOLOGY AND TRAINING**

    A.     **Requesters' Methodology FOIA Request and ICE Response**

21.     On October 15, 2014, Requesters submitted a FOIA request ("Methodology Request") to ICE seeking records regarding ICE's use of the RCA and the components that compose the RCA.  Among other records, the request specifically sought "[a]ny and all

documents . . . discussing, mentioning, relating to, reflecting or describing the instructions, guidance, or training to DHS officers or contractors as to implementation of RCA, use of the RCA tool, or collection of information through a 'structured interview process,'" and providing a non-exhaustive list of example documents.  A copy of the October 15, 2014 letter is attached as Exhibit 1.

22.     Requesters asked that ICE waive all fees associated with the Methodology Request, because disclosure of the records "is likely to contribute significantly to public understanding of the operations or activities of the government," and provided supporting facts. *See* Exhibit 1 (citing 5 U.S.C. § 552(a)(4)(A)(iii)).

23.     Although ICE initially denied Requesters' fee waiver request, DHS ultimately granted Requesters' fee waiver request.  Specifically, DHS ruled that Requesters had "adequately established that [they] have no commercial interest in the information they seek from ICE." Copies of the October 21, 2014 fee waiver denial by ICE and the July 24, 2015 decision by DHS granting a fee waiver are attached as Exhibits 2 and 3.

24.     On November 7, 2014, ICE sent a letter informing Requesters that ICE conducted a search of the ICE Office of Enforcement and Removal Operations and the ICE Office of Detention Policy and Planning and that no records responsive to the Methodology Request were found.  A copy of the November 7, 2014 letter is attached as Exhibit 4.

**B.      Administrative Appeal of "No Records" Response**

25.     On January 5, 2015, Requesters filed an administrative appeal of ICE's final "no records" response to the Methodology Request via U.S. Postal Service Overnight and Federal Express Overnight.  This letter was delivered to DHS on January 6, 2015 by Federal Express.  Although the U.S. Postal Service noted that the package was "available for pick-up"

mid-day on January 6, 2015, it was not delivered until mid-day on January 7, 2015. A copy of the January 5, 2015 letter and delivery confirmation is attached as Exhibit 5.

26.     In their administrative appeal, Requesters contended that the search was inadequate, in part because it "is simply implausible that the very agency that created, implemented and currently uses the RCA tool has no documents related to the components, training, implementation and application of the tool." Requesters also specifically noted that ICE claimed to have no responsive records, "despite the fact that it produced numerous documents to a different FOIA requester," including documents Requesters had specifically identified by title and date in the request. Further, Requesters challenged the adequacy of the search because certain ICE offices likely to have responsive documents – including the Office of State & Local Coordination, the Office of Management & Administration, the Office of the Principal Legal Advisor, and ICE Headquarters – were not searched.

27.     On January 30, 2015, DHS responded to Requesters by erroneously asserting that the appeal was not timely received, and closed the administrative appeal without a decision. A copy of the January 30, 2015 letter is attached as Exhibit 6.

28.     After Requesters contacted DHS twice noting that the appeal was timely delivered, and providing proof of delivery, DHS reopened the appeal and issued a decision. Copies of Requesters' February 2, 2015 and March 24, 2015 letters are attached as Exhibits 7 and 8.

29.     In its decision, DHS informed Requesters that ICE had determined that "new search(s) or, modifications to the existing search(s), could be made" (sic) and that it was remanding the appeal to ICE FOIA for re-tasking to obtain any responsive documents. A copy of the April 23, 2015 letter is attached as Exhibit 9.

30.     To date, ICE has failed to produce to Requesters a single document responsive to the Methodology Request.

**C.     Conclusion**

31.     Requesters have exhausted their administrative remedies in connection with the Methodology Request, and/or those administrative remedies are deemed exhausted.  *See* 5 U.S.C. § 552(a)(6)(C).

32.     ICE has failed to make reasonable efforts to search for records responsive to the Methodology Request.

33.     ICE has violated the applicable statutory time limit for the processing of FOIA requests.

**II.     FOIA REQUEST FOR THE "SUBJECT TO MANDATORY DETENTION" TOOL**

**A.     Requesters' Mandatory Detention Tool FOIA Request and ICE Response**

34.     On October 15, 2014, Requesters submitted a FOIA request ("Mandatory Detention Tool Request") to ICE seeking records regarding ICE's use of the mandatory detention tool within the RCA.  For example, the request specifically sought "[a]ny and all documents discussing, mentioning, relating to, reflecting, or describing the business rules, criteria, protocols, scoring, 'structured fields' or 'list of values' governing the 'Subject to Mandatory Detention' tool 'Version 2.0,' as well as any earlier or later versions employed by the RCA."  A copy of the October 15, 2014 letter is attached as Exhibit 10.

35.     Requesters asked that ICE waive all fees associated with the Mandatory Detention Tool Request because disclosure of the records "is likely to contribute significantly to public understanding of the operations or activities of the government," and provided supporting facts.  *See* Exhibit 10 (citing 5 U.S.C. § 552(a)(4)(A)(iii)).

8

36.     Although ICE initially denied Requesters' fee waiver request, DHS ultimately granted Requesters' fee waiver request.  Specifically, DHS ruled that Requesters had "established that any potential commercial interest is outweighed by the public interest and that the primary interest in disclosure is the public interest."  Copies of the October 21, 2014 fee waiver denial by ICE and the July 23, 2015 decision by DHS granting a fee waiver are attached as Exhibits 11 and 12.

37.     On November 7, 2014, ICE sent Requesters a letter stating that ICE conducted a search of the ICE Office of Enforcement and Removal Operations and the Office of Detention Policy and Planning and that no records responsive to the Mandatory Detention Tool Request were found.  A copy of the November 7, 2014 letter is attached as Exhibit 13.

**B.      Administrative Appeal of "No Records" Response**

38.     On January 5, 2015, Requesters filed an administrative appeal of ICE's final "no records" response to the Mandatory Detention Tool Request via U.S. Postal Service Overnight and Federal Express Overnight.  This letter was delivered to DHS on January 6, 2015 by Federal Express.  Although the U.S. Postal Service noted that the package was "available for pick-up" mid-day on January 6, 2015, it was not delivered until mid-day on January 7, 2015.  Copies of the January 5, 2015 letter and delivery confirmation are attached as Exhibit 14.

39.     In their administrative appeal, Requesters contended that the search was inadequate, in part because it "is simply implausible that the very agency that created, implemented and currently uses the RCA tool has no documents related to the components, training, implementation and application of the tool."  Requesters also specifically noted that ICE claimed to have no responsive records, "despite the fact that it produced numerous documents to a different FOIA requester," including documents Requesters had specifically identified by title and date in the request.  Further, Requesters challenged the adequacy of the

search because certain ICE offices likely to have responsive documents – including the Office of State & Local Coordination, the Office of Management & Administration, the Office of the Principal Legal Advisor, and ICE Headquarters – were not searched.

40.     On January 30, 2015, DHS responded to Requesters by erroneously asserting that the appeal was not timely received, and closed the administrative appeal without a decision. A copy of the January 30, 2015 letter is attached as Exhibit 15.

41.     After Requesters contacted DHS twice noting that the appeal was timely delivered, and providing proof of delivery, DHS reopened the appeal and issued a decision. Copies of Requesters' February 2, 2015 and March 24, 2015 letters are attached as Exhibits 16 and 8.

42.     In its decision, DHS informed Requesters that ICE had determined that "new search(s) or, modifications to the existing search(s), could be made" (sic) and that it was remanding the appeal to ICE FOIA for re-tasking to obtain any responsive documents.  A copy of the April 23, 2015 letter is attached as Exhibit 17.

43.     To date, ICE has failed to produce a single document responsive to the Mandatory Detention Tool Request.

**C.     <u>Conclusion</u>**

44.     Requesters have exhausted their administrative remedies in connection with the Mandatory Detention Tool Request and/or those administrative remedies are deemed exhausted.  *See* 5 U.S.C. § 552(a)(6)(C).

45.     ICE has failed to make reasonable efforts to search for records responsive to the Mandatory Detention Tool Request.

46.     ICE has violated the applicable statutory time limit for the processing of FOIA requests.

III.   **FOIA REQUEST FOR RCA DETAILED SUMMARIES FROM ST. PAUL**

    A.   **Requesters' St. Paul Field Office FOIA Request and ICE Response**

47.   On October 15, 2014, Requesters submitted a FOIA request ("St. Paul Field Office Request") to ICE seeking "copies of RCA Detailed Summaries for ICE arrestees in the St. Paul, Minnesota Field Office area of responsibility."  A copy of the October 15, 2014 letter is attached as Exhibit 18.

48.   Requesters asked that ICE waive all fees associated with the St. Paul Field Office Request, because disclosure of the records "contributes significantly to public understanding of immigration detention policies," and provided supporting facts.  *See* Exhibit 18 (citing 5 U.S.C. § 552(a)(4)(A)(iii)).

49.   Requesters received an email dated October 21, 2014 from ICE denying their fee waiver request.  Specifically, ICE concluded that Requesters' fee waiver request was deficient because it did not satisfy factors 4, 5, and 6 of the DHS FOIA Regulations, 6 C.F.R. § 5.11(k)(2).  A copy of the October 21, 2014 email is attached as Exhibit 19.

50.   ICE sent the final response to the St. Paul Field Office Request in a letter dated April 9, 2015.  ICE informed Requesters that one Microsoft Excel spreadsheet was responsive to the request, but that portions of the document would be redacted under FOIA exemptions 3, 6, 7(c), and 7(e).  ICE asserted Exemption 3 on behalf of the Child Victims' and Child Witnesses' Rights statute, and exemptions 6 and 7(c) to justify non-disclosure of names and other information regarding DHS employees.  Finally, Exemption 7(e) was cited as preventing the disclosure of internal agency case numbers.  A copy of the April 9, 2015 letter is attached as Exhibit 20.

51.     The spreadsheet ICE produced in response to the St. Paul Field Office Request included only 31 data fields, although ICE has information for significantly more data fields than the 31 provided.

52.     At least some of these data fields contain public information that is not exempt from disclosure under FOIA.

53.     Requesters know this to be the case, because ICE previously produced data for a limited number of individuals in RCA Risk Summary format (in response to a previous FOIA request) that contained significantly more data fields than the spreadsheet received in response to this request.   Specifically, ICE's response to the St. Paul Field Office Request failed to provide available fields, including, but not limited to, country of birth, sex, age, processing disposition, recommendation and decision results, special vulnerabilities, mandatory detention per statutes and allegations, risk to public safety, disciplinary infraction information evaluation criteria, and risk of flight.

**B.     Administrative Appeal of Denial of Fee Waiver Request**

54.     On December 18, 2014, in response to ICE's denial of Requesters' fee, Requesters filed an administrative appeal via U.S. Postal Service Overnight and Federal Express Overnight.  This letter was delivered to DHS on December 19, 2014 by both the U.S. Postal Service and Federal Express.  Copies of the appeal letter and tracking confirmation are attached as Exhibit 21.

55.     On February 3, 2015, DHS responded to Requesters by erroneously asserting that the appeal was not timely received, and closed the administrative appeal without a decision. A copy of the February 3, 2015 letter is attached as Exhibit 22.

56.     After Requesters contacted DHS three times to point out that the appeal was timely delivered, and providing proof of delivery, DHS reopened the appeal and issued a

decision.   Copies of Requesters' January 7, 2015, January 23, 2015 and March 24, 2015 letters

are attached as Exhibits 23, 24 and 25.

57.     On July 7, 2015, DHS reconsidered Requesters' fee waiver appeal in the same

letter in which it decided Requesters' appeal of ICE's response and redactions.   DHS determined

that Requesters failed to meet factors 2 and 4 of 6 C.F.R. § 5.11(k)(2)-(3).   Consequently, DHS

denied the fee waiver.   A copy of the July 7, 2015 letter is attached as Exhibit 26.

### C.     Administrative Appeal of ICE's Exemption Response

58.     On June 4, 2015, Requesters filed an administrative appeal via U.S. Postal

Service Overnight and Federal Express Overnight, challenging the withholding of information

and the denial of the fee waiver.   Requesters contended that FOIA exemptions 6, 7(c), and 7(e)

do not apply.   A copy of the June 4, 2015 letter is attached as Exhibit 27.

59.     DHS responded to Requesters' administrative appeal via letter dated July 7,

2015.   The letter stated that information was properly withheld under FOIA Exemption 7(e), but

that anonymized identity numbers should not have been redacted under Exemptions 6 and 7(c).

The agency remanded for reprocessing on that issue.   DHS also ruled that the St. Paul Field

Office Request was unreasonably burdensome, asserting that to search for RCA Detailed

Summaries would take approximately 1,500 hours and that it is not possible to search for

summaries by the location of the immigration court.   DHS concluded that the spreadsheet was

the only information that could be produced in response to the broad request and therefore

confirmed the adequacy of the search.   A copy of the July 7, 2015 letter is attached as Exhibit 28.

60.     The July 7, 2015 letter also stated:  "Without narrowing the scope of your

request and potentially tailoring ICE's queries, currently, the only additional RCA information

which could be produced in spreadsheet form is limited to . . . information that would be

withheld in full under FOIA Exemptions (b)(6) and (b)(7)(C) . . . .   However, ICE understands

that you have initiated a conversation with ICE FOIA via email dated June 24, 2015, regarding

possible modification or narrowing of your original FOIA request.  In light of the agency's

decision, we welcome the opportunity to work with you in narrowing the scope of your original

request.  Please feel free to contact the ICE FOIA Office in this effort."

61.     On October 20, 2015, and in response to this invitation to work together on

modification of the request and ICE search, Requester Koulish sent an email to ICE describing

the type of data that would be most useful to Requesters' research and specifically referencing

the FOIA case number for the St. Paul Field Office Request (2015-ICFO-02993).  A copy of the

October 20, 2015 email is attached as Exhibit 29.

62.     Instead of working with Requesters to tailor the search, as described in the

July appeal decision, ICE treated this correspondence as a new FOIA request.  ICE responded by

email on November 12, 2015 and refused to provide any information, alleging that the October

20 email was "too broad in scope, . . . not specifically identify[ing] the records which you are

seeking, or only pos[ing] questions to the agency."  ICE refused to work with Requesters, noting

that "[t]he FOIA does not require an agency to . . . answer questions posed by requesters, or

attempt to interpret a request that does not identify specific records."  A copy of the November

12, 2015 email is attached as Exhibit 30.

63.     On November 19, 2015, Requester Koulish sent an email to ICE, reiterating

that the October 20, 2015 email was not a new FOIA request, but was Requesters' attempt to

work with the agency to narrow the scope of the request and tailor ICE's searches, as

recommended by DHS in the July 2015 appeal decision.  Requester Koulish noted that he

believes these data fields exist, based on ICE's previous responses to other FOIA requests and

statements made by public officials describing the tool.  Requester Koulish stated:  "We would

like to work with you on obtaining this data in an electronic format, even if that format is different than a single spreadsheet.  For example, we would be willing to discuss receiving data in multiple spreadsheets or in some other electronic format.  We would also be willing to discuss narrowing the parameters for the subjects at issue, if that would allow ICE to export the data. We request clarification on how 'tailoring ICE's queries' could result in more data."  A copy of the November 19, 2015 email is attached as Exhibit 31.

64.     ICE did not respond to Requester Koulish's November 19, 2015 email.

65.     To date, ICE has not produced any documents responsive to the St. Paul Field Office Request other than the heavily redacted spreadsheet produced prior to appeal.  ICE has failed to re-produce the spreadsheet with the data DHS determined was improperly withheld.

**D.     Conclusion**

66.     Requesters have exhausted their administrative remedies in connection with the St. Paul Field Office Request and/or those administrative remedies are deemed exhausted. *See* 5 U.S.C. § 552(a)(6)(C).

67.     ICE has wrongfully withheld agency records under improper FOIA exemptions and has failed to make reasonable efforts to search for records responsive to the St. Paul Field Office Request.

68.     ICE has violated the applicable statutory time limit for the processing of FOIA requests.

**REQUESTERS' ENTITLEMENT TO A WAIVER OF PROCESSING FEES**

69.     Requesters are entitled to a waiver of processing fees because the disclosure of the information sought through their FOIA requests is in the public interest.  The disclosed records will contribute to public understanding of immigration detention and enforcement policies.

70.    The requested information regarding the RCA and ICE's use of the RCA is currently not publicly available.

71.    The dissemination of these records will therefore significantly advance public understanding of ICE's assessment of the risk posed by released and non-released detainees. This information will allow the public, interest groups, and lawmakers to more accurately evaluate the costs and benefits of detention.

72.    Requesters have the capacity and intent to widely disseminate the requested information to the public.  Requesters will present the requested information to a reasonably broad audience to enhance public understanding.  Research results will be made publicly available through the Center for New Americans' public website.  Information will also be disseminated through publicly available academic articles, reports, op-eds, symposia, and conferences.  Requesters also plan to respond, free of charge, to inquiries from the press, scholars, public interest groups, and other members of the public.

73.    Requesters do not seek the requested information for commercial gain, but rather for the purpose of educating the public.

## COUNT I
## Violation of Freedom of Information Act Against ICE
## for Failure to Disclose Responsive Records to the Methodology Request

74.    Requesters repeat, allege and incorporate the allegations in paragraphs 1 through 73 above as if fully set forth herein.

75.    Requesters submitted the Methodology FOIA Request to ICE on October 15, 2014 seeking documents related to RCA methodology and training.

76.    On November 7, 2014, ICE sent a letter informing Requesters that ICE conducted a search of the ICE Office of Enforcement and Removal Operations and the ICE Office of Detention Policy and Planning and that no responsive records were found.

77.     On January 6, 2015, Requesters filed an appeal with DHS.  On April 23, 2015, DHS issued a ruling stating that ICE had determined that "new search(s) or, modifications to the existing search(s), could be made" (sic) and that DHS was remanding the appeal to ICE FOIA for re-tasking to obtain any responsive documents.

78.     To date, ICE has failed to produce a single responsive document to Requesters.

79.     Since the case was remanded in April 2015, ICE has not provided any further response to Requesters, indicating that records were or were not found by conducting the new searches.

80.     ICE is obligated under 5 U.S.C. § 552(a)(3) to conduct a reasonable search for and to produce records responsive to Requesters' Methodology FOIA Request.  Requesters have a legal right to obtain such records, and no legal basis exists for ICE's failure to search for and disclose them.

81.     ICE's failure to conduct a reasonable search for records responsive to Requesters' Methodology FOIA Request violates 5 U.S.C. §§ 552(a)(3)(A) and (a)(3)(C), as well as the regulations promulgated thereunder.

82.     ICE's failure to timely respond to Requesters' Methodology FOIA Request violates 5 U.S.C. § 552(a)(6)(A), as well as the regulations promulgated thereunder.

83.     Requesters have exhausted their administrative remedies and/or those administrative remedies are deemed exhausted.  *See* 5 U.S.C. § 552(a)(6)(C).

**COUNT II**
**Violation of Freedom of Information Act Against ICE**
**for Failure to Disclose Responsive Records to the Mandatory Detention Tool Request**

84.     Requesters repeat, allege and incorporate the allegations in paragraphs 1 through 73 above as if fully set forth herein.

85.     Requesters submitted the Mandatory Detention Tool FOIA Request to ICE on October 15, 2014 seeking documents related to the Subject to Mandatory Detention tool.

86.     On November 7, 2014, ICE sent a letter informing Requesters that ICE conducted a search of the ICE Office of Enforcement and Removal Operations and the ICE Office of Detention Policy and Planning and that no responsive records were found.

87.     On January 6, 2015, Requesters filed an appeal with DHS.  On April 23, 2015, DHS issued a ruling stating that ICE had determined that "new search(s) or, modifications to the existing search(s), could be made" (sic) and that DHS was remanding the appeal to ICE FOIA for re-tasking to obtain any responsive documents.

88.     To date, ICE has failed to produce a single responsive document to Requesters.

89.     Since the case was remanded in April 2015, ICE has not provided any further response to Requesters, indicating that records were or were not found by conducting the new searches.

90.     ICE is obligated under 5 U.S.C. § 552(a)(3) to conduct a reasonable search for and to produce records responsive to Requesters' Mandatory Detention Tool FOIA Request. Requesters have a legal right to obtain such records, and no legal basis exists for ICE's failure to search for and disclose them.

91.     ICE's failure to conduct a reasonable search for records responsive to Requesters' Mandatory Detention Tool FOIA Request violates 5 U.S.C. §§ 552(a)(3)(A) and (a)(3)(C), as well as the regulations promulgated thereunder.

92.     ICE's failure to timely respond to Requesters' Mandatory Detention Tool FOIA Request violates 5 U.S.C. § 552(a)(6)(A), as well as the regulations promulgated thereunder.

93.     Requesters have exhausted their administrative remedies and/or those administrative remedies are deemed exhausted.  *See* 5 U.S.C. § 552(a)(6)(C).

**COUNT III**
**Violation of Freedom of Information Act Against ICE**
**for Failure to Disclose Responsive Records to the St. Paul Field Office Request**

94.     Requesters repeat, allege and incorporate the allegations in paragraphs 1 through 73 above as if fully set forth herein.

95.     Requesters submitted the St. Paul Field Office FOIA Request to ICE on October 15, 2014 seeking RCA detailed summaries for the St. Paul, Minnesota field office.

96.     On April 9, 2015, ICE sent a letter identifying one Microsoft Excel spreadsheet as responsive to the St. Paul Field Office Request.  ICE, purportedly relying on FOIA exemptions, redacted certain information from the spreadsheet, including information about minor victims and witnesses, DHS employees, and the internal agency case numbers.

97.     On June 5, 2015, Requesters filed an appeal with DHS.  On July 7, 2015, DHS issued a ruling upholding the adequacy of the search and ICE's application of certain exemptions, but also finding that ICE improperly redacted internal agency case numbers.

98.     To date, ICE has failed to produce a single responsive document to Requesters other than the one redacted spreadsheet.  ICE has failed to produce a copy of the spreadsheet that shows internal agency case numbers.

99.     ICE is obligated under 5 U.S.C. § 552(a)(3) to conduct a reasonable search for and to produce records responsive to Requesters' St. Paul Field Office FOIA Request.

Requesters have a legal right to obtain such records, and no legal basis exists for ICE's failure to search for and disclose them.

100.    ICE's failure to conduct a reasonable search for records responsive to Requesters' St. Paul Field Office FOIA Request violates 5 U.S.C. §§ 552(a)(3)(A) and (a)(3)(C), as well as the regulations promulgated thereunder.

101.    ICE's failure to timely respond to Requesters' St. Paul Field Office FOIA Request violates 5 U.S.C. § 552(a)(6)(A), as well as the regulations promulgated thereunder.

102.    Requesters have exhausted their administrative remedies and/or those administrative remedies are deemed exhausted.  *See* 5 U.S.C. § 552(a)(6)(C).

**COUNT IV**
**Violation of the Freedom of Information Act Against ICE and DHS**
**for Failure to Grant Requesters' Public Interest Fee Waiver Request for the St. Paul Field**
**Office Request**

103.    Requesters repeat, allege and incorporate the allegations in paragraphs 1 through 73 above as if fully set forth herein.

104.    On October 15, 2014, Requesters submitted the St. Paul Field Office FOIA Request, along with a request that ICE waive all associated fees because disclosure of the records "contributes significantly to public understanding of immigration detention policies." Requesters provided factual information to support the fee waiver request.

105.    Requesters are entitled to a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and the regulations promulgated thereunder.

106.    On October 21, 2014, ICE denied Requesters' fee waiver request.

107.    On December 19, 2014, Requesters appealed the fee waiver denial to DHS. On July 7, 2015, DHS affirmed the fee waiver denial.

108.     Defendants' denial of Requesters' public interest fee waiver for the St. Paul Field Office Request violates 5 U.S.C. § 552(a)(4)(A)(iii) and the regulations promulgated thereunder.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Benjamin Casper, Katherine Evans, and Robert Koulish request that judgment be entered in its favor against Defendants ICE and DHS, and that the Court:

(a)     Declare that ICE's failure to respond to Plaintiffs' FOIA requests within the statutory time limit, its failure to search for records responsive to Plaintiffs' requests, and its failure to disclose such responsive records violate FOIA;

(b)     Order ICE and any of its departments, components, other organizational structures, agents, or other persons acting by, through, for, or on behalf of ICE to conduct a prompt, reasonable search for records responsive to Requesters' FOIA requests;

(c)     Enjoin ICE and any of its departments, components, other organizational structures, agents, or other persons acting by, through, for, or on behalf of ICE from withholding records responsive to Requesters' FOIA requests and order it to promptly produce the same;

(d)     Order Defendants to waive the fees associated with Plaintiffs' FOIA requests;

(e)     Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E) and 28 U.S.C. § 2412; and

(f)     Grant all other such relief to Plaintiffs as the Court deems just and equitable.


Dated:  February 16, 2016                    DORSEY & WHITNEY LLP


                                             By  s/ Emily E. Mawer
                                                 Colin Wicker (#0340030)
                                                 wicker.colin@dorsey.com
                                                 Shannon L. Bjorklund (#0389932)
                                                 bjorklund.shannon@dorsey.com
                                                 Vanessa J. Szalapski (#0396739)
                                                 szalapski.vanessa@dorsey.com
                                                 Emily E. Mawer (#0396329)
                                                 mawer.emily@dorsey.com
                                             Suite 1500, 50 South Sixth Street
                                             Minneapolis, MN 55402-1498
                                             Telephone:  (612) 340-2600
                                             Facsimile:  (612) 340-2868

                                             ***Attorneys for Plaintiffs***