# Exhibit 1

UNIVERSITY OF MINNESOTA

*Twin Cities Campus*

*Law Clinics*
*Law School*

*190 Walter F. Mondale Hall*
*229 19th Avenue South*
*Minneapolis, MN 55455*

*Office: 612-625-5515*
*Fax: 612-624-5771*

October 15, 2014

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street SW, Stop 5009
Washington, D.C. 20536-5009

Re: Freedom of Information Act Request

To Whom It May Concern:

This is a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by Benjamin Casper and Teaching Fellow Katherine Evans of the University of Minnesota Law School's Center for New Americans, and Professor Robert Koulish of the University of Maryland (collectively, "the Requestors").

The purpose of this request is to obtain information, for the public and for educational research, regarding Immigration and Customs Enforcement's ("ICE's") use of its "risk classification assessment" ("RCA") tool and the components that comprise the RCA.

**Background**

On March 19, 2013, ICE Director John Morton confirmed to Congress that ICE had completed a nationwide deployment of its new automated "Risk Classification Assessment" tool.[1] As Director Morton stated, this RCA contains objective criteria to guide decision making regarding whether a noncitizen should be detained or released, and if detained, the noncitizen's appropriate custody classification level.[2] RCA "also requires ICE officers to determine whether there is any special vulnerability that may impact custody and classification determinations."[3]

This nationwide deployment of RCA represents the culmination of a nearly four-year-long project by ICE. Morton and Department of Homeland Security ("DHS") Secretary Janet

---

[1] *Written testimony of U.S. Immigration and Customs Enforcement Director John Morton for a House Committee on the Judiciary hearing titled: "The release of criminal detainees by U.S. Immigration and Customs Enforcement: Policy or Politics?"* (March 19, 2013), *available at* http://www.dhs.gov/news/2013/03/19/written-testimony-us-immigration-and-customs-enforcement-director-john-morton-house.

[2] *Id.*

[3] *Id.*

Napolitano initially announced plans to develop the RCA tool in October 2009.[4] Risk assessment was envisioned as part of a larger Administration strategy to reform the United States' sprawling immigration detention system,[5] which now detains over 429,000 noncitizens a year and 34,000 at any one time, at a cost of nearly $2 billion.[6] Then and since, the Administration has announced its intentions to "focus detention and removal resources on those individuals who have criminal convictions or fall under other priority categories," while "enhanc[ing] the effectiveness of ATD for low-risk aliens, monitoring them at a lower per-day cost than detention."[7] RCA, as Morton recently stated, is designed to "improve transparency and uniformity in detention custody and classification decisions" reflecting these "civil enforcement priorities."[8]

This nationwide deployment of RCA has occurred amid public debate around U.S. immigration detention practices. The risk immigration detainees pose to public safety, or to flight from proceedings—or not—has been foremost in the debate. In response to ICE's release of over 2,000 noncitizens from detention in advance of "sequestration" budget cuts some congressional members accused ICE of endangering public safety, and characterized the released detainees as "dangerous" and "criminals."[9] Conversely, the White House referred to the

---

[4] Department of Homeland Security, *Secretary Napolitano and ICE Assistant Secretary Morton Announce New Immigration Detention Reform Initiatives* (Oct. 6, 2009) (announcing, among other things, ICE's plans to "develop an assessment tool to identify aliens suitable for ATD [alternatives to detention]," and to "develop a risk assessment and custody classification," to "enable detainees to be placed in an appropriate facility"), *available at* http://www.dhs.gov/news/2009/10/06/new-immigration-detention-reform-initiatives-announced.

[5] Dora Schriro, U.S. Dep't of Homeland Sec., Immigration Detention Overview and Recommendations (2009).

[6] *See e.g.*, U.S. Department of Homeland Security, *Office of Immigration Statistics, Immigration Enforcement Actions: 2011* 4-5 (2012), available at http://www.dhs.gov/sites/default/files/publications/immigration-statistics/enforcement_ar_2011.pdf; Human Rights First, *How to Repair the U.S. Immigration Detention System* (December 2012), *available at* http://www.humanrightsfirst.org/wp-content/uploads/pdf/immigration_detention_blueprint.pdf.

[7] Department of Homeland Security, *Written testimony of U.S. Immigration and Customs Enforcement (ICE) Director John Morton for a House Committee on Appropriations, Subcommittee on Homeland Security hearing on The President's Fiscal Year 2013 budget request for ICE* (Mar. 8, 2012), available at http://www.dhs.gov/news/2012/03/08/written-testimony-us-immigration-and-customs-enforcement-ice-director-house.

[8] *Written testimony of U.S. Immigration and Customs Enforcement Director John Morton for a House Committee on the Judiciary hearing titled: "The release of criminal detainees by U.S. Immigration and Customs Enforcement: Policy or Politics?"* (March 19, 2013), *available at* http://www.dhs.gov/news/2013/03/19/written-testimony-us-immigration-and-customs-enforcement-director-john-morton-house.

[9] *See generally* Patrik Jonsson, *Republicans call foul on release of immigrant detainees* (Mar. 2, 2013), *available at* http://www.minnpost.com/christian-science-monitor/2013/03/republicans-call-foul-release-immigrant-detainees#.UTIcEXYNB50.email.

*See* "Grassley, Goodlatte Press Napolitano for Answers on Release of Illegal Immigrants from Detention Facilities" (Feb. 28, 2013), *available at* http://www.grassley.senate.gov/news/Article.cfm?customel_dataPageID_1502=44820 (calling them "dangerous" and an "abrogation of [DHS'] mission to ensure the safety and security of Americans"). Rep. Goodlatte also stated, "By releasing criminal immigrants onto the streets, the Administration is needlessly endangering American lives." *DHS Releases Hundreds of Illegal Immigrants from Immigration Jails Ahead of Sequester*, Washington Post (Feb. 26, 2013).

detainees as "low-risk, noncriminal detainees,"[10] and ICE Director Morton "disputed accusations" that releases "included many dangerous criminals."[11] Indeed, if these detainees are low-risk, public advocacy groups and commentators questioned whether detainees had "no business in detention in the first place."[12] Senators have echoed those concerns, arguing that "[t]housands of people… are unnecessarily detained at great expense to taxpayers even though they pose no threat to public safety.").[13]

Additionally, the detention of noncitizens while awaiting deportation hearings profoundly impacts their ability to secure a lawyer, collect evidence, and meaningfully litigate their cases. A recent New York study found that 97 percent of detainees who are detained and unrepresented lose their deportation case.[14] To the extent detention of many of these individuals is unnecessary, ICE's practices raise serious due process and human rights concerns.

Information on risk assessment practices would thus be of great relevance to the current debate regarding immigration detention reform.[15] Advocacy organizations have urged Congress to require use of risk assessment,[16] and media outlets have reported on ICE's use of risk assessment.[17]

*Information Regarding ICE's Risk Classification Assessment Tool*

---

[10] *See* Caldwell, *AP Exclusive: DHS released over 2,000 immigrants*, Associated Press, (March 1, 2013) (quoting White House spokesman Jay Carney). ICE spokeswoman Gillian Christensen reiterated that the agency's "priority for detention remains on serious criminal offenders and other individuals who pose a significant threat to public safety." *DHS Releases Hundreds of Illegal Immigrants from Immigration Jails Ahead of Sequester*, Washington Post (Feb. 26, 2013).

[11] Julia Preston, *Administration Official Defends Release of Detainees*, N.Y. Times (Mar. 19, 2013), *available at* http://www.nytimes.com/2013/03/20/us/immigration-official-defends-release-of-detainees.html.

[12] Ruthie Epstein, Human Rights First, *Detention centers releases may have silver lining*, The Hill (Feb. 28, 2013), *available at* http://thehill.com/blogs/congress-blog/homeland-security/285515-detention-centers-releases-may-have-silver-lining.

[13] *See In immigration debate, Senator Coons seeks due process and human rights guarantees* (Feb. 5, 2013) (letter from Sens. Coons, Leahy, Hirono, and Blumenthal), *available at* http://www.coons.senate.gov/newsroom/releases/release/in-immigration-debate-senator-coons-seeks-due-process-and-human-rights-guarantees;

[14] New York Immigrant Representation Study, *Accessing Justice: The Availability and Adequacy of Counsel in Immigration Proceedings*, 33 Cardozo L. Rev. 357, 363-64 (2011).

[15] Robert Koulish and Mark Noferi, *Unlocking Immigrant Detention Reform*, Baltimore Sun (Feb. 20, 2013), available at http://articles.baltimoresun.com/2013-02-20/news/bs-ed-immigrant-detention-20130220_1_mandatory-detention-immigration-detention-detention-costs.

[16] *See, e.g.*, Human Rights First, *Congress Urged To Reform Detention System in Immigration Legislation* (Mar. 14, 2013), *available at* http://www.humanrightsfirst.org/2013/03/14/congress-urged-to-reform-detention-system-in-immigration-legislation/.

[17] Jude Joffe-Block, *ICE Using New Tool For Detention Decisions*, Fronteras (Mar. 7, 2013), *available at* http://www.fronterasdesk.org/news/2013/mar/07/ice-using-new-tool-detention-decisions/;

In an April 6, 2012 Privacy Impact Assessment (PIA) Update, DHS described ICE's new risk assessment tool.[18] ICE's electronic databases, based on risk assessment, now produce (1) an automated custody recommendation (i.e. detention or release), (2) an automated bond amount recommendation, (3) an automated custody classification (e.g. low-, low/medium-, medium/high-, or high-security), if the alien will be detained, and (4) an automated recommendation for technology supervision, if the alien will be released under supervision.[19]

The PIA described, "Using the existing policies and guidance, ICE is automating the assessment process."[20] "When developing RCA, ICE created a methodology which incorporates the current ICE policies and guidance on detention decisions into a set of business rules."[21] Thus, "[i]nformation about the alien stored in EID will now be processed electronically through these business rules and a detention or release recommendation generated."[22]

**Request**

Accordingly, pursuant to FOIA, we request the following:

1. Any and all documents discussing, mentioning, relating to, reflecting, or describing the list of all information and other factors or criteria used to assess "risk to public safety."[23]

2. Any and all documents discussing, mentioning, relating to, reflecting, or describing the personally identifiable information and other factors or criteria used to assess "risk of flight."

---

[18] Department of Homeland Security, Privacy Impact Assessment Update for the Enforcement Integrated Database (EID) Risk Classification Assessment (RCA 1.0), ENFORCE Alien Removal Module (EARM 5.0), and Crime Entry Screen (CES 2.0), DHS/ICE/PIA-015(d) (Apr. 6, 2012), *available at* http://www.dhs.gov/xlibrary/assets/privacy/privacy_piaupdate_EID_april2012.pdf;

[19] *Id.* at 10.

[20] *Id.* at 4. The PIA later stated as a "benefit" to ICE that it "automates a process that is currently manually performed by ERO officers and contractors." *Id.* at 5.

[21] *Id.* at 4.

[22] *Id.* at 4.

[23] ICE Enforcement and Removal Operations ("ERO") officers and contractors collect information about the alien through a "structured interview process." DHS described the information now used in risk assessment as including "personally identifiable information (PII) about the alien," and "associated information" such as "criminal history; special vulnerabilities, such as disability or status as a crime victim; substance abuse history; immigration history and case status; ties to the community, including the length of time at current address, the number of family members residing with the alien, and property ownership; and authorization to work or enrollment in school." *Id.* at 4-6. The PIA explains that much of the personal information about a noncitizen "is no longer collected at the discretion of the officer or contractor in narrative format in free-text fields. It is now entered into structured fields in EID so that it can be processed by the RCA business rules when the system is generating a custody recommendation." *Id.* at 6.

3. Any and all documents discussing, mentioning, relating to, reflecting, or describing the list of all possible "other public safety evaluation criteria" used to assess "risk to public safety" within the RCA.

4. Any and all documents discussing, mentioning, relating to, reflecting, or describing the business rules in RCA Scoring version 2.31 and any earlier or later versions used to produce an automated assessment of "risk to public safety."

5. Any and all documents discussing, mentioning, relating to, reflecting, or describing the business rules in RCA Scoring version 2.31 and any earlier or later versions used to produce an automated assessment of "risk of flight."

6. Any and all documents discussing, mentioning, relating to, reflecting, or describing the business rules in RCA Scoring version 2.31 and any earlier or later versions used to produce an automated "Custody Classification"[24]

7. Any and all documents discussing, mentioning, relating to, reflecting, or describing the business rules in RCA Scoring version 2.31 and any earlier or later versions how "risk of flight" and "risk to public safety" are combined.

8. Any and all documents, materials, and recordings, both digital and print, including orders, notices, directives, memoranda, or other paperwork, discussing, mentioning, relating to, reflecting or describing the instructions, guidance, or training to DHS officers or contractors as to implementation of RCA, use of the RCA tool, or collection of information through a "structured interview process," including but not limited to program manual training guidance, internal memoranda, formal instruction, or informal guidance, and including but not limited to these documents:

    - All documents located on the "ICE Virtual University" website or internal server, including any Web-based training (WBT), "RCA Playbook," training environment(s), scenarios, and quick reference guides.
    - a PowerPoint document, "Training and Deployment Update for RCA Points of Contact in Baltimore and Washington DC," dated March 2012, and any earlier or later versions of this document;
    - A document "U.S. ICE, Enforcement and Removal Operations, Law Enforcement Systems and Analysis, *Risk Classification Assessment (RCA) Quick Reference Guide Version 1.0*, (May 2012)," and any earlier or later versions of this document;
    - A document entitled "United States Department of Homeland Security Scratch RCA Sheet," revised May 29, 2012, and any earlier or later versions of this document;

[24] "When continued detention is recommended, RCA also assigns to the alien a detention custody classification level of Low, Low/Medium, High/Medium, or High. ICE uses the custody classification level to plan for the provision of appropriate security measures during the housing or transportation of the alien while in ICE custody." *Id.* at 4.

- an August 2012 memorandum or email from then-ICE ERO Director Gary Mead to all ERO employees, entitled "Risk Classification Assessment," providing guidance to ICE officers as to how to use the RCA tool, and any earlier or later versions of this memorandum or email, or other memoranda or email from ERO or ICE management relating to RCA;
- a November 2012 PowerPoint, "Risk Classification Assessment (RCA) Phase III & IV Workflow Overview," and any earlier or later versions of this document;
- a further November 2012 training PowerPoint, entitled "Risk Classification Assessment POC & Training SME," November 2012, and any earlier or later versions of this document;
- a December 3, 2012 memorandum entitled "Helpful Hints when Starting an RCA for Detain/Release Decision," and any earlier or later versions of this memorandum or email, or similar memoranda or email;
- a January 3, 2013 memorandum entitled "Risk Classification Assessment (RCA) Module, Phase 1-4 Deployment Lessons Learned," and any earlier or later versions of this memorandum or email, or similar memoranda or email;

9. Any and all documents discussing, mentioning, relating to, or reflecting training, guidance, or protocols as to contractor involvement in the RCA determination process.[25]

10. Any and all documents discussing, mentioning, relating to, reflecting, or describing training, guidance, or protocols as to when an ICE officer or Supervisor may override an automated RCA determination.

11. Any and all documents discussing, mentioning, relating to, reflecting, or describing training, guidance, or protocols as to when a contractor may override an automated RCA determination.

12. Any and all documents discussing, mentioning, relating to, reflecting, or describing training, guidance, or protocols as to when an ICE Supervisor may reject the ICE officer's custody decision.[26]

---

[25] Id. at 6 (information gathered through "structured interviews," such as local ties, substance abuse history, or length of time at current residence was "collected at the discretion of the officer or contractor in narrative format in free-text fields.").

[26] The PIA states that "[a]lthough RCA produces a custody recommendation, ICE officers make the final custody determination. ICE officers must review each RCA recommendation and consider the information about the alien in EID and other sources. Following the review, the officer may either accept the recommendation or recommend that his or her supervisor (who is always an ICE officer) change it. Following the officer's determination, the supervisor reviews the decision and either accepts it or changes it to generate a final decision. In cases where the officer or supervisor rejects the RCA recommendation, a reason must be entered into the system explaining why the system's recommendation was rejected." *Id.* at 5.

13. Any and all documents discussing, mentioning, relating to, reflecting, or describing training, guidance, or protocols as to the timing of the RCA process, including but not limited to its timing vis-à-vis the charging decision (e.g. whether a Notice to Appear is issued).

14. Any and all documents discussing, mentioning, relating to, reflecting, or describing training, guidance, or protocols as to bond amount recommendations by the RCA, and review of those recommendations by ICE officers, supervisors, or contractors.[27]

15. Any and all documents discussing, mentioning, relating to, reflecting, or describing training, guidance, or protocols as to incorporation of previous criminal and medical records and evaluations into the RCA determination process.

16. Any and all documents discussing, mentioning, relating to, reflecting, or describing training, guidance, or protocols for when the RCA can be or should be run again after the initial RCA determination.

17. Any and all documents discussing, mentioning, relating to, reflecting, or describing the guidance or protocols for evaluating the accuracy of the RCA determinations for risk of flight, and risk to public safety.

18. Any and all documents discussing, mentioning, relating to, reflecting, or describing the guidance or protocols for modifying the business rules, information and other factors or criteria used by the RCA to determine risk of flight, and risk to public safety.

**Additional Information Regarding Requestors**

Requestors include educational requestors under the provisions of the Freedom of Information Act, and we request to be so classified. Professor Benjamin Casper and Teaching Fellow Katherine Evans teach the Federal Immigration Litigation Clinic at the University of Minnesota Law School, a 501(c)(3) educational institution.[28] Professor Robert Koulish teaches classes on political science, immigration, and immigration law, and conducts active scholarly research at the University of Maryland, a 501(c)(3) educational institution, through its Center for American Politics and Citizenship and Francis King Carey School of Law.[29] Instructors Casper, Evans, and Koulish plan to use this information for future scholarly research, and publicize it through media including but not limited to academic articles in law reviews and humanities publications, reports, books, op-eds, and other public materials, made available through academic websites, press releases, and other publicly available mediums.

[27] 8 U.S.C. § 236(c)(2)(A); 8 C.F.R. § 236.1(c)(8).
[28] *See* http://www.law.umn.edu/facultyprofiles/casperb.html (Benjamin Casper biography); http://www.law.umn.edu/newamericans/people/evanse.html (Katherine Evans biography).
[29] *See* http://www.capc.umd.edu/staff/koulish.asp (Robert Koulish biography).

**Fee Waiver Request**

We agree to pay search, duplication, and review fees of up to $100. If fees will amount to more than $100, we request a full waiver of those fees over $100. The information sought "is likely to contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 6 C.F.R. § 5.11(k). When the documents are "not sought for commercial use" and the "request is made by an educational or noncommercial scientific institution, whose purpose is scholarly or scientific research,"[30] "[d]ocuments shall be furnished without any charge or at a charge reduced below the [standard charges] if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the Requestor."[31]

We meet all of the six factors that the Government has set forth to determine if fees should be waived or reduced.[32] We address these factors in two sub-categories – i.e. first, the public interest in the information, and second, the lack of commercial interest of the Requestors.

First, as the first four factors set out, disclosure of this requested information is in the "public interest" because it is "likely to contribute significantly to public understanding of government operations or activities."[33] Addressing these factors one by one:

1. The requested records "specifically concern identifiable 'operations or activities of the government',"[34] namely ICE's use of RCA.

2. Disclosure of documents is "meaningfully informative in relation to the subject matter of the request."[35] This RCA information is not already available to the public, and thus adds to the substantive understanding of the area concerned.

3. Disclosure contributes to "public understanding," as opposed to the "individual understanding of the Requestor or a narrow segment of interested persons."[36] Here, disclosure of RCA information contributes to public understanding of immigration detention policies, an issue attracting significant public attention as Congress debates

[30] 5 U.S.C. § 552(a)(4)(A)(ii).

[31] 5 U.S.C. § 552(a)(4)(A)(iii).

[32] *See* Department of Justice Guide to the Freedom of Information Act § 3-17.100B ("DOJ FOIA Guide"), *available at* http://www.justice.gov/oip/foia_guide09/fee-waivers.pdf; *see also Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers of noncommercial Requestors.'").

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

immigration law reform. The scope of ICE's detained population was subject to criticism in a 2009 report issued by ICE itself, in which Dr. Dora Schriro stated, "In coordination with stakeholders, ICE should develop a new set of standards, assessments, and classification tools to inform care, custody restrictions, privileges, programs, and delivery of services consistent with risk level and medical care needs of the population."[37] Data on detainees and their risk assessments were required by the U.S. Senate's 2013 immigration reform bill.[38] Recent Congressional hearings have questioned whether ICE's releases of immigration detainees pose a risk to public safety. In response, ICE Director Morton has testified twice regarding ICE's introduction of its new RCA tool.[39] The number of people ICE detains continues to attract criticism from public interest organizations and immigrant rights advocates.[40]

Moreover, the Requestors plan to make the requested information publicly available to enhance public understanding. Research results will be made publicly available through the Center for New Americans website, making it available to the public at large and publicizing the release of information through blog posts and social media.[41] Additionally, Instructors Casper, Evans, and Koulish plan to collaborate with other immigration scholars to distribute research results through publicly available academic articles, reports, and op-eds. The Requestors also plan to respond, free of charge, to inquiries from the press, scholars, public interest groups, and other members of the public as necessary. All these educational and public service activities should help address critical gaps in knowledge, and help individuals and organizations find necessary information concerning agency policies and practices.

4. Disclosure contributes "significantly" to public understanding and enhances the public's knowledge of these government operations or activities.[42] As noted above, ICE Director Morton has responded to Congressional concerns regarding public safety risks from release of detainees by testifying as to ICE's new RCA tool. On the other hand, detention of individuals who do not pose risks raises cost concerns,

---

[37] *See* Dr. Dora Schriro, DHS, ICE, "Immigration Detention Overview and Recommendations" (Oct. 6, 2009) *available at* http://www.ice.gov/doclib/about/offices/odpp/pdf/ice-detention-rpt.pdf

[38] *See* Border Security, Economic Opportunity, Immigration Modernization Act S.744 § 3720(b)(10), *available at* http://www.lawandsoftware.com/bseoima/bseoima-senate-3720.html

[39] *See* note 1, *supra*; *see also Written testimony of U.S. Immigration and Customs Enforcement Director John Morton for a House Committee on Appropriations, Subcommittee on Homeland Security hearing titled: "Immigration Enforcement"* (Mar. 14, 2013), available at http://www.dhs.gov/news/2013/03/14/written-testimony-us-immigration-and-customs-enforcement-director-john-morton-house.

[40] Kate Linthicum, "Push for cheaper alternatives to immigrant detention grows" LA Times, May 31, 2014, *available at* http://www.latimes.com/nation/la-na-immigration-detention-20140601-story.html; Lutheran Immigration and Refugee Services, "Alternatives to Detention: History and Recommendations," *available at* http://lirs.org/wp-content/uploads/2013/04/LIRS-Backgrounder-on-Alternatives-to-Detention-3-12-13.pdf

[41] *See* http://www.law.umn.edu/newamericans/news.html.

[42] *See* DOJ FOIA Guide.

during this time of U.S. budgetary cutbacks.[43] Information concerning the system for generating and reviewing the automated custody recommendations of ICE's RCA would provide the public key information as to ICE's assessment of the risk posed by released and non-released detainees. This would in turn allow the U.S. public, interested organizations, and Congress to publicly evaluate the costs and benefits of detention, particularly now of great national public interest as Congress debates immigration law reform and President Obama assesses his enforcement priorities and detention policies.

Secondly, as the Requestors lack commercial interest here, these requests are "not primarily in the commercial interest of the Requestor,"[44] and thus the public's interest is primary.[45] Requestors, comprised of academics at educational institutions and a voluntary lawyers' association, have no commercial interest here. As noted, Instructors Casper, Evans, and Koulish plan to use this information for scholarly research, including but not limited publicly available academic articles in law reviews and humanities publications, reports, books, and op-eds. Any "quasi-commercial nature" of academic research is "irrelevant for the purposes of calculating an appropriate fee waiver." *Campbell v. U.S. Dept. of Justice*, 164 F.3d 20, 36 (D.C. Cir. 1998). Accordingly, when the Requestors commercial interest is balanced against the identified public interest stated above, the public's interest in this RCA information remains "primary."[46]

**Other Information**

The Requestors certify that the above information is true and correct to the best of the Requestors' knowledge. *See* 6 C.F.R. § 5.5(d)(3).

If this request is denied in whole or in part, please justify all deletions by reference to the specific exemptions of the act. In addition, please release all segregable portions of otherwise exempt material pursuant to 5 U.S.C. § 552(b). We reserve the right to appeal your decision to withhold any information or to deny a waiver of fees, both administratively and in a court of law. 5 U.S.C. §§ 552(a)(6)(A), (a)(4)(B).

As set forth in 5 U.S.C. § 552(a)(6), we expect to receive a reply within the statutorily mandated deadline of 20 working days of receipt of this letter. We are aware that we have the right to an administrative appeal if we do not receive an administrative determination from your agency within 20 working days. We would very much appreciate your prompt action and response to this request.

---

[43] Robert Koulish and Mark Noferi, *Unlocking Immigrant Detention Reform*, Baltimore Sun (Feb. 20, 2013), *available at* http://articles.baltimoresun.com/2013-02-20/news/bs-ed-immigrant-detention-20130220_1_mandatory-detention-immigration-detention-detention-costs.

[44] *See* DOJ FOIA Guide.

[45] *Id.*

[46] *Id.*

Should you have any questions, or if we can be of any assistance, please feel free to contact us. You can reach Katherine Evans at evans407@umn.edu and Benjamin Casper at caspe010@umn.edu or at (612) 625-5515. Robert Koulish can be reached at (410) 925-3894, or by email at rkoulish@umd.edu

Sincerely,

Katherine Evans
Teaching Fellow

Benjamin Casper
Visiting Associate Professor

Robert Koulish
Professor, University of Maryland

# Exhibit 2

Katherine Evans <evans407@umn.edu>

# ICE FOIA Request 2015-ICFO-03041

**ice-foia@dhs.gov** <ice-foia@dhs.gov> Tue, Oct 21, 2014 at 12:56 PM
To: evans407@umn.edu

October 21, 2014

Katherine Evans
University of Minnesota Law School
Ctr for New Americans - 190 W.F. Mondale Hall
229 19th Avenue South
Minneapolis, MN 55455

**RE: ICE FOIA Case Number 2015-ICFO-03041**

Dear Ms. Evans:

This acknowledges receipt of your Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), dated October 15, 2014, and to your request for a waiver of all assessable FOIA fees. Your request was received in this office on October 21, 2014. Specifically, you requested information for the public and educational research, regarding ICE's use of its risk classification assessment (RCA) tool and the components that comprise the RCA (18 items detailed in the request).

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. Per Section 5.5(a) of the DHS FOIA regulations, 6 C.F.R. Part 5, ICE processes FOIA requests according to their order of receipt. Although ICE's goal is to respond within 20 business days of receipt of your request, the FOIA does permit a 10- day extension of this time period. As your request seeks numerous documents that will necessitate a thorough and wide-ranging search, ICE will invoke a 10-day extension for your request, as allowed by Title 5 U.S.C. § 552(a)(6)(B). If you care to narrow the scope of your request, please contact our office. We will make every effort to comply with your request in a timely manner.

After thoroughly reviewing your letter and request for fee waiver, I have determined that you have not presented a convincing argument that University of Minnesota Law School is entitled to a blanket waiver of applicable fees.

The DHS FOIA Regulations at 6 CFR § 5.11(k)(2) set forth six factors to examine in determining whether the applicable legal standard for a fee waiver has been met. We will consider these factors in our evaluation of your request for a fee waiver:

(1) Whether the subject of the requested records concerns "the operations or activities of the government";

(2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities;

(3) Whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requestor or a narrow segment of interested persons;

(4) Whether the contribution to public understanding of government operations or activities will be "significant";

(5) Whether the requester has a commercial interest that would be furthered by the requested disclosure; and

(6) Whether the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requestor.

As a requester, you bear the burden under FOIA of showing that the fee waiver requirements have been met. Based on my review of your October 15, 2014 letter and for the reasons stated herein, I have determined that your fee waiver request is deficient because your request did not satisfy factors 4, 5, and 6. Since your request for a fee waiver has failed to satisfy each of the required factors, I am denying your fee waiver request.

Provisions of the FOIA allow us to recover part of the cost of complying with your request. We shall charge you for records in accordance with the DHS Interim FOIA regulations as they apply to educational requesters. As an educational requester, you will be charged 10 cents per page for duplication; the first 100 pages are free. We will construe the submission of your request as an agreement to pay up to $25.00. You will be contacted before any further fees are accrued.

You have the right to appeal the determination to deny your fee waiver request. Should you wish to do so, please send your appeal following the procedures outlined in the DHS regulations at 6 Code of Federal Regulations § 5.9 and a copy of this letter to:

U.S. Immigration and Customs Enforcement
Office of Principal Legal Advisor
U.S. Department of Homeland Security
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009

Your appeal must be received within 60 days of the date of this letter. Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

ICE has queried the appropriate program offices within ICE for responsive records. If any responsive records are located, they will be reviewed for determination of releasability. Please be assured that one of the processors in our office will respond to your request as expeditiously as possible. We appreciate your patience as we proceed with your request.

Your request has been assigned reference number **2015-ICFO-03041**. Please refer to this identifier in any future correspondence. You may contact this office at (866) 633-1182.

Regards,

ICE FOIA Office
Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
Telephone: 1-866-633-1182
Visit our FOIA website at www.ice.gov/foia

# Exhibit 3

U.S. Department of Homeland Security
500 12th St. SW; STOP 5009
Washington, DC 20536-5009

U.S. Immigration
and Customs
Enforcement

July 24, 2015

Katherine Evans
University of Minnesota Law School
Ctr for New Americans – 190 W.F. Mondale Hall
229 19th Avenue South
Minneapolis, MN 55455

**RE: 2015-ICAP-00491, 2015-ICAP-00093, 2015-ICFO-03041**

Dear Ms. Evans:

This is in response to your letter dated June 22, 2015, requesting reconsideration of the denial of your request for a full fee waiver as moot, pertaining to the Freedom of Information Act (FOIA) request you filed with the U.S. Immigration and Customs Enforcement (ICE) FOIA Office on October 15, 2014. This appeal adjudication is limited in scope to your request for a full fee waiver.

Your original FOIA request sought 18 categories of records related to ICE's risk classification assessment (RCA) tool, specifically pertaining to analysis of the "risk to public safety" and "flight risk" decisions made by ICE Officers. Additionally, your FOIA request sought information about the training, implementation and application of the RCA performed by ICE, to inform the public about decisions regarding detention of noncitizens. Additionally in your October 15, 2014 request, you sought a full fee waiver. By e-mail dated October 21, 2014, the ICE FOIA Office acknowledged your FOIA request, assigned it case number 2015-ICF0-03041, and denied your request for a full fee waiver.

On November 7, 2014, the ICE FOIA Office responded to your FOIA request, informing you that a search in response to the FOIA request located no responsive documentation. The November 7, 2014 determination by the ICE FOIA Office also stated that no fee would be assessed, as the cost of complying with the request was less than $14.

In correspondence dated December 19, 2014, you appealed the ICE FOIA Office's fee waiver determination. ICE assigned your fee waiver appeal case number 2015-ICAP-00093. On January 22, 2015, ICE dismissed your appeal of the denial of the full fee waiver as moot, as no fees were assessed in connection with your FOIA request.

In a letter dated January 5, 2015, you appealed the adequacy of the search conducted by the ICE FOIA Office. ICE assigned this particular appeal case number 2015-ICAP-00276. On April23, 2015, ICE determined that additional documentation may be located in ICE offices not yet searched and remanded your FOIA request to the ICE FOIA Office for processing and re-tasking.

On June 26, 2015, ICE received the instant appeal, wherein you request reconsideration of the decision in case 2015-ICAP-00093, dismissing your appeal of the full fee waiver denial as moot, in light of the remand in case 2015-ICAP-00276.

As stated in email correspondence from the ICE FOIA Office on October 21, 2014, ICE FOIA denied your fee waiver request, as you failed to satisfy factors 4, 5, and 6 of the DHS Regulations pertaining to a full fee waiver request.

With respect to the denial of a fee waiver, the DHS FOIA Regulations at 6 C.F.R. § 5.11(k) set forth six factors to examine in determining whether the applicable legal standard for a full fee waiver has been met. These factors are:

> (1) Whether the subject of the requested records concerns "the operations or activities of the government";
> (2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities;
> (3) Whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requestor or a narrow segment of interested persons;
> (4) Whether the contribution to public understanding of government operations or activities will be "significant";
> (5) Whether the requester has a commercial interest that would be furthered by the requested disclosure; and
> (6) Whether the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requestor.

On appeal, ICE completes a *de novo* review of the fee assessment and full fee waiver request. As a requester, you bear the burden under FOIA of showing that the fee waiver requirements have been met.

As to the first requirement, the requested information likely concerns the operations or activities of the government, related to ICE custody decisions under the Immigration and Nationality Act (INA).

The second requirement requires that the disclosure "likely contribute" to the understanding of the public at large regarding specific government operations or activities. With respect to your request, the requested information will likely contribute to an understanding of government operations or activities related to ICE custodial detention decisions under the INA.

The third requirement mandates the disclosure of the requested information contribute to the understanding of the public at large, as opposed to the individual understanding of the requestor or a narrow segment of interested persons. Moreover, a requestor must establish an ability disseminate the information to the public at large. *See Cause of Action* v. *Fed. Trade Comm'n*, 961 F. Supp. 2d 142, 158 (D.D.C. 2013) (requester must specifically demonstrate its intent and ability to disseminate the requested information to the public); *Larson* v. *C.I.A.*, 843 F.2d 1481, 1483 (D.C. Cir. 1988) (requester bears burden to demonstrate intent and ability to disseminate the information to the public). With respect to your request, the requested information will likely

contribute to the understanding of the public at large. Moreover, the individual requesters, as academics, have established the ability and intent to disseminate the requested information through academic publications, media, and/or academic courses.

The fourth requirement mandates the disclosure and subsequent contribution to public understanding of government operations or activities be "significant." To warrant a waiver or reduction of fees, the public's understanding of the subject matter in question must be likely to be enhanced by the disclosure to a significant extent. With respect to your request, the requested information would likely contribute a significant public understanding of issues related to RCA and the application of the detention provisions of the INA.

The fifth and sixth requirements consider whether the requester has a commercial interest that would be furthered by the requested disclosure and whether the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requestor. In your appeal, you note that the underlying requesters are immigration attorneys and academics who have a demonstrated history in and expertise in, research and writing in the fields of immigration law and policy. You state the requestors have no commercial interest in the requested materials. The requesters plan to use the requested information for future scholarly research. The information derived through FOIA will be publicized through various media outlets; this includes (but is not limited to) academic articles in law reviews and humanities publications, reports, books, op-eds, presentations at national and international conferences, and postings on the website "Center for New Americans" in blog and article form. With respect to your request, you have adequately established that the requestors have no commercial interest in the information they seek from ICE.

Upon a thorough review of the record, your request for a full fee waiver in case 2015-ICF0-03041 is granted. Should you have any questions regarding this appeal adjudication, please contact ICE at ice-foia@dhs.gov. In the subject line of the email please include the word "appeal," your appeal numbers, which are 2015-ICAP-00491, and the FOIA case number, which is 2015-ICF0-03041.

Sincerely,

Debbie Seguin
Chief
Government Information Law Division
ICE Office of the Principal Legal Advisor
U.S. Department of Homeland Security

# Exhibit 4

*Freedom of Information Act Office*

**U.S. Department of Homeland Security**
500 12th St SW, Stop 5009
Washington, DC 20536

U.S. Immigration
and Customs
Enforcement

November 07, 2014

Katherine Evans
University of Minnesota Law School
190 W.F. Mondale Hall
229 19th Avenue South
Minneapolis, MN 55455

**RE: ICE FOIA Case Number 2015-ICFO-03041**

Dear Ms. Evans:

This letter is the final response to your Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), dated October 15, 2014. You have requested copies of the following records:

Information for the public and educational research, regarding ICE's use of its risk classification assessment (RCA) tool and the components that comprise the RCA (18 items detailed in the request)

ICE has considered your request under both the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Information about an individual that is maintained in a Privacy Act system of records may be accessed by that individual[1] unless the agency has exempted the system of records from the access provisions of the Privacy Act.[2]

ICE has conducted a search of the ICE Office of Enforcement and Removal Operations (ERO), and the ICE Office of Detention Policy and Planning (ODPP), for records responsive to your request and no records responsive to your request were found.

You have the right to appeal ICE's determination and should you wish to do so, please send your appeal following the procedures outlined in the DHS regulations at 6 Code of Federal Regulations § 5.9 and a copy of this letter to:

U.S. Immigration and Customs Enforcement
Office of Principal Legal Advisor
U.S. Department of Homeland Security
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009

[1] 5 U.S.C. § 552a(d)(1).
[2] 5 U.S.C. §§ 552a(d)(5), (j), and (k).

Washington, D.C. 20536-5009

Your appeal must be received within 60 days of the date of this letter. Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

The Office of Government Information Services (OGIS) also mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you wish to contact OGIS, you may email them at ogis@nara.gov or call 1-877-684-6448.

Provisions of the FOIA and Privacy Act allow us to recover part of the cost of complying with your request. In this instance, because the cost is below the $14 minimum, there is no charge.[3]

If you need to contact the FOIA office about this matter, please call (866) 633-1182 and refer to FOIA case number **2015-ICFO-03041**.

Sincerely,

Bradley E. White for

Catrina M. Pavlik-Keenan
FOIA Officer

[3] 6 CFR § 5.11(d)(4).

# Exhibit 5

UNIVERSITY OF MINNESOTA

*Twin Cities Campus*

*Law Clinics*
*Law School*

*190 Walter F. Mondale Hall*
*229 19th Avenue South*
*Minneapolis, MN 55455*

*Office: 612-625-5515*
*Fax: 612-624-5771*

January 5, 2015

Associate General Counsel (General Law)
Department of Homeland Security
245 Murray Lane SW
Washington, D.C. 20528
*Via Federal Express Overnight*

U.S. Immigration and Customs Enforcement
Office of Principal Legal Advisor
U.S. Department of Homeland Security
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
*Via Federal Express Overnight*

Associate General Counsel (General Law)
Department of Homeland Security
Washington, D.C. 20528
*Via U.S. Postal Service Overnight*

Re: Freedom of Information Act Appeal
FOIA Case No. 2015-ICFO-03041 made by Professor Benjamin Casper (University of Minnesota Law School), Teaching Fellow Katherine Evans (University of Minnesota Law School), and Professor Robert Koulish (University of Maryland) on October 15, 2014
Appeal of Final Response (dated November 7, 2014)

To whom it may concern:

This is an appeal under the Freedom of Information Act, pursuant to 5 U.S.C. § 552 and 6 C.F.R. § 5.9. Requesters write to appeal the ICE FOIA Office's final response to their FOIA Request, which states that no responsive documents were found. This appeal letter is sent such that it will be received within 60 days of the November 7, 2014 final response. *See* 6 C.F.R. § 5.25.

On October 15, 2014, Requesters Professor Benjamin Casper (University of Minnesota Law School), Teaching Fellow Katherine Evans (University of Minnesota Law School), and Professor Robert Koulish (University of Maryland) (together, "Requesters") submitted a FOIA request related to the ICE related to its Risk Classification Assessment ("RCA") tool. *See* Exh. A (FOIA request, Case No. 2015-ICFO-03041). On November 7, 2014, the ICE FOIA Office issued a final response to Requesters' request, stating that "no records responsive to [Requesters'] request were found." *See* Exhibit B (final response).

Requesters hereby appeal this final "no records" response. An agency must conduct a reasonable search for records responsive to a FOIA request. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). A reasonable search is a search conducted in good faith, using methods that "can be reasonably expected to produce the information requested." *Id.* This

search was inadequate, because it is obvious from information in the public record – including statements made by government personnel and documents produced to a different party in response to a different FOIA request – that ICE has documents responsive to this request.

## I. Background on FOIA Request for Information Related to the Risk Classification Assessment

On March 19, 2013, ICE Director John Morton confirmed to Congress that ICE had completed a nationwide deployment of its new automated "Risk Classification Assessment" tool. As Director Morton stated, this RCA contains objective criteria to guide decision making regarding whether a noncitizen should be detained or released, and if detained, the noncitizen's appropriate custody classification level.[1] In an April 6, 2012 Privacy Impact Assessment (PIA) Update, DHS described ICE's new risk assessment tool.[2] ICE's electronic databases, based on risk assessment, now produce (1) an automated custody recommendation (i.e. detention or release), (2) an automated bond amount recommendation, (3) an automated custody classification (e.g. low-, low/medium-, medium/high-, or high-security), if the alien will be detained, and (4) an automated recommendation for technology supervision, if the alien will be released under supervision.[3] The PIA stated that "[u]sing the existing policies and guidance, ICE is automating the assessment process."[4] "When developing RCA, ICE created a methodology which incorporates the current ICE policies and guidance on detention decisions into a set of business rules."[5] Thus, "[i]nformation about the alien stored in EID will now be processed electronically through these business rules and a detention or release recommendation generated."[6]

From these public documents, and others ICE has released through FOIA, the Risk Classification Assessment also evaluates whether an individual is subject to mandatory detention, *i.e.* 8 U.S.C. § 1226(c). For example, an RCA "Quick Reference Guide" used to train officers states that "RCA completes an automatic assessment of whether an individual is subject to mandatory detention based on the Immigration and Nationality Act statutes, and allegations entered into the Enforcement Apprehension and Booking Module (EABM) and ENFORCE Alien Removal Module (EARM)."[7] RCA appears to evaluate mandatory detention using an automated "Subject to Mandatory Detention" Tool, listed on ICE's "RCA

---

[1] Written testimony of U.S. Immigration and Customs Enforcement Director John Morton for a House Committee on the Judiciary hearing titled: "The release of criminal detainees by U.S. Immigration and Customs Enforcement: Policy or Politics?" (March 19, 2013), available at http://judiciary.house.gov/_files/hearings/printers/113th/113-5_80066.PDF (at p. 13).

[2] Department of Homeland Security, Privacy Impact Assessment Update for the Enforcement Integrated Database (EID) Risk Classification Assessment (RCA 1.0), ENFORCE Alien Removal Module (EARM 5.0), and Crime Entry Screen (CES 2.0), DHS/ICE/PIA-015(d) (Apr. 6, 2012), *available at* http://www.dhs.gov/xlibrary/assets/privacy/privacy_piaupdate_EID_april2012.pdf.

[3] *Id.* at 10.

[4] *Id.* at 4. The PIA later stated as a "benefit" to ICE that it "automates a process that is currently manually performed by ERO officers and contractors." *Id.* at 5.

[5] *Id.* at 4.

[6] *Id.* at 5.

[7] *See* Exh. C, U.S. ICE, "RCA Quick Reference Guide 1.0," dated May 2012, at 1 (ICE2012FOIA02544.003479-3536).

Detailed Summary."[8] Supporting this, DHS' public PIA stated that the RCA Detailed Summary contains information relating to "mandatory detention factors."

Risk assessment was envisioned as part of a larger administrative strategy to reform the United States' sprawling immigration detention system, which in FY 2012 detained over 429,000 noncitizens per year and 34,000 at any one time—at a cost of nearly $2 billion. But, a recent U.S. Government Accountability Office (GAO) report stated that RCA recommended detention 91 percent of the time in FY 2013,[9] calling into question whether the RCA will be effective to appropriately balance competing concerns relating to detention. The GAO report also stated that from FY 2011 to 2013, 77 to 80 percent of noncitizens in detention facilities were mandatorily detained.[10] ICE's use of RCA to help make mandatory detention decisions may contribute to this high detention rate. Recent Congressional hearings have questioned whether ICE's recent releases of immigration detainees pose a risk to public safety. In response, ICE Director Morton has testified twice regarding ICE's introduction of its new RCA tool.

In their October 15, 2014 FOIA request, Requesters sought eighteen categories of information related to certain components of the RCA tool, including analysis of a noncitizen's "risk to public safety" and "flight risk," as well as the training, implementation and application of the RCA performed by DHS/ICE to inform decisions about noncitizen detention. *See* Exhibit A (FOIA Request). On November 7, 2014, the ICE FOIA Office issued a final response to Requesters' request, stating that "no records responsive to [Requesters'] request were found." *See* Exhibit B (final response).

## II. The Search Was Inadequate

Requesters sought very basic information about an acknowledged government tool, yet were told that no records could be found. It is simply implausible that the very agency that created, implemented and currently uses the RCA tool has no documents related to the components, training, implementation and application of the tool.

Requesters are not privy to the precise search terms and method used by ICE. The ICE FOIA Office's final response provides sparse information about the agency's search methods, stating only that:

> ICE has conducted a search of the ICE Office of Enforcement & Removal Operations (ERO) and Office of Detention Policy and Planning (ODPP) for records responsive to your request and no records responsive to your request were found.

---

[8] *See* Exh. D, U.S. ICE, "Enforce Application Suite RCA Detailed Summary," dated March 5, 2013, at 2 ("Subject to Mandatory Detention Tool 2.0") (ICE2013.FOIA17861.000012-13). This and similar documents were released by ICE pursuant to FOIA request #2013-FOIA-17861, made Apr. 4, 2013 by Professor Robert Koulish, Director, MLAW Law and Society Program, at the University of Maryland-College Park, and Mark Noferi, now an Enforcement Fellow at the American Immigration Council.

[9] U.S. Government Accountability Office, *ALTERNATIVES TO DETENTION: Improved Data Collection and Analyses Needed to Better Assess Program Effectiveness* 27 (November 2014) at http://www.gao.gov/products/GAO-15-26.

[10] *Id.* at 28.

Exh. B. ICE did *not* assert that there were responsive records withheld pursuant to a FOIA exemption; it stated that no such records were found. However, the general nature of Requesters' FOIA request, coupled with the agency's open admission that it has developed and used this tool, demonstrates that the search method must not have been adequate. Further, Requesters are aware of several documents – produced after a different requester brought a lawsuit challenging ICE's failure to produce documents in response to a different FOIA request[11] – that fall squarely within the scope of their request. In fact, Requesters specifically requested one of these documents by title in their FOIA request, yet ICE (the author of this document) denied having any such document. The fact that ICE produced numerous documents (including training materials such as a 58-page "quick" RCA reference guide) after a different requester challenged its lack of response, yet now claims that there are no records whatsoever related to the RCA, demonstrates that ICE's search was unreasonable.

### A. It Is Implausible That No Records Exist for a Program Openly Acknowledged and Discussed By Government Officials

There can be no question that ICE has developed and uses the RCA tool on hundreds of thousands of noncitizens. In the Department of Homeland Security's 2012 Privacy Impact Assessment Update, DHS noted that "ICE created a methodology" to develop the RCA, and has implemented it as a tab in a larger computer module.[12] ICE developed a 58-page "quick guide" to help train ICE law enforcement offers, detailing how to apply the RCA. *See* Exh. C. On March 19, 2013, ICE Director John Morton confirmed to Congress that ICE had completed a nationwide deployment of its new automated "Risk Classification Assessment" tool.[13] A 2014 House report noted that "[e]xcept for those subject to mandatory detention, ICE uses a formal risk classification assessment to determine which individuals in removal proceedings should be detained, placed in an Alternative to Detention program, or subjected to some other form of non-detention supervision."[14] Likewise, the White House acknowledged in a formal press release that ICE uses RCA, and trumpeted its benefits.[15] The November 2014 GAO report evaluated

---

[11] These documents were released pursuant to litigation brought by the American Immigration Council ("AIC"). *See American Immigration Council, et al., v. DHS*, Case No. 3:12-cv-00355 (D. Conn. 2013). ICE is currently producing documents pursuant to a negotiated settlement agreement, filed with the Court on July 31, 2013 (Dkt. 44). For a description of the litigation, see http://www.legalactioncenter.org/litigation/criminal-alien-program-cap.

[12] Department of Homeland Security, Privacy Impact Assessment Update for the Enforcement Integrated Database (EID) Risk Classification Assessment (RCA 1.0), ENFORCE Alien Removal Module (EARM 5.0), and Crime Entry Screen (CES 2.0), DHS/ICE/PIA-015(d) (Apr. 6, 2012) pp. 2-3, *available at* http://www.dhs.gov/xlibrary/assets/privacy/privacy_piaupdate_EID_april2012.pdf.

[13] Written testimony of U.S. Immigration and Customs Enforcement Director John Morton for a House Committee on the Judiciary hearing titled: "The release of criminal detainees by U.S. Immigration and Customs Enforcement: Policy or Politics? " (March 19, 2013), available at http://judiciary.house.gov/_files/hearings/printers/113th/113-5_80066.PDF (at p. 13).

[14] House Report 113-481, *To accompany H.R. 4903, DEPARTMENT OF HOMELAND SECURITY APPROPRIATIONS BILL, 2015* (June 19, 2014) available at http://www.gpo.gov/fdsys/pkg/CRPT-113hrpt481/html/CRPT-113hrpt481.htm.

[15] The White House, Office of the Press Secretary, *FACT SHEET: Advancing The Human Rights Of LGBT Persons Globally* (June 24, 2014) at http://www.whitehouse.gov/the-press-office/2014/06/24/fact-sheet-advancing-human-rights-lgbt-persons-globally.

initial FY 2013 ICE data regarding ICE's use of RCA on 168,087 noncitizens, and the relationship of RCA to ICE's alternatives to detention programs.[16]

Yet, when Requesters sought basic information about the rules, criteria, protocols, training or implementation of the tool, ICE responded that it had no such records. The search must have been inadequate, because it is implausible that ICE would have no records at all relating to an ICE program whose existence and implementation has been acknowledged by DHS, the White House, Congress and the ICE Director.

### B. The Search Method Was Inadequate, Because ICE Has Previously Disclosed Documents Authored by the Very Offices It States It Searched, Yet Now Claims There Are No Records

The inadequacy of the search is illustrated by the fact that ICE produced numerous documents to a different requester, yet failed to produce these documents in response to this request.[17] This is not a situation in which one document was inadvertently overlooked during an agency's reasonable search and production of a voluminous set of responsive documents. This is a situation in which an agency denies having *any* documentation about a key tool its officials have openly discussed in public. Tellingly, ICE refused to provide the documents to the prior requester American Immigration Counsel (AIC), until AIC initiated litigation to challenge ICE's deficient FOIA response.

Requesters can provide specific examples that demonstrate ICE's deficient response. For instance, ICE states that it conducted a search within the Office of Enforcement and Removal Operations and found no responsive documents. *See* Exh. B. However, ICE responded to a different requester by producing, among other things, a 58-page "quick" reference guide published by that very office (ERO) on this very topic (RCA). *See* Exh. C. Moreover, Requesters specifically asked for that document *by its date and title* in the current request.[18] Besides being specifically requested by name, the quick reference guide covers the topics described in the request in precisely the same language as the request. For example, the quick guide describes flight risk and the risk to public safety. *See* Exh. A at Requests 1-3; Exh. C at pp. i, 7 & 10.

Requester was able to obtain – from sources *other than ICE* – several documents created by ICE that relate to RCA tool. These documents demonstrate that responsive documents do exist. Requesters attach several example documents to this appeal:

- The 2012 "quick" reference guide that explains how to use the RCA, mentioned above. *See* Exh. C.
- A sample RCA Detailed Summary that shows application of the RCA to a specific individual. *See* Exh. D.
- A 2012 "Helpful Hints" document describing ICE workflow and use of the RCA and Subject to Mandatory Detention tool. *See* Exh. E at p. 93 (stating that "RCA

[16] U.S. Government Accountability Office, *ALTERNATIVES TO DETENTION*, at 8, 27-28.
[17] To the best of Requesters' knowledge, the documents previously released to AIC are currently not publicly available, but Requesters were able to obtain copies of the documents from AIC.
[18] *See* Exh. A (requesting "[a] document, 'U.S. ICE, Enforcement and Removal Operations, Law Enforcement Systems and Analysis, *Risk Classification Assessment (RCA) Quick Reference Guide Version 1.0*, (May 2012)).

will use these charges to determine if an alien is subject to mandatory detention per Statutes and Allegations"), and 94 (stating the mandatory detention tab is "automatically populated").

- A December 2012 email describing training for deployment of the RCA. *See* Exh. F. This email specifically refers to the "RCA Playbook," a document that Requesters have not received.
- A 2012 memorandum describing the deployment of RCA and briefly mentioning the role of human discretion and mandatory detention. *See* Exh. G.
- A 2012 presentation titled "RCA Training and Deployment Update for Baltimore and Washington." *See* Exh. H. This presentation identifies two "[a]dditional resources": the Risk Classification (RCA) Quick Reference Guide version 3.0, and the RCA Scenario Playbook version 1.0. Requesters do not have copies of either of these documents. *Id.* at p. 12. The document also states that RCA applies "business rules" to assess mandatory detention. *Id.* at p. 4.
- A January 3, 2013 document entitled "Risk Classification Assessment (RCA) Module, Phase 1-4 Deployment Lessons Learned." *See* Exh. I. This document addresses issues that had arisen within ICE during its piloting of RCA. For example, the document notes that private contractors were participating to some extent in ICE's RCA process, even though contractors were not receiving similar training and do not have "required understanding" of certain forms" (p. 1); that state and local officers under INA § 287(g) are participating in the RCA process (p. 2); and that ICE officers are showing "confusion" and requesting additional guidance on determining valid ID, substance abuse, and "community ties" (pp. 3-4).

ICE's statement that no responsive records were found – in the face of numerous example documents released in the past – demonstrates that the search method must not have been reasonable. While the documents described in this section demonstrate that ICE has responsive documents, they do not satisfy Requesters' FOIA request. The current request covers a different scope and timeframe than the prior request.

In this administrative appeal, Requesters can do more than simply assert that there must be responsive documents. Requesters can point to specific, example documents that were released to a different party. These documents were created by the very office ICE purportedly searched, and relate to the subject matter of the requests using precisely the same terminology as in the requests. Requesters can also identify two responsive documents not in its possession: the RCA Quick Reference Guide version 3.0, and the RCA Scenario Playbook. *See* Exh. H at p. 12. When the record reveals "positive indications of overlooked materials," courts have ruled that an agency's search was inadequate. *See, e.g., Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999) (noting that search was inadequate because agency records suggested that responsive documents were held by a different office that was not searched). ICE's search here was inadequate.

**C. The ICE FOIA Office Did Not Search All Locations Likely to Have Records**

Finally, the ICE FOIA Office's search was inadequate because it did not search all locations likely to have records. "It is well-settled that if an agency has reason to know that

certain places may contain responsive documents, it is obligated under FOIA to search barring an undue burden." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999).

Requesters seek information relating to the development and implementation of the RCA and its component tools. Accordingly, a reasonable search should have included offices in addition to the two offices searched by ICE. Specifically, Requesters can identify four other offices that may have responsive information: the Office of State & Local Coordination, the Office of Management & Administration, the Office of Principal Legal Advisor, and ICE headquarters. *See* Exh. J (ICE organizational chart).[19]

Office of State & Local Coordination. The Office of State & Local Coordination may have responsive records because, upon information and belief, both the RCA and Subject to Mandatory Detention tool rely on criminal history information, including arrests, charges and convictions, many of which are derived from state and local law enforcement systems.[20] Additionally, local law enforcement officers, under INA § 287(g), appear to play a role in the RCA process that determines detention, from released documents.[21]

Office of Management & Administration. A search of the Office of Management & Administration is also necessary, because that office and its subdivisions are likely to have information related to training given to ICE officers using the tool. Requesters specifically asked for documents relating to "instructions, guidance or training to DHS officers or contractors" for use of the RCA tool. *See* Exh. A at p. 5 (item 8). The Office of Management & Administration specifically includes a "Training & Development" department, which is likely to have information on training or development of the RCA tool. ICE has already released one such document, the RCA Quick Reference Guide, to a different requester, and other emails describe required training.[22]

Office of the Principal Legal Advisor. The Office of the Principal Legal Advisor may also have responsive information about the development and criteria for RCA and the Subject to Mandatory Detention tools, because, upon information and belief, these tools identify noncitizens who are subject to mandatory detention by statute or regulation. Requesters expect that ICE legal counsel were involved in, or at least reviewed, the criteria to ensure that they match the legal requirements. The Office of the Principal Legal Advisor is likely to have this type of information.

ICE Headquarters. Lastly, the ICE Headquarters Office is very likely to have information regarding RCA. Considering that the White House has trumpeted the development of RCA, and the ICE Director has testified to Congress multiple times on RCA, , it is highly

---

[19] This chart can also be found at http://www.dhs.gov/xlibrary/assets/org-chart-ice.pdf.
[20] Exh. C (RCA Quick Reference Guide) at p. 1 ("RCA will utilize data that has been entered into the Crime Entry Screen (CES) to evaluate an individual's criminal history, including all charges and convictions."); *id.* at 7 ("*It is important that the criminal history data has been correctly entered into both the encounter and person in CES.*") (emphasis in original).
[21] Exh. I at p. 2; *see also* Exh. C (RCA Quick Reference Guide) at 1 ("Agents/officers will also provide inputs based on information gathered during the intake process."); *id.* at 7 ("Additional information regarding the individual will come from the intake interview, and will detail such information as Security Threat Group affiliation.")
[22] Exh. G.

likely that discussions and guidance regarding development and implementation of the RCA and its component tools have occurred at the highest levels of ICE.

## III. Conclusion

For the reasons described above, Requesters respectfully appeal the ICE FOIA Office's final determination that no records exist. As described in Section I.A, it is simply implausible that there are no documents related to the development, criteria, training and implementation of a recognized government program. ICE's search was inadequate for two reasons. First, ICE's search of the two offices it identified was inadequate, because it did not locate documents known to exist. This document fall squarely within several of the items requested, uses precisely the same terminology as Requesters' FOIA request, and in fact was specifically requested by name. This is not a situation in which an agency simply overlooked one document when doing a comprehensive collection and production; in this instance, the agency claims it has no records at all, despite the fact that it produced numerous documents to a different FOIA requester. Second, the search was inadequate because ICE did not search all offices likely to have information. Specifically, the Office of State & Local Coordination, the Office of Management & Administration, the Office of the Principal Legal Advisor, and ICE Headquarters are likely to have responsive information, and should have been searched.

The Requesters certify that the above information is true and correct to the best of the Requesters' knowledge. Should you have any questions, please contact Requesters using the contact information below, or the mailing address in the letterhead on the first page of this appeal.

Sincerely,

Katherine Evans
Teaching Fellow, University of Minnesota Law School
evans407@umn.edu or (612) 625-5515

Benjamin Casper
Visiting Associate Professor, University of Minnesota Law School
caspe010@umn.edu or (612) 625-5515

Robert Koulish
Professor, University of Maryland
rkhoulish@umd.edu or (410) 925-3894

Enclosures

**List of Exhibits:**

| | |
|---|---|
| Exhibit A: | FOIA Request (October 15, 2014) |
| Exhibit B: | ICE "No Records" Response (November 7, 2014) |
| Exhibit C: | Risk Classification Assessment (RCA) Quick Reference Guide v. 1.0 (May 2012) |
| Exhibit D: | Sample RCA Detailed Summary |
| Exhibit E: | "Helpful Hints when Starting an RCA for Detain/Release Decision," December 2012 |
| Exhibit F: | December 12, 2014 email titled "Risk Classification Assessment (RCA) Deployment" |
| Exhibit G: | August 2012 memo from Gary Mead, Executive Associate Director, Subject: Risk Classification and Assessment |
| Exhibit H: | March 2012 "RCA Training and Deployment Update for Baltimore and Washington" |
| Exhibit I: | January 3, 2013 document entitled "Risk Classification Assessment (RCA) Module, Phase 1-4 Deployment Lessons Learned" |
| Exhibit J: | ICE Organizational Chart (from http://www.dhs.gov/xlibrary/assets/org-chart-ice.pdf) |

English Customer Service USPS Mobile Register / Sign In

USPS.COM

# USPS Tracking™

Customer Service ›
Have questions? We're here to help.

Tracking Number: EM392769135US

Updated Delivery Day: **Wednesday, January 7, 2015**
Scheduled Delivery Day: Tuesday, January 6, 2015, 12:00 pm
**Money Back Guarantee**
Signed for By: K LUSBY // WASHINGTON, DC 20528 // 11:41 am

## Product & Tracking Information

**Postal Product:**
Priority Mail Express 1-Day™

**Features:**
PO to Addressee
Up to $100 insurance included
Restrictions Apply

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **January 7, 2015 , 11:41 am** | **Delivered** | **WASHINGTON, DC 20528** |
| Your item was delivered at 11:41 am on January 7, 2015 in WASHINGTON, DC 20528 to HOMELAND SEC 20528. The item was signed for by K LUSBY. | | |
| January 7, 2015 , 8:17 am | Arrived at Post Office | WASHINGTON, DC 20018 |
| January 6, 2015 , 12:31 pm | Available for Pickup | WASHINGTON, DC 20528 |
| January 6, 2015 , 12:09 pm | Departed USPS Facility | WASHINGTON, DC 20074 |
| January 6, 2015 , 9:12 am | Arrived at USPS Facility | WASHINGTON, DC 20074 |
| January 5, 2015 , 8:07 pm | Departed USPS Facility | SAINT PAUL, MN 55111 |
| January 5, 2015 , 7:25 pm | Arrived at USPS Origin Facility | SAINT PAUL, MN 55111 |
| January 5, 2015 , 7:00 pm | Departed USPS Facility | MINNEAPOLIS, MN 55401 |
| January 5, 2015 , 6:16 pm | Arrived at USPS Origin Facility | MINNEAPOLIS, MN 55401 |
| January 5, 2015 , 5:09 pm | Departed Post Office | MINNEAPOLIS, MN 55415 |
| January 5, 2015 , 3:50 pm | Acceptance | MINNEAPOLIS, MN 55415 |

## Available Actions

Proof of Delivery

Text Updates

Email Updates

## Track Another Package

**Tracking (or receipt) number**

Track It

**Bianchi-Rossi, Deanna**

| | |
|---|---|
| **From:** | trackingupdates@fedex.com |
| **Sent:** | Tuesday, January 06, 2015 11:11 AM |
| **To:** | Bianchi-Rossi, Deanna |
| **Subject:** | FedEx Shipment 772460431509 Delivered |

---

This tracking update has been requested by:

Company Name: Dorsey & Whitney LLP
Name: Shannon Bjorklund
E-mail: bjorklund.shannon@dorsey.com

Message: PSShip eMail Notification

---

Our records indicate that the following shipment has been delivered:

Reference: 02016-700164.00004
Ship (P/U) date: Jan 5, 2015
Delivery date: Jan 6, 2015 11:47 AM
Sign for by: R.GILL
Delivery location: WASHINGTON, DC
Delivered to: Shipping/Receiving
Service type: FedEx Priority Overnight
Packaging type: FedEx Pak
Number of pieces: 1
Weight: 3.00 lb.
Special handling/Services: Deliver Weekday

Tracking number: 772460431509

| Shipper Information | Recipient Information |
|---|---|
| Shannon Bjorklund | Associate General Counsel (General Law) |
| Dorsey & Whitney LLP | 245 MURRAY LN SW |
| 50 S Sixth Street | WASHINGTON |
| Suite 1500 | DC |
| Minneapolis | US |
| MN | 20528 |
| US | |
| 55402 | |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 11:10 AM CST on 01/06/2015.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the status of this shipment online, please use the following:
https://www.fedex.com/insight/findit/nrp.jsp?tracknumbers=772460431509&language=en&opco=FX&clientype=ivpodalrt

This tracking update has been sent to you by FedEx on the behalf of the Requestor noted above. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

**Bianchi-Rossi, Deanna**

**From:** trackingupdates@fedex.com
**Sent:** Tuesday, January 06, 2015 11:11 AM
**To:** Bianchi-Rossi, Deanna
**Subject:** FedEx Shipment 772460477794 Delivered

---

This tracking update has been requested by:

Company Name: Dorsey & Whitney LLP
Name: Shannon Bjorklund
E-mail: bjorklund.shannon@dorsey.com

Message: PSShip eMail Notification

---

Our records indicate that the following shipment has been delivered:

Reference: 02016-700164.4
Ship (P/U) date: Jan 5, 2015
Delivery date: Jan 6, 2015 11:47 AM
Sign for by: R.GILL
Delivery location: Washington, DC
Delivered to: Shipping/Receiving
Service type: FedEx Priority Overnight
Packaging type: FedEx Pak
Number of pieces: 1
Weight: 3.00 lb.
Special handling/Services: Deliver Weekday

Tracking number: 772460477794

| Shipper Information | Recipient Information |
|---|---|
| Shannon Bjorklund | U.S. Immigration and Customs |
| Dorsey & Whitney LLP | Office of Principal Legal Advisor |
| 50 S Sixth Street | Freedom of Information Act |
| Suite 1500 | Office |
| Minneapolis | U.S. Depart of Homeland Security |
| MN | Washington |
| US | DC |
| 55402 | US |
| | 20536 |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 11:10 AM CST on 01/06/2015.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the status of this shipment online, please use the following:
https://www.fedex.com/insight/findit/nrp.jsp?tracknumbers=772460477794&language=en&opco=FX&clientype=ivpodalrt

This tracking update has been sent to you by FedEx on the behalf of the Requestor noted above. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

# Exhibit 6

U.S. Department of Homeland Security
500 12th St. SW; STOP 5009
Washington, DC 20536-5009

U.S. Immigration
and Customs
Enforcement

January 30, 2015

VIA REGULAR U.S. POSTAL SERVICE

Katherine Evans
University of Minnesota Law School
Center for New Americans – 190 W.F. Mondale Hall
229 19th Avenue South
Minneapolis, MN 55455

**RE: 2015-ICAP-00118, 2015-ICFO-03041**

Dear Ms. Evans:

This is in response to your letter dated January 5, 2015, which was received by ICE on January13, 2015, appealing the adverse determination by the U.S. Immigration and Customs Enforcement (ICE), Freedom of Information Act (FOIA) Office in response to your Freedom of Information Act/Privacy Act (FOIA/PA) request. The initial request was seeking information for the public and educational research regarding ICE's use of its risk classification assessment (RCA) tool and, specifically, ICE's use of the mandatory detention tool within RCA.

On November 7, 2014, ICE issued a final determination letter regarding your FOIA request. The letter informed you that, in response to your FOIA request, ICE conducted a search of the Office of Enforcement and Removal Operations and Office of Detention Policy and Planning and did not locate any records responsive to your FOIA request.

Under 6 C.F.R. § 5.9(a)(1), appeals to an adverse determination by the ICE FOIA Office "must be received by the Associate General Counsel (General Law) within 60 days of the date of the letter denying your request." Your appeal letter was received on January 13, 2015, which is more than sixty (60) days from the date of the November 7, 2014, final determination letter from the ICE FOIA Office. As such, ICE is administratively closing your appeal in this case pursuant to 6 C.F.R. § 5.9(a)(1).

This decision is the final action of the U.S. Immigration and Customs Enforcement concerning your FOIA/PA request. Inasmuch as you consider this to be denial of your appeal, you may obtain judicial review of this decision pursuant to the provisions of 5 U.S.C. § 552(a)(4)(B) in the United States District Court in the district in which you reside, or in which you have a principal place of business, or in which the agency records are situated, or in the District of Columbia.

Should you have any questions regarding this appeal, please contact ICE at ice-foia@dhs.gov. In the subject line of the email, please include the word "appeal," your appeal number, which is **2015-ICAP-00118** and the FOIA case number, which is **2015-ICFO-03041.**

Sincerely,

Debbie Seguin
Chief, Government Information Law Division
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

# Exhibit 7

UNIVERSITY OF MINNESOTA

*Twin Cities Campus*

*Law Clinics*
*Law School*

*190 Walter F. Mondale Hall*
*229 19th Avenue South*
*Minneapolis, MN 55455*

*Office: 612-625-5515*
*Fax: 612-624-5771*

February 2, 2015

***Via Email***

ICE FOIA
Government Information Law Division
ICE Office of the Principal Legal Advisor
U.S. Department of Homeland Security
ice-foia@dhs.gov

Re: Freedom of Information Act Appeal – Correspondence related to Appeal of Fee Waiver Denial: **Appeal No. 2015-ICAP-00118**
FOIA Request No. 2015-ICFO-03041 made by Professor Benjamin Casper (University of Minnesota Law School), Teaching Fellow Katherine Evans (University of Minnesota Law School), and Professor Robert Koulish (University of Maryland) on October 15, 2014

To whom it may concern:

On January 5, 2015, Requesters Professor Benjamin Casper (University of Minnesota Law School), Teaching Fellow Katherine Evans (University of Minnesota Law School), and Professor Robert Koulish (University of Maryland) (together, "Requesters") submitted an appeal of ICE's denial of Requesters' request for fee waiver approval. Requesters sent the letter via two methods: overnight mail via the United States Postal Service, and Next Day Delivery via Federal Express. FedEx confirmed that they delivered the appeal letter to both addresses on January 6, 2015. Although USPS stated that the package containing an additional copy of the appeal letter was "available for pickup" around noon on January 6, 2015, it was not delivered until around noon on January 7, 2015.

Requesters received a letter dated January 13, 2015, stating that the appeal was not received until January 13, 2015. For your convenience, Requesters are attaching copies of the confirmations they received confirming delivery by FedEx on January 6, 2015 and delivery by USPS on January 7, 2015.

If you have any questions, please do not hesitate to contact us using the contact information providéd below.

Sincerely,

Katherine Evans
Teaching Fellow, University of Minnesota Law School
evans407@umn.edu or (612) 625-5515

Benjamin Casper
Visiting Associate Professor, University of Minnesota Law School
caspe010@umn.edu or (612) 625-5515

Robert Koulish
Professor, University of Maryland
rkhoulish@umn.edu or (410) 925-3894

Enclosures

English Customer Service USPS Mobile Register / Sign In

USPS.COM

# USPS Tracking™

Customer Service ›
Have questions? We're here to help.

Tracking Number: EM392769135US

Updated Delivery Day: **Wednesday, January 7, 2015**
Scheduled Delivery Day: Tuesday, January 6, 2015, 12:00 pm
**Money Back Guarantee**
Signed for By: K LUSBY // WASHINGTON, DC 20528 // 11:41 am

## Product & Tracking Information

**Postal Product:**
Priority Mail Express 1-Day™

**Features:**
PO to Addressee

Up to $100 insurance included
Restrictions Apply

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **January 7, 2015 , 11:41 am** | Delivered | **WASHINGTON, DC 20528** |

Your item was delivered at 11:41 am on January 7, 2015 in WASHINGTON, DC 20528 to HOMELAND SEC 20528. The item was signed for by K LUSBY.

| | | |
|---|---|---|
| January 7, 2015 , 8:17 am | Arrived at Post Office | WASHINGTON, DC 20018 |
| January 6, 2015 , 12:31 pm | Available for Pickup | WASHINGTON, DC 20528 |
| January 6, 2015 , 12:09 pm | Departed USPS Facility | WASHINGTON, DC 20074 |
| January 6, 2015 , 9:12 am | Arrived at USPS Facility | WASHINGTON, DC 20074 |
| January 5, 2015 , 8:07 pm | Departed USPS Facility | SAINT PAUL, MN 55111 |
| January 5, 2015 , 7:25 pm | Arrived at USPS Origin Facility | SAINT PAUL, MN 55111 |
| January 5, 2015 , 7:00 pm | Departed USPS Facility | MINNEAPOLIS, MN 55401 |
| January 5, 2015 , 6:16 pm | Arrived at USPS Origin Facility | MINNEAPOLIS, MN 55401 |
| January 5, 2015 , 5:09 pm | Departed Post Office | MINNEAPOLIS, MN 55415 |
| January 5, 2015 , 3:50 pm | Acceptance | MINNEAPOLIS, MN 55415 |

## Available Actions

Proof of Delivery

Text Updates

Email Updates

## Track Another Package

**Tracking (or receipt) number**

Track It

**Customer Copy**
Label 11-F, April 2004

EM 392769135 US

**EXPRESS MAIL**
UNITED STATES POSTAL SERVICE®

**Post Office To Addressee**

**ORIGIN (POSTAL SERVICE USE ONLY)**

PO ZIP Code: 55415

Day of Delivery: ☐ Next ☐ 2nd ☐ 2nd Del. Day

Postage: $00.00

Scheduled Date of Delivery: Month 1 Day 6 15

Return Receipt Fee: $

Date Accepted: Mo. 1 Day 5 Year 15

Scheduled Time of Delivery: ☐ Noon ☐ 3 PM

COD Fee: $

Insurance Fee: $

Time Accepted: 3:55 ☐ AM ☐ PM

Military: ☐ 2nd Day ☐ 3rd Day

Total Postage & Fees: $00.00

Flat Rate ☐ or Weight: 2 lbs. 7 ozs.

Int'l Alpha Country Code

Acceptance Emp. Initials

**DELIVERY (POSTAL USE ONLY)**

| Delivery Attempt | Time | Employee Signature |
|---|---|---|
| Mo. Day | ☐ AM ☐ PM | |
| Delivery Attempt Mo. Day | Time ☐ AM ☐ PM | Employee Signature |
| Delivery Date Mo. Day | Time ☐ AM ☐ PM | Employee Signature |

WAIVER OF SIGNATURE

NO DELIVERY ☐ Weekend ☐ Holiday

**CUSTOMER USE ONLY**

METHOD OF PAYMENT:
Express Mail Corporate Acct. No. X554845

Federal Agency Acct. No. or Postal Service Acct. No.

**FROM:** (PLEASE PRINT) PHONE 612 340 2600

Shannon L. Bjorklund
DORSEY & WHITNEY LAW FIRM
50 S 6TH ST STE 1500
MINNEAPOLIS MN 55402-1553

**TO:** (PLEASE PRINT) PHONE 202 254-4001

Associate General Counsel
(General Law)
Department of Homeland Security
Washington, D.C. 20528

FOR PICKUP OR TRACKING: Visit www.usps.com or Call 1-800-222-1811

EMS

**Bianchi-Rossi, Deanna**

**From:** trackingupdates@fedex.com
**Sent:** Tuesday, January 06, 2015 11:11 AM
**To:** Bianchi-Rossi, Deanna
**Subject:** FedEx Shipment 772460477794 Delivered

---

This tracking update has been requested by:

Company Name: Dorsey & Whitney LLP
Name: Shannon Bjorklund
E-mail: bjorklund.shannon@dorsey.com

Message: PSShip eMail Notification

---

Our records indicate that the following shipment has been delivered:

Reference: 02016-700164.4
Ship (P/U) date: Jan 5, 2015
Delivery date: Jan 6, 2015 11:47 AM
Sign for by: R.GILL
Delivery location: Washington, DC
Delivered to: Shipping/Receiving
Service type: FedEx Priority Overnight
Packaging type: FedEx Pak
Number of pieces: 1
Weight: 3.00 lb.
Special handling/Services: Deliver Weekday

Tracking number: 772460477794

Shipper Information
Shannon Bjorklund
Dorsey & Whitney LLP
50 S Sixth Street
Suite 1500
Minneapolis
MN
US
55402

Recipient Information
U.S. Immigration and Customs
Office of Principal Legal Advisor
Freedom of Information Act
Office
U.S. Depart of Homeland Security
Washington
DC
US
20536

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 11:10 AM CST on 01/06/2015.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the status of this shipment online, please use the following:
https://www.fedex.com/insight/findit/nrp.jsp?tracknumbers=772460477794&language=en&opco=FX&clientype=ivpodalrt

This tracking update has been sent to you by FedEx on the behalf of the Requestor noted above. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

psship FedEx®

*package id*
0099900
*ship date*
Mon, Jan 05 2015
*to*
U.S. Immigration and Customs
Office of Principal Legal Advisor
U.S. Depart of Homeland Security
Freedom of Information Act Office
500 12th St, SW, Stop 5009
Washington , DC 20536-5009
United States
(202) 254-4001
*residential address*
No
*return label*
No
*notification type*
Delivery
*notification recipients*
bjorklund.shannon@do...
rossi.deanna@dorsey.com

*from*
Shannon Bjorklund (02016)
Dorsey & Whitney LLP
50 S Sixth Street
Suite 1500
Minneapolis , MN 55402
United States
(612) 492-6636
*billing*
Pro Bono (Challenge)...icans-ICE FOIA Challenge RCA
(700164-00004)
*operator*
Deanna Bianchi-Rossi
(612) 340-7812
rossi.deanna@dorsey.com
*create time*
01/05/15, 11:11AM

*vendor*
FedEx
*tracking number*
772460477794
*service*
FedEx Priority Overnight®
*packaging*
FedEx® Pak
*dimensions*
2.0 LBS
*signature*
Deliver without signature
*courtesy quote*
20.84

*Quote may not reflect all accessorial charges*

*Legal Terms and Conditions*

Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions, including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-800-463-3339).

©2003-2015 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
FedEx service marks are owned by Federal Express Corporation and are used by permission.
Other product and company names listed are trademarks or trade names of their respective companies.

**Bianchi-Rossi, Deanna**

**From:** trackingupdates@fedex.com
**Sent:** Tuesday, January 06, 2015 11:11 AM
**To:** Bianchi-Rossi, Deanna
**Subject:** FedEx Shipment 772460431509 Delivered

---

This tracking update has been requested by:

Company Name: Dorsey & Whitney LLP
Name: Shannon Bjorklund
E-mail: bjorklund.shannon@dorsey.com

Message: PSShip eMail Notification

---

Our records indicate that the following shipment has been delivered:

Reference: 02016-700164.00004
Ship (P/U) date: Jan 5, 2015
Delivery date: Jan 6, 2015 11:47 AM
Sign for by: R.GILL
Delivery location: WASHINGTON, DC
Delivered to: Shipping/Receiving
Service type: FedEx Priority Overnight
Packaging type: FedEx Pak
Number of pieces: 1
Weight: 3.00 lb.
Special handling/Services: Deliver Weekday

Tracking number: 772460431509

| Shipper Information | Recipient Information |
|---|---|
| Shannon Bjorklund | Associate General Counsel (General Law) |
| Dorsey & Whitney LLP | 245 MURRAY LN SW |
| 50 S Sixth Street | WASHINGTON |
| Suite 1500 | DC |
| Minneapolis | US |
| MN | 20528 |
| US | |
| 55402 | |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 11:10 AM CST on 01/06/2015.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the status of this shipment online, please use the following:
https://www.fedex.com/insight/findit/nrp.jsp?tracknumbers=772460431509&language=en&opco=FX&clientype=ivpodalrt

This tracking update has been sent to you by FedEx on the behalf of the Requestor noted above. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

*package id*
0099899
*ship date*
Mon, Jan 05 2015
*to*
Associate General Counsel

(General Law)
245 MURRAY LN SW
WASHINGTON , DC
20528-1002
United States
(202) 254-4001
*residential address*
No
*return label*
No
*notification type*
Delivery
*notification recipients*
bjorklund.shannon@do...
rossi.deanna@dorsey.com

*from*
Shannon Bjorklund
(02016)
Dorsey & Whitney LLP
50 S Sixth Street
Suite 1500
Minneapolis , MN 55402
United States
(612) 492-6636
*billing*
Pro Bono
(Challenge)...icans-ICE
FOIA Challenge RCA
(700164-00004)
*operator*
Deanna Bianchi-Rossi
(612) 340-7812
rossi.deanna@dorsey.com
*create time*
01/05/15, 11:09AM

*vendor*
FedEx
*tracking number*
772460431509
*service*
FedEx Priority Overnight®
*packaging*
FedEx® Pak
*dimensions*
2.0 LBS
*signature*
Deliver without signature
*courtesy quote*
20.84

*Quote may not reflect all accessorial charges*

## *Legal Terms and Conditions*

Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions, including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-800 -463-3339).

©2003-2015 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
FedEx service marks are owned by Federal Express Corporation and are used by permission.
Other product and company names listed are trademarks or trade names of their respective companies.

# Exhibit 8

UNIVERSITY OF MINNESOTA

*Twin Cities Campus*

*Law Clinics*
*Law School*

*190 Walter F. Mondale Hall*
*229 19th Avenue South*
*Minneapolis, MN 55455*

*Office: 612-625-5515*
*Fax: 612-624-5771*

March 24, 2015

Associate General Counsel (General Law)
Department of Homeland Security
245 Murray Lane SW
Washington, D.C. 20528
*Via Federal Express*

U.S. Immigration and Customs Enforcement
Office of Principal Legal Advisor
U.S. Department of Homeland Security
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
*Via Federal Express*

Associate General Counsel (General Law)
Department of Homeland Security
Washington, D.C. 20528
*Via U.S. Postal Service*

Re: Freedom of Information Act Appeal
Request Nos. 2015-ICFO-03041 and 2015-ICFO-03027 made by Professor Benjamin Casper (University of Minnesota Law School), Teaching Fellow Katherine Evans (University of Minnesota Law School), and Professor Robert Koulish (University of Maryland) on October 15, 2014
Appeal of Denial of FOIA Appeal as Untimely Fee Waiver Denial (dated January 5, 2015) – appeal letter delivered January 30, 2015

To whom it may concern:

Requesters write to you respectfully requesting reconsideration of the denial of two FOIA Request Appeals as untimely. As described in greater detail below, tracking confirmations prove that the appeals were timely received within the 60-day period, and rather than spend valuable time and resources appealing clerical errors in federal district court, we respectfully request that the letter receipt dates be rectified and the FOIA appeals be reconsidered on the merits Additionally, in light of the fact that the FOIA requests should have been decided on the merits, we also respectfully request that you reconsider the two accompanying fee waiver requests denied as moot as a result of the clerical error.

FOIA requests 2015-ICFO-3041 and 2015-ICFO-03027 were initially submitted on October 15, 2014 and denied on November 7, 2014 on the stated grounds that no documents responsive to our requests were located. We appealed in letters dated January 5, 2015. Both letters were sent via two methods: overnight mail via the United States Postal Service and Next Day Delivery via Federal Express. FedEx confirmed that they delivered the appeal letter to both addresses on January 6, 2015. USPS stated that the packages containing additional copies of the appeal letters were "available for pickup" around noon on January 6, 2015, and confirmed

delivery on January 7, 2015. Thus, the Associate General Counsel received both appeal letters within 60 days as required by 6 C.F.R. § 5.9(a)(1).

Requesters received a letter dated January 13, 2015, stating that the appeal was not received until January 13, 2015. On February 2, 2015, Requesters sent an e-mail correcting the appeal letters' receipt date and provided copies of confirmations from FedEx of delivery on January 6, 2015, and confirmations from USPS of delivery on January 7, 2015.

Unfortunately, we did not receive confirmation that the February 2nd date correction letters were received and the letters' receipt dates were not corrected. In a letter dated January 30, 2015, DHS denied both FOIA appeals as untimely. In light of these facts, we respectfully request reconsideration of both FOIA requests and their corresponding fee waivers.

Requesters' prior letters and tracking information are attached for your convenience. We look forward to resolving this matter in a manner that is both efficient and agreeable for all parties involved.

Sincerely,

Katherine Evans
Teaching Fellow, University of Minnesota Law School
evans407@umn.edu or (612) 625-5515

Benjamin Casper
Visiting Associate Professor, University of Minnesota Law School
caspe010@umn.edu or (612) 625-5515

Robert Koulish
Professor, University of Maryland
rkhoulish@umn.edu or (410) 925-3894

Enclosures

English Customer Service USPS Mobile Register / Sign In

USPS.COM

# USPS Tracking™

Customer Service ›
Have questions? We're here to help.

Tracking Number: EM392769135US

Updated Delivery Day: **Wednesday, January 7, 2015**
Scheduled Delivery Day: Tuesday, January 6, 2015, 12:00 pm
**Money Back Guarantee**
Signed for By: K LUSBY // WASHINGTON, DC 20528 // 11:41 am

## Product & Tracking Information

**Postal Product:** Priority Mail Express 1-Day™

**Features:** PO to Addressee

Up to $100 insurance included
Restrictions Apply

| Date & Time | Status of Item | Location |
|---|---|---|
| January 7, 2015 , 11:41 am | Delivered | WASHINGTON, DC 20528 |
| Your item was delivered at 11:41 am on January 7, 2015 in WASHINGTON, DC 20528 to HOMELAND SEC 20528. The item was signed for by K LUSBY. | | |
| January 7, 2015 , 8:17 am | Arrived at Post Office | WASHINGTON, DC 20018 |
| January 6, 2015 , 12:31 pm | Available for Pickup | WASHINGTON, DC 20528 |
| January 6, 2015 , 12:09 pm | Departed USPS Facility | WASHINGTON, DC 20074 |
| January 6, 2015 , 9:12 am | Arrived at USPS Facility | WASHINGTON, DC 20074 |
| January 5, 2015 , 8:07 pm | Departed USPS Facility | SAINT PAUL, MN 55111 |
| January 5, 2015 , 7:25 pm | Arrived at USPS Origin Facility | SAINT PAUL, MN 55111 |
| January 5, 2015 , 7:00 pm | Departed USPS Facility | MINNEAPOLIS, MN 55401 |
| January 5, 2015 , 6:16 pm | Arrived at USPS Origin Facility | MINNEAPOLIS, MN 55401 |
| January 5, 2015 , 5:09 pm | Departed Post Office | MINNEAPOLIS, MN 55415 |
| January 5, 2015 , 3:50 pm | Acceptance | MINNEAPOLIS, MN 55415 |

## Available Actions

Proof of Delivery

Text Updates

Email Updates

## Track Another Package

Tracking (or receipt) number

Track It

**Customer Copy**
Label 11-F, April 2004

EM 392769135 US

**EXPRESS MAIL**
UNITED STATES POSTAL SERVICE®

**Post Office To Addressee**

**ORIGIN (POSTAL SERVICE USE ONLY)**

PO ZIP Code: 55415
Day of Delivery: ☐ Next ☐ 2nd ☐ 2nd Del. Day
Postage: $00.00
Scheduled Date of Delivery: Month 1 Day 15
Return Receipt Fee: $
Date Accepted: 1 5 15 (Mo. Day Year)
Scheduled Time of Delivery: ☐ Noon ☐ 3 PM
COD Fee: $
Insurance Fee: $
Time Accepted: 3:55 ☐ AM ☐ PM
Military: ☐ 2nd Day ☐ 3rd Day
Total Postage & Fees: $00.00
Flat Rate ☐ or Weight: 2 lbs. 7 ozs.
Int'l Alpha Country Code
Acceptance Emp. Initials

**DELIVERY (POSTAL USE ONLY)**

Delivery Attempt: Mo. Day | Time ☐ AM ☐ PM | Employee Signature
Delivery Attempt: Mo. Day | Time ☐ AM ☐ PM | Employee Signature
Delivery Date: Mo. Day | Time ☐ AM ☐ PM | Employee Signature

WAIVER OF SIGNATURE
NO DELIVERY ☐ Weekend ☐ Holiday

**CUSTOMER USE ONLY**
METHOD OF PAYMENT:
Express Mail Corporate Acct. No. X554845
Federal Agency Acct. No. or Postal Service Acct. No.

FROM: (PLEASE PRINT) PHONE 612 340 2600

Shannon L. Bjorklund
DORSEY & WHITNEY LAW FIRM
50 S 6TH ST STE 1500
MINNEAPOLIS MN 55402-1553

TO: (PLEASE PRINT) PHONE 202-254-4001

Associate General Counsel
(General Law)
Department of Homeland Security
Washington, D.C. 20528

FOR PICKUP OR TRACKING: Visit www.usps.com or Call 1-800-222-1811

EMS

**Bianchi-Rossi, Deanna**

**From:** trackingupdates@fedex.com
**Sent:** Tuesday, January 06, 2015 11:11 AM
**To:** Bianchi-Rossi, Deanna
**Subject:** FedEx Shipment 772460477794 Delivered

---

This tracking update has been requested by:

Company Name: Dorsey & Whitney LLP
Name: Shannon Bjorklund
E-mail: bjorklund.shannon@dorsey.com

Message: PSShip eMail Notification

---

Our records indicate that the following shipment has been delivered:

Reference: 02016-700164.4
Ship (P/U) date: Jan 5, 2015
Delivery date: Jan 6, 2015 11:47 AM
Sign for by: R.GILL
Delivery location: Washington, DC
Delivered to: Shipping/Receiving
Service type: FedEx Priority Overnight
Packaging type: FedEx Pak
Number of pieces: 1
Weight: 3.00 lb.
Special handling/Services: Deliver Weekday

Tracking number: 772460477794

| Shipper Information | Recipient Information |
|---|---|
| Shannon Bjorklund | U.S. Immigration and Customs |
| Dorsey & Whitney LLP | Office of Principal Legal Advisor |
| 50 S Sixth Street | Freedom of Information Act |
| Suite 1500 | Office |
| Minneapolis | U.S. Depart of Homeland Security |
| MN | Washington |
| US | DC |
| 55402 | US |
| | 20536 |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 11:10 AM CST on 01/06/2015.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the status of this shipment online, please use the following:
https://www.fedex.com/insight/findit/nrp.jsp?tracknumbers=772460477794&language=en&opco=FX&clientype=ivpodalrt

This tracking update has been sent to you by FedEx on the behalf of the Requestor noted above. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

psship FedEx®

*package id*
0099900
*ship date*
Mon, Jan 05 2015
*to*
U.S. Immigration and Customs
Office of Principal Legal Advisor
U.S. Depart of Homeland Security
Freedom of Information Act Office
500 12th St, SW, Stop 5009
Washington , DC 20536-5009
United States
(202) 254-4001
*residential address*
No
*return label*
No
*notification type*
Delivery
*notification recipients*
bjorklund.shannon@do...
rossi.deanna@dorsey.com

*from*
Shannon Bjorklund (02016)
Dorsey & Whitney LLP
50 S Sixth Street
Suite 1500
Minneapolis , MN 55402
United States
(612) 492-6636
*billing*
Pro Bono (Challenge)...icans-ICE FOIA Challenge RCA (700164-00004)
*operator*
Deanna Bianchi-Rossi
(612) 340-7812
rossi.deanna@dorsey.com
*create time*
01/05/15, 11:11AM

*vendor*
FedEx
*tracking number*
772460477794
*service*
FedEx Priority Overnight®
*packaging*
FedEx® Pak
*dimensions*
2.0 LBS
*signature*
Deliver without signature
*courtesy quote*
20.84

*Quote may not reflect all accessorial charges*

*Legal Terms and Conditions*

Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions, including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-800-463-3339).

©2003-2015 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
FedEx service marks are owned by Federal Express Corporation and are used by permission.
Other product and company names listed are trademarks or trade names of their respective companies.

**Bianchi-Rossi, Deanna**

**From:** trackingupdates@fedex.com
**Sent:** Tuesday, January 06, 2015 11:11 AM
**To:** Bianchi-Rossi, Deanna
**Subject:** FedEx Shipment 772460431509 Delivered

---

This tracking update has been requested by:

Company Name: Dorsey & Whitney LLP
Name: Shannon Bjorklund
E-mail: bjorklund.shannon@dorsey.com

Message: PSShip eMail Notification

---

Our records indicate that the following shipment has been delivered:

Reference: 02016-700164.00004
Ship (P/U) date: Jan 5, 2015
Delivery date: Jan 6, 2015 11:47 AM
Sign for by: R.GILL
Delivery location: WASHINGTON, DC
Delivered to: Shipping/Receiving
Service type: FedEx Priority Overnight
Packaging type: FedEx Pak
Number of pieces: 1
Weight: 3.00 lb.
Special handling/Services: Deliver Weekday

Tracking number: 772460431509

| Shipper Information | Recipient Information |
|---|---|
| Shannon Bjorklund | Associate General Counsel |
| Dorsey & Whitney LLP | (General Law) |
| 50 S Sixth Street | 245 MURRAY LN SW |
| Suite 1500 | WASHINGTON |
| Minneapolis | DC |
| MN | US |
| US | 20528 |
| 55402 | |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 11:10 AM CST on 01/06/2015.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the status of this shipment online, please use the following:
https://www.fedex.com/insight/findit/nrp.jsp?tracknumbers=772460431509&language=en&opco=FX&clientype=ivpodalrt

This tracking update has been sent to you by FedEx on the behalf of the Requestor noted above. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

psship FedEx®

*package id*
0099899
*ship date*
Mon, Jan 05 2015
*to*
Associate General Counsel

(General Law)
245 MURRAY LN SW
WASHINGTON , DC
20528-1002
United States
(202) 254-4001
*residential address*
No
*return label*
No
*notification type*
Delivery
*notification recipients*
bjorklund.shannon@do...
rossi.deanna@dorsey.com

*from*
Shannon Bjorklund
(02016)
Dorsey & Whitney LLP
50 S Sixth Street
Suite 1500
Minneapolis , MN 55402
United States
(612) 492-6636
*billing*
Pro Bono
(Challenge)...icans-ICE
FOIA Challenge RCA
(700164-00004)
*operator*
Deanna Bianchi-Rossi
(612) 340-7812
rossi.deanna@dorsey.com
*create time*
01/05/15, 11:09AM

*vendor*
FedEx
*tracking number*
772460431509
*service*
FedEx Priority Overnight®
*packaging*
FedEx® Pak
*dimensions*
2.0 LBS
*signature*
Deliver without signature
*courtesy quote*
20.84

*Quote may not reflect all accessorial charges*

## Legal Terms and Conditions

Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions, including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-800 -463-3339).

©2003-2015 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
FedEx service marks are owned by Federal Express Corporation and are used by permission.
Other product and company names listed are trademarks or trade names of their respective companies.

psship FedEx®

*package id*
0105416
*ship date*
Tue, Mar 24 2015
*to*
Associate Gen Counsel
Dept of Homeland Security
(Gen Law)
245 MURRAY LN SW
WASHINGTON , DC
20528-1002
United States
202-254-4001
*residential address*
No
*return label*
No
*notification type*
Delivery
*notification recipients*
szalapski.vanessa@do...
maikkula.myrna@dorse...

*from*
Vanessa Szalapski
(01583)
Dorsey & Whitney LLP
50 S Sixth Street
Suite 1500
Minneapolis , MN 55402
United States
(612) 492-6743
*billing*
Pro Bono
(Challenge)...icans-ICE
FOIA Challenge RCA
(700164-00004)
*operator*
Myrna Maikkula
612-492-6649
maikkula.myrna@dorsey.co
m
*create time*
03/24/15, 3:41PM

*vendor*
FedEx
*tracking number*
780395803451
*service*
FedEx Priority Overnight®
*packaging*
FedEx® Envelope
*signature*
Deliver without signature
*courtesy quote*
12.22

*Quote may not reflect all accessorial charges*

©2003-2015 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
FedEx service marks are owned by Federal Express Corporation and are used by permission.
Other product and company names listed are trademarks or trade names of their respective companies.

**Maikkula, Myrna**

**From:** trackingupdates@fedex.com
**Sent:** Wednesday, March 25, 2015 9:10 AM
**To:** Maikkula, Myrna
**Subject:** FedEx Shipment 780395803451 Delivered

---

This tracking update has been requested by:

Company Name: Dorsey & Whitney LLP
Name: Vanessa Szalapski
E-mail: szalapski.vanessa@dorsey.com

Message: PSShip eMail Notification

---

Our records indicate that the following shipment has been delivered:

Reference: 01583-700164.00004
Ship (P/U) date: Mar 24, 2015
Delivery date: Mar 25, 2015 9:51 AM
Sign for by: .GILL
Delivery location: WASHINGTON, DC
Delivered to: Shipping/Receiving
Service type: FedEx Priority Overnight
Packaging type: FedEx Envelope
Number of pieces: 1
Weight: 0.50 lb.
Special handling/Services: Deliver Weekday

Tracking number: 780395803451

| Shipper Information | Recipient Information |
|---|---|
| Vanessa Szalapski | Associate Gen Counsel |
| Dorsey & Whitney LLP | Dept of Homeland Security (Gen Law) |
| 50 S Sixth Street | 245 MURRAY LN SW |
| Suite 1500 | WASHINGTON |
| Minneapolis | DC |
| MN | US |
| US | 20528 |
| 55402 | |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 9:10 AM CDT on 03/25/2015.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the status of this shipment online, please use the following:
https://www.fedex.com/insight/findit/nrp.jsp?tracknumbers=780395803451&language=en&opco=FX&clientype=ivpodalrt

This tracking update has been sent to you by FedEx on the behalf of the Requestor noted above. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

**Customer Copy**
Label 11-F, April 2004

EV 918898654 US

**EXPRESS MAIL**
UNITED STATES POSTAL SERVICE®

**Post Office To Addressee**

**ORIGIN (POSTAL SERVICE USE ONLY)**

| | | |
|---|---|---|
| PO ZIP Code: 55401 | Day of Delivery: ☐ Next ☐ 2nd ☒ 2nd Del. Day | Postage: $ 19.99 |
| Date Accepted: Mo. 3 Day 24 Year 15 | Scheduled Date of Delivery: Month 3 Day 26 | Return Receipt Fee: $ |
| Time Accepted: 7:44 ☐ AM ☒ PM | Scheduled Time of Delivery: ☒ Noon ☐ 3 PM | COD Fee: $ / Insurance Fee: $ |
| | Military: ☐ 2nd Day ☐ 3rd Day | Total Postage & Fees: $ 19.99 |
| Flat Rate ☒ or Weight: lbs. 3 ozs. 30 | Int'l Alpha Country Code | Acceptance Emp. Initials: Kim |

**DELIVERY (POSTAL USE ONLY)**

| | | |
|---|---|---|
| Delivery Attempt: Mo. Day | Time: ☐ AM ☐ PM | Employee Signature |
| Delivery Attempt: Mo. Day | Time: ☐ AM ☐ PM | Employee Signature |
| Delivery Date: Mo. Day | Time: ☐ AM ☐ PM | Employee Signature |

[Postmark: USPS 55401 MAR 24 2015]

☐ **WAIVER OF SIGNATURE** (Domestic Mail Only) Additional merchandise insurance is void if waiver of signature is requested. I wish delivery to be made without obtaining signature of addressee or addressee's agent (if delivery employee judges that article can be left in secure location) and I authorize that delivery employee's signature constitutes valid proof of delivery.

NO DELIVERY ☐ Weekend ☐ Holiday

Customer Signature

**CUSTOMER USE ONLY**
METHOD OF PAYMENT:
Express Mail Corporate Acct. No. X554845

Federal Agency Acct. No. or Postal Service Acct. No.

**FROM:** (PLEASE PRINT) PHONE (612) 340-2600

DORSEY & WHITNEY LAW FIRM
50 S 6TH ST STE 1500
MINNEAPOLIS MN 55402-1498

1583-700164-4
Y Strawinski
102

**TO:** (PLEASE PRINT) PHONE 202 254-4001

Associate General Counsel
(Gen Law)
Dept Homeland Security
Washington, DC 20528

FOR PICKUP OR TRACKING: Visit **www.usps.com** or Call 1-800-222-1811

EMS

EV918898654US

psship FedEx®

*package id*
0105420
*ship date*
Tue, Mar 24 2015
*to*
US Immigration & Customs Enforc
Office of Principal Legal Advisor
500 12TH ST SW STOP 5009
WASHINGTON , DC 20536-5009
United States
202-254-4001
*residential address*
No
*return label*
No
*notification type*
Delivery
*notification recipients*
szalapski.vanessa@do...
maikkula.myrna@dorse...

*from*
Vanessa Szalapski (01583)
Dorsey & Whitney LLP
50 S Sixth Street
Suite 1500
Minneapolis , MN 55402
United States
(612) 492-6743
*billing*
Pro Bono (Challenge)...icans-ICE FOIA Challenge RCA
(700164-00004)
*operator*
Myrna Maikkula
612-492-6649
maikkula.myrna@dorsey.com
*create time*
03/24/15, 3:45PM

*vendor*
FedEx
*tracking number*
780395843205
*service*
FedEx Priority Overnight®
*packaging*
FedEx® Envelope
*signature*
Deliver without signature
*courtesy quote*
12.22

*Quote may not reflect all accessorial charges*

©2003-2015 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
FedEx service marks are owned by Federal Express Corporation and are used by permission.
Other product and company names listed are trademarks or trade names of their respective companies.

**Maikkula, Myrna**

**From:** trackingupdates@fedex.com
**Sent:** Wednesday, March 25, 2015 9:10 AM
**To:** Maikkula, Myrna
**Subject:** FedEx Shipment 780395843205 Delivered

---

This tracking update has been requested by:

Company Name: Dorsey & Whitney LLP
Name: Vanessa Szalapski
E-mail: szalapski.vanessa@dorsey.com

Message: PSShip eMail Notification

---

Our records indicate that the following shipment has been delivered:

Reference: 01583-700164.00004
Ship (P/U) date: Mar 24, 2015
Delivery date: Mar 25, 2015 9:51 AM
Sign for by: .GILL
Delivery location: WASHINGTON, DC
Delivered to: Shipping/Receiving
Service type: FedEx Priority Overnight
Packaging type: FedEx Envelope
Number of pieces: 1
Weight: 0.50 lb.
Special handling/Services: Deliver Weekday

Tracking number: 780395843205

| Shipper Information | Recipient Information |
|---|---|
| Vanessa Szalapski | US Immigration & Customs Enforc |
| Dorsey & Whitney LLP | Office of Principal Legal Advisor |
| 50 S Sixth Street | 500 12TH ST SW STOP 5009 |
| Suite 1500 | WASHINGTON |
| Minneapolis | DC |
| MN | US |
| US | 20536 |
| 55402 | |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 9:09 AM CDT on 03/25/2015.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the status of this shipment online, please use the following:
https://www.fedex.com/insight/findit/nrp.jsp?tracknumbers=780395843205&language=en&opco=FX&clientype=ivpodalrt

This tracking update has been sent to you by FedEx on the behalf of the Requestor noted above. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

# Exhibit 9

U.S. Department of Homeland Security
500 12th St. SW; STOP 5009
Washington, DC 20536-5009

U.S. Immigration
and Customs
Enforcement

April 23, 2015

Katherine Evans
University of Minnesota Law School
Center for New Americans - 190 W.F. Mondale Hall
229 19th Avenue South
Minneapolis, MN 55455

**RE: 2015-ICAP-00276, 2015-ICAP-00118, 2015-ICFO-03041**

Dear Ms. Evans:

This is in response to your letter dated March 24, 2015, and received on March 26, 2015, respectfully requesting reconsideration of the denial of your Freedom of Information Act (FOIA) Appeal as untimely. Your FOIA request to U.S. Immigration & Customs Enforcement (ICE) seeks information regarding ICE's use of its risk classification assessment (RCA) tool and specifically, ICE's use of the mandatory detention tool within RCA (18 items detailed in the request).

The administrative record indicates that the ICE FOIA Office stated in a letter dated January 30, 2015, "[u]nder 6 C.F.R. § 5.9(a)(1), appeals to an adverse determination by the ICE FOIA Office 'must be received by the Associate General Counsel (General Law) within 60 days of the date of the letter denying your request.' Your appeal letter was received on January 13, 2015, which is more than sixty (60) days from the date of the November 7, 2014, final determination letter from the ICE FOIA Office. As such, ICE is administratively closing your appeal in this case pursuant to 6 C.F.R. § 5.9(a)(1)."

Upon review of the delivery receipts that you provided with your March 24, 2015 letter, ICE finds that your appeal dated January 5, 2015, was delivered timely on January 6, 2015.

ICE records indicate that the ICE FOIA issued a final response in a letter dated November 7, 2014, and stated "ICE has considered your request under both the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Information about an individual that is maintained in a Privacy Act system of records may be accessed by that individual1 unless the agency has exempted the system of records from the access provisions of the Privacy Act. ICE has conducted a search of the ICE Office of Enforcement & Removal Operations (ERO) and Office of Detention Policy and Planning (ODPP) for records responsive to your request and no records responsive to your request were found."

As was explained in ICE FOIA's final response letter sent via email on November 7, 2014, a search of ICE Enforcement & Removal Operations (ERO) and Office of Detention Policy and Planning (ODPP) did not locate any records responsive to your request. However, ICE has determined that new search(s) or, modifications to the existing search(s), could be made. We are therefore remanding your appeal to ICE FOIA for processing and re-tasking to the appropriate

agency/office(s) to obtain any responsive documents. The ICE FOIA Office will respond directly to you.

Should you have any questions regarding this appeal remand, please contact ICE at ice-foia@dhs.gov. In the subject line of the email please include the word "appeal," your appeal numbers, which are **2015-ICAP-00276** and **2015-ICAP-00118**, and the FOIA case number, which is **2015-ICFO-03041**.

Sincerely,

for Debbie Seguin
Chief
Government Information Law Division
ICE Office of the Principal Legal Advisor
U.S. Department of Homeland Security

# Exhibit 10

UNIVERSITY OF MINNESOTA

*Twin Cities Campus*

*Law Clinics*
*Law School*

*190 Walter F. Mondale Hall*
*229 19th Avenue South*
*Minneapolis, MN 55455*

*Office: 612-625-5515*
*Fax: 612-624-5771*

October 15, 2014

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street SW, Stop 5009
Washington, D.C. 20536-5009

Re: Freedom of Information Act Request

To Whom It May Concern:

This is a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by Benjamin Casper and Teaching Fellow Katherine Evans of the University of Minnesota Law School's Center for New Americans, and Professor Robert Koulish of the University of Maryland (collectively, "the Requestors").

The purpose of this request is to obtain information, for the public and for educational research, regarding Immigration and Customs Enforcement's ("ICE's") use of its "risk classification assessment" ("RCA") tool—and specifically, ICE's use of the mandatory detention tool within RCA.

**Background**

On March 19, 2013, ICE Director John Morton confirmed to Congress that ICE had completed a nationwide deployment of its new automated "Risk Classification Assessment" tool.[1] As Director Morton stated, this RCA contains objective criteria to guide decision making regarding whether a noncitizen should be detained or released, and if detained, the noncitizen's appropriate custody classification level.[2] RCA "also requires ICE officers to determine whether there is any special vulnerability that may impact custody and classification determinations."[3]

[1] *Written testimony of U.S. Immigration and Customs Enforcement Director John Morton for a House Committee on the Judiciary hearing titled: "The release of criminal detainees by U.S. Immigration and Customs Enforcement: Policy or Politics?"* (March 19, 2013), *available at* http://www.dhs.gov/news/2013/03/19/written-testimony-us-immigration-and-customs-enforcement-director-john-morton-house.

[2] *Id.*

[3] *Id.*

This nationwide deployment of RCA represents the culmination of a nearly four-year-long project by ICE. Morton and Department of Homeland Security ("DHS") Secretary Janet Napolitano initially announced plans to develop the RCA tool in October 2009.[4] Risk assessment was envisioned as part of a larger Administration strategy to reform the United States' sprawling immigration detention system,[5] which in FY 2012 detained over 429,000 noncitizens a year and 34,000 at any one time, at a cost of nearly $2 billion.[6] Then and since, the Administration has announced its intentions to "focus detention and removal resources on those individuals who have criminal convictions or fall under other priority categories," while "enhanc[ing] the effectiveness of ATD for low-risk aliens, monitoring them at a lower per-day cost than detention."[7] RCA, as Morton recently stated, is designed to "improve transparency and uniformity in detention custody and classification decisions" reflecting these "civil enforcement priorities."[8]

This nationwide deployment of RCA has occurred amid public debate around U.S. immigration detention practices. The risk immigration detainees pose to public safety, or to flight from proceedings—or not—has been foremost in the debate. In response to ICE's release of over 2,000 noncitizens from detention in advance of "sequestration" budget cuts some congressional members accused ICE of endangering public safety, and characterized the released detainees as "dangerous" and "criminals."[9] Conversely, the White House referred to the

---

[4] Department of Homeland Security, *Secretary Napolitano and ICE Assistant Secretary Morton Announce New Immigration Detention Reform Initiatives* (Oct. 6, 2009) (announcing, among other things, ICE's plans to "develop an assessment tool to identify aliens suitable for ATD [alternatives to detention]," and to "develop a risk assessment and custody classification," to "enable detainees to be placed in an appropriate facility"), *available at* http://www.dhs.gov/news/2009/10/06/new-immigration-detention-reform-initiatives-announced.

[5] Dora Schriro, U.S. Dep't of Homeland Sec., Immigration Detention Overview and Recommendations (2009).

[6] *See e.g.*, U.S. Department of Homeland Security, *Office of Immigration Statistics, Immigration Enforcement Actions: 2011* 4-5 (2012), available at http://www.dhs.gov/sites/default/files/publications/immigration-statistics/enforcement_ar_2011.pdf; Human Rights First, *How to Repair the U.S. Immigration Detention System* (December 2012), *available at* http://www.humanrightsfirst.org/wp-content/uploads/pdf/immigration_detention_blueprint.pdf.

[7] Department of Homeland Security, *Written testimony of U.S. Immigration and Customs Enforcement (ICE) Director John Morton for a House Committee on Appropriations, Subcommittee on Homeland Security hearing on The President's Fiscal Year 2013 budget request for ICE* (Mar. 8, 2012), available at http://www.dhs.gov/news/2012/03/08/written-testimony-us-immigration-and-customs-enforcement-ice-director-house.

[8] *Written testimony of U.S. Immigration and Customs Enforcement Director John Morton for a House Committee on the Judiciary hearing titled: "The release of criminal detainees by U.S. Immigration and Customs Enforcement: Policy or Politics?"* (March 19, 2013), *available at* http://www.dhs.gov/news/2013/03/19/written-testimony-us-immigration-and-customs-enforcement-director-john-morton-house.

[9] *See generally* Patrik Jonsson, *Republicans call foul on release of immigrant detainees* (Mar. 2, 2013), *available at* http://www.minnpost.com/christian-science-monitor/2013/03/republicans-call-foul-release-immigrant-detainees#.UTIcEXYNB50.email.

*See* "Grassley, Goodlatte Press Napolitano for Answers on Release of Illegal Immigrants from Detention Facilities" (Feb. 28, 2013), *available at* http://www.grassley.senate.gov/news/Article.cfm?customel_dataPageID_1502=44820 (calling them "dangerous" and an "abrogation of [DHS'] mission to ensure the safety and security of Americans"). Rep. Goodlatte also stated, "By releasing criminal immigrants onto the streets, the Administration is needlessly endangering American lives."

detainees as "low-risk, noncriminal detainees,"[10] and ICE Director Morton "disputed accusations" that releases "included many dangerous criminals."[11] Indeed, if these detainees are low-risk, public advocacy groups and commentators questioned whether detainees had "no business in detention in the first place."[12] Senators have echoed those concerns, arguing that "[t]housands of people… are unnecessarily detained at great expense to taxpayers even though they pose no threat to public safety.").[13]

Additionally, the detention of noncitizens while awaiting deportation hearings profoundly impacts their ability to secure a lawyer, collect evidence, and meaningfully litigate their cases. A recent New York study found that 97 percent of detainees who are detained and unrepresented lose their deportation case.[14] To the extent detention of many of these individuals is unnecessary, ICE's practices raise serious due process and human rights concerns.

Information on risk assessment practices would thus be of great relevance to the current debate regarding immigration detention reform.[15] Advocacy organizations have urged Congress to require use of risk assessment,[16] and media outlets have reported on ICE's use of risk assessment.[17]

*Information Regarding ICE's Risk Classification Assessment Tool*

---

*DHS Releases Hundreds of Illegal Immigrants from Immigration Jails Ahead of Sequester,* Washington Post (Feb. 26, 2013).

[10] *See* Caldwell, *AP Exclusive: DHS released over 2,000 immigrants*, Associated Press, (March 1, 2013) (quoting White House spokesman Jay Carney). ICE spokeswoman Gillian Christensen reiterated that the agency's "priority for detention remains on serious criminal offenders and other individuals who pose a significant threat to public safety." *DHS Releases Hundreds of Illegal Immigrants from Immigration Jails Ahead of Sequester,* Washington Post (Feb. 26, 2013).

[11] Julia Preston, *Administration Official Defends Release of Detainees*, N.Y. Times (Mar. 19, 2013), *available at* http://www.nytimes.com/2013/03/20/us/immigration-official-defends-release-of-detainees.html.

[12] Ruthie Epstein, Human Rights First, *Detention centers releases may have silver lining*, The Hill (Feb. 28, 2013), *available at* http://thehill.com/blogs/congress-blog/homeland-security/285515-detention-centers-releases-may-have-silver-lining.

[13] *See In immigration debate, Senator Coons seeks due process and human rights guarantees* (Feb. 5, 2013) (letter from Sens. Coons, Leahy, Hirono, and Blumenthal), *available at* http://www.coons.senate.gov/newsroom/releases/release/in-immigration-debate-senator-coons-seeks-due-process-and-human-rights-guarantees;

[14] New York Immigrant Representation Study, *Accessing Justice: The Availability and Adequacy of Counsel in Immigration Proceedings*, 33 Cardozo L. Rev. 357, 363-64 (2011).

[15] Robert Koulish and Mark Noferi, *Unlocking Immigrant Detention Reform*, Baltimore Sun (Feb. 20, 2013), available at http://articles.baltimoresun.com/2013-02-20/news/bs-ed-immigrant-detention-20130220_1_mandatory-detention-immigration-detention-detention-costs.

[16] *See, e.g.*, Human Rights First, *Congress Urged To Reform Detention System in Immigration Legislation* (Mar. 14, 2013), *available at* http://www.humanrightsfirst.org/2013/03/14/congress-urged-to-reform-detention-system-in-immigration-legislation/.

[17] Jude Joffe-Block, *ICE Using New Tool For Detention Decisions*, Fronteras (Mar. 7, 2013), *available at* http://www.fronterasdesk.org/news/2013/mar/07/ice-using-new-tool-detention-decisions/;

In an April 6, 2012 Privacy Impact Assessment (PIA) Update, DHS described ICE's new risk assessment tool.[18] ICE's electronic databases, based on risk assessment, now produce (1) an automated custody recommendation (i.e. detention or release), (2) an automated bond amount recommendation, (3) an automated custody classification (e.g. low-, low/medium-, medium/high-, or high-security), if the alien will be detained, and (4) an automated recommendation for technology supervision, if the alien will be released under supervision.[19]

The PIA described, "Using the existing policies and guidance, ICE is automating the assessment process."[20] "When developing RCA, ICE created a methodology which incorporates the current ICE policies and guidance on detention decisions into a set of business rules."[21] Thus, "[i]nformation about the alien stored in EID will now be processed electronically through these business rules and a detention or release recommendation generated."[22]

Upon information and belief, the Risk Classification Assessment evaluates whether an individual is subject to mandatory detention, *i.e.* 8 U.S.C. § 1226(c), based on the Immigration and Nationality Act statutes, and allegations entered into the Enforcement Apprehension and Booking Module (EABM) and ENFORCE Alien Removal Module (EARM). Also upon information and belief, RCA evaluates this using an automated "Subject to Mandatory Detention" Tool. Supporting this, the PIA stated that the RCA Detailed Summary contains information relating to "mandatory detention factors."[23]

**Request**

Accordingly, pursuant to FOIA, we request the following:

1. Any and all documents discussing, mentioning, relating to, reflecting, or describing the business rules, criteria, protocols, scoring, "structured fields" or "list of values" governing the "Subject to Mandatory Detention" tool "Version 2.0," as well as any earlier or later versions employed by the RCA.

2. Any and all documents discussing, mentioning, relating to, reflecting or describing the use of decisions by the BIA, U.S. Courts of Appeals, and the U.S. Supreme Court in the "Subject to Mandatory Detention" tool "Version 2.0," and any earlier or later

[18] Department of Homeland Security, Privacy Impact Assessment Update for the Enforcement Integrated Database (EID) Risk Classification Assessment (RCA 1.0), ENFORCE Alien Removal Module (EARM 5.0), and Crime Entry Screen (CES 2.0), DHS/ICE/PIA-015(d) (Apr. 6, 2012), *available at* http://www.dhs.gov/xlibrary/assets/privacy/privacy_piaupdate_EID_april2012.pdf;

[19] *Id.* at 10.

[20] *Id.* at 4. The PIA later stated as a "benefit" to ICE that it "automates a process that is currently manually performed by ERO officers and contractors." *Id.* at 5.

[21] *Id.* at 4.

[22] *Id.* at 4.

[23] *Id.* at 5.

versions, to determine whether a crime of conviction is subject to mandatory detention under INA § 236(c).

3. Any and all documents discussing, mentioning, relating to, reflecting or describing the manner in which the "Subject to Mandatory Detention" tool "Version 2.0," and any earlier or later "list of value" versions, is updated to reflect changes in law.

4. Any and all documents discussing, mentioning, relating to, reflecting, or describing the business rules, criteria, protocols, statutes, allegations, or "list of values" that result in the value of "yes" in the "Subject to Mandatory Detention" tool "Version 2.0," and any earlier or later versions.

5. Any and all documents discussing, mentioning, relating to, reflecting, or describing the business rules, criteria, protocols, statutes, allegations, or "list of values" governing the "Subject to Mandatory Detention" tool "Version 2.0," and any earlier or later versions, that result in the value of "N/A."

6. Any and all documents discussing, mentioning, relating to, reflecting, or describing the business rules, criteria, protocols, statutes, allegations or "list of values" governing the "Subject to Mandatory Detention" tool "Version 2.0," and any earlier or later versions, that result in the value of "no."

7. Any and all documents discussing, mentioning, relating to, reflecting, or describing the business rules, criteria, protocols, statutes, allegations, or "list of values" governing the "Subject to Mandatory Detention" tool "Version 2.0," and any earlier or later versions, that result in a "star" on the RCA Detailed Summary, reflecting that an INA charge will flag the alien as mandatory detention per statutes and allegations.

8. Any and all documents, materials, and recordings, both digital and print, including orders, notices, directives, memoranda, or other paperwork, discussing, mentioning, relating to, reflecting or describing the instructions, guidance, or training to DHS officers or contractors as to the procedure for employing "Subject to Mandatory Detention" tool "Version 2.0," and any earlier or later versions.

9. Any and all documents, materials, and recordings, both digital and print, including orders, notices, directives, memoranda, or other paperwork, discussing, mentioning, relating to, reflecting or describing the instructions, guidance, or training to DHS officers or contractors on consulting a DHS attorney in the administration of the "Subject to Mandatory Detention" tool "Version 2.0," and any earlier or later versions.

10. Any and all documents, materials, and recordings, both digital and print, including orders, notices, directives, memoranda, or other paperwork, discussing, mentioning, relating to, reflecting or describing the instructions, guidance, or training to DHS officers or contractors on reviewing the accuracy of the determination of the "Subject to Mandatory Detention" tool "Version 2.0," and any earlier or later versions.

11. Any and all documents discussing, mentioning, relating to, reflecting, or describing the specifications provided to information technology contractors for the "requirements definition," "design," and "development" of the "Subject to Mandatory Detention" tool "Version 2.0," and any earlier or later versions, within the project "Risk Classification Assessment (formerly CRS)" project number 1001005.[24] Any and all documents, materials, and recordings, both digital and print, including orders, notices, directives, memoranda, or other paperwork, discussing, mentioning, relating to, reflecting or describing the instructions, guidance, or training to DHS officers or contractors as to the use of the "Subject to Mandatory Detention" tool "Version 2.0," and any earlier or later versions within the RCA—including but not limited to these documents:

- All documents located on the "ICE Virtual University" website or internal server, including any Web-based training (WBT), "RCA Playbook," training environment(s), scenarios, and quick reference guides.
- a PowerPoint document, "Training and Deployment Update for RCA Points of Contact in Baltimore and Washington DC," dated March 2012, and any earlier or later versions of this document;
- A document "U.S. ICE, Enforcement and Removal Operations, Law Enforcement Systems and Analysis, *Risk Classification Assessment (RCA) Quick Reference Guide Version 1.0*, (May 2012)," and any earlier or later versions of this document;
- A document entitled "United States Department of Homeland Security Scratch RCA Sheet," revised May 29, 2012, and any earlier or later versions of this document;
- an August 2012 memorandum or email from then-ICE ERO Director Gary Mead to all ERO employees, entitled "Risk Classification Assessment," providing guidance to ICE officers as to how to use the RCA tool, and any earlier or later versions of this memorandum or email, or other memoranda or email from ERO or ICE management relating to RCA;
- a November 2012 PowerPoint, "Risk Classification Assessment (RCA) Phase III & IV Workflow Overview," and any earlier or later versions of this document;
- a further November 2012 training PowerPoint, entitled "Risk Classification Assessment POC & Training SME," November 2012, and any earlier or later versions of this document;
- a December 3, 2012 memorandum entitled "Helpful Hints when Starting an RCA for Detain/Release Decision," and any earlier or later versions of this memorandum or email, or similar memoranda or email;
- a January 3, 2013 memorandum entitled "Risk Classification Assessment (RCA) Module, Phase 1-4 Deployment Lessons Learned," and any earlier or later versions of this memorandum or email, or similar memoranda or email;

---

[24] *See* https://itdashboard.gov/investment/project-summary/137.

12. Any and all documents, materials, and recordings, both digital and print, including orders, notices, directives, memoranda, or other paperwork, discussing, mentioning, relating to, reflecting or describing the instructions, guidance, or training to DHS supervisors, officers, or contractors as to review of mandatory detention recommendations or decisions made by the RCA, including but not limited to the role that supervisors, officers, and contractors play in reviewing criminal history and a "star" produced by the RCA reflecting that an INA charge will flag the alien as mandatory detention per statutes and allegations.

13. Any and all documents, materials, and recordings, both digital and print, including orders, notices, directives, memoranda, or other paperwork, discussing, mentioning, relating to, reflecting or describing the role of DHS contractors in DHS' use of the "Subject to Mandatory Detention" tool "Version 2.0," and any earlier or later versions within the RCA.

14. Any and all documents, materials, and recordings, both digital and print, including orders, notices, directives, memoranda, or other paperwork, discussing, mentioning, relating to, reflecting or describing the process by which RCA contributes to mandatory detention decisions regarding individuals placed in administrative removal proceedings under INA § 238(b).

**Additional Information Regarding Requestors**

Requestors include educational requestors under the provisions of the Freedom of Information Act, and we request to be so classified. Professor Benjamin Casper and Teaching Fellow Katherine Evans teach the Federal Immigration Litigation Clinic at the University of Minnesota Law School, a 501(c)(3) educational institution.[25] Professor Robert Koulish teaches classes on political science, immigration, and immigration law, and conducts active scholarly research at the University of Maryland, a 501(c)(3) educational institution, through its Center for American Politics and Citizenship and Francis King Carey School of Law.[26] Instructors Casper, Evans, and Koulish plan to use this information for future scholarly research, and publicize it through media including but not limited to academic articles in law reviews and humanities publications, reports, books, op-eds, and other public materials, made available through academic websites, press releases, and other publicly available mediums.

[25] *See* http://www.law.umn.edu/facultyprofiles/casperb.html (Benjamin Casper biography); http://www.law.umn.edu/newamericans/people/evanse.html (Katherine Evans biography).
[26] *See* http://www.capc.umd.edu/staff/koulish.asp (Robert Koulish biography).

**Fee Waiver Request**

We agree to pay search, duplication, and review fees of up to $100. If fees will amount to more than $100, we request a full waiver of those fees over $100. The information sought "is likely to contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 6 C.F.R. § 5.11(k). When the documents are "not sought for commercial use" and the "request is made by an educational or noncommercial scientific institution, whose purpose is scholarly or scientific research,"[27] "[d]ocuments shall be furnished without any charge or at a charge reduced below the [standard charges] if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the Requestor."[28]

We meet all of the six factors that the Government has set forth to determine if fees should be waived or reduced.[29] We address these factors in two sub-categories – i.e. first, the public interest in the information, and second, the lack of commercial interest of the Requestors.

First, as the first four factors set out, disclosure of this requested information is in the "public interest" because it is "likely to contribute significantly to public understanding of government operations or activities."[30] Addressing these factors one by one:

1. The requested records "specifically concern identifiable 'operations or activities of the government',"[31] namely ICE's use of RCA.

2. Disclosure of documents is "meaningfully informative in relation to the subject matter of the request."[32] This RCA information is not already available to the public, and thus adds to the substantive understanding of the area concerned.

3. Disclosure contributes to "public understanding," as opposed to the "individual understanding of the Requestor or a narrow segment of interested persons."[33] Here, disclosure of RCA information contributes to public understanding of immigration detention policies, an issue attracting significant public attention as Congress debates immigration law reform. The scope of ICE's detained population was subject to criticism in a 2009 report issued by ICE itself, in which Dr. Dora Schriro stated, "In

[27] 5 U.S.C. § 552(a)(4)(A)(ii).

[28] 5 U.S.C. § 552(a)(4)(A)(iii).

[29] *See* Department of Justice Guide to the Freedom of Information Act § 3-17.100B ("DOJ FOIA Guide"), *available at* http://www.justice.gov/oip/foia_guide09/fee-waivers.pdf; *see also Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers of noncommercial Requestors.'").

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

coordination with stakeholders, ICE should develop a new set of standards, assessments, and classification tools to inform care, custody restrictions, privileges, programs, and delivery of services consistent with risk level and medical care needs of the population."[34] Data on detainees and their risk assessments would be required by the U.S. Senate's 2013 immigration reform bill.[35] Recent Congressional hearings have questioned whether ICE's releases of immigration detainees pose a risk to public safety. In response, ICE Director Morton has testified twice regarding ICE's introduction of its new RCA tool.[36] The number of people ICE detains continues to attract criticism from public interest organizations and immigrant rights advocates.[37]

Moreover, the Requestors plan to make the requested information publicly available to enhance public understanding. Research results will be made publicly available through the Center for New Americans website, making it available to the public at large and publicizing the release of information through blog posts and social media.[38] Additionally, Instructors Casper, Evans, and Koulish plan to collaborate with other immigration scholars to distribute research results through publicly available academic articles, reports, and op-eds. The Requestors also plan to respond, free of charge, to inquiries from the press, scholars, public interest groups, and other members of the public as necessary. All these educational and public service activities should help address critical gaps in knowledge, and help individuals and organizations find necessary information concerning agency policies and practices.

4. Disclosure contributes "significantly" to public understanding and enhances the public's knowledge of these government operations or activities.[39] As noted above, ICE Director Morton has responded to Congressional concerns regarding public safety risks from release of detainees by testifying as to ICE's new RCA tool. On the other hand, detention of individuals who do not pose risks raises cost concerns, during this time of U.S. budgetary cutbacks.[40] Information concerning the system for generating and reviewing the automated custody recommendations of ICE's RCA

[34] *See* Dr. Dora Schriro, DHS, ICE, "Immigration Detention Overview and Recommendations" (Oct. 6, 2009) *available at* http://www.ice.gov/doclib/about/offices/odpp/pdf/ice-detention-rpt.pdf

[35] *See* Border Security, Economic Opportunity, Immigration Modernization Act S.744 § 3720(b)(10), *available at* http://www.lawandsoftware.com/bseoima/bseoima-senate-3720.html

[36] *See* note 1, *supra*; *see also Written testimony of U.S. Immigration and Customs Enforcement Director John Morton for a House Committee on Appropriations, Subcommittee on Homeland Security hearing titled: "Immigration Enforcement"* (Mar. 14, 2013), available at http://www.dhs.gov/news/2013/03/14/written-testimony-us-immigration-and-customs-enforcement-director-john-morton-house.

[37] Kate Linthicum, "Push for cheaper alternatives to immigrant detention grows" LA Times, May 31, 2014, *available at* http://www.latimes.com/nation/la-na-immigration-detention-20140601-story.html; Lutheran Immigration and Refugee Services, "Alternatives to Detention: History and Recommendations," *available at* http://lirs.org/wp-content/uploads/2013/04/LIRS-Backgrounder-on-Alternatives-to-Detention-3-12-13.pdf

[38] *See* http://www.law.umn.edu/newamericans/news.html.

[39] *See* DOJ FOIA Guide.

[40] Robert Koulish and Mark Noferi, *Unlocking Immigrant Detention Reform*, Baltimore Sun (Feb. 20, 2013), *available at* http://articles.baltimoresun.com/2013-02-20/news/bs-ed-immigrant-detention-20130220_1_mandatory-detention-immigration-detention-detention-costs.

would provide the public key information as to ICE's assessment of the risk posed by released and non-released detainees. This would in turn allow the U.S. public, interested organizations, and Congress to publicly evaluate the costs and benefits of detention, particularly now of great national public interest as Congress debates immigration law reform and President Obama assesses his enforcement priorities and detention policies.

Secondly, as the Requestors lack commercial interest here, these requests are "not primarily in the commercial interest of the Requestor,"[41] and thus the public's interest is primary.[42] Requestors, comprised of academics at educational institutions and a voluntary lawyers' association, have no commercial interest here. As noted, Instructors Casper, Evans, and Koulish plan to use this information for scholarly research, including but not limited publicly available academic articles in law reviews and humanities publications, reports, books, and op-eds. Any "quasi-commercial nature" of academic research is "irrelevant for the purposes of calculating an appropriate fee waiver." *Campbell v. U.S. Dept. of Justice*, 164 F.3d 20, 36 (D.C. Cir. 1998). Accordingly, when the Requestors commercial interest is balanced against the identified public interest stated above, the public's interest in this RCA information remains "primary."[43]

**Other Information**

The Requestors certify that the above information is true and correct to the best of the Requestors' knowledge. *See* 6 C.F.R. § 5.5(d)(3).

If this request is denied in whole or in part, please justify all deletions by reference to the specific exemptions of the act. In addition, please release all segregable portions of otherwise exempt material pursuant to 5 U.S.C. § 552(b). We reserve the right to appeal your decision to withhold any information or to deny a waiver of fees, both administratively and in a court of law. 5 U.S.C. §§ 552(a)(6)(A), (a)(4)(B).

As set forth in 5 U.S.C. § 552(a)(6), we expect to receive a reply within the statutorily mandated deadline of 20 working days of receipt of this letter. We are aware that we have the right to an administrative appeal if we do not receive an administrative determination from your agency within 20 working days. We would very much appreciate your prompt action and response to this request.

[41] *See* DOJ FOIA Guide.

[42] *Id.*

[43] *Id.*

Should you have any questions, or if we can be of any assistance, please feel free to contact us. You can reach Katherine Evans at evans407@umn.edu and Benjamin Casper at caspe010@umn.edu or at (612) 625-5515. Robert Koulish can be reached at (410) 925-3894, or by email at rkoulish@umd.edu

Sincerely,

Katherine Evans
Teaching Fellow

Benjamin Casper
Visiting Associate Professor

Robert Koulish
Professor, University of Maryland

# Exhibit 11

Katherine Evans <evans407@umn.edu>

# ICE FOIA Request 2015-ICFO-03027

**ice-foia@dhs.gov** <ice-foia@dhs.gov> Tue, Oct 21, 2014 at 12:27 PM
To: evans407@umn.edu

October 21, 2014

Katherine Evans
University of Minnesota Law School
Ctr for New Americans - 190 W.F. Mondale Hall
229 19th Avenue South
Minneapolis, MN 55455

**RE: ICE FOIA Case Number 2015-ICFO-03027**

Dear Ms. Evans:

This acknowledges receipt of your Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), dated October 15, 2014, and to your request for a waiver of all assessable FOIA fees. Your request was received in this office on October 21, 2014. Specifically, you requested information for the public and educational research, regarding ICE's use of its risk classification assessment (RCA) tool and specifically, ICE's use of the mandatory detention tool within RCA (14 items detailed in the request).

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. Per Section 5.5(a) of the DHS FOIA regulations, 6 C.F.R. Part 5, ICE processes FOIA requests according to their order of receipt. Although ICE's goal is to respond within 20 business days of receipt of your request, the FOIA does permit a 10- day extension of this time period. As your request seeks numerous documents that will necessitate a thorough and wide-ranging search, ICE will invoke a 10-day extension for your request, as allowed by Title 5 U.S.C. § 552(a)(6)(B). If you care to narrow the scope of your request, please contact our office. We will make every effort to comply with your request in a timely manner.

After thoroughly reviewing your letter and request for fee waiver, I have determined that you have not presented a convincing argument that University of Minnesota Law School is entitled to a blanket waiver of applicable fees.

The DHS FOIA Regulations at 6 CFR § 5.11(k)(2) set forth six factors to examine in determining whether the applicable legal standard for a fee waiver has been met. We will consider these factors in our evaluation of your request for a fee waiver:

(1) Whether the subject of the requested records concerns "the operations or activities of the government";

(2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities;

(3) Whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requestor or a narrow segment of interested persons;

(4) Whether the contribution to public understanding of government operations or activities will be "significant";

(5) Whether the requester has a commercial interest that would be furthered by the requested disclosure; and

(6) Whether the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requestor.

As a requester, you bear the burden under FOIA of showing that the fee waiver requirements have been met. Based on my review of your October 15, 2014 letter and for the reasons stated herein, I have determined that your fee waiver request is deficient because your request did not satisfy factors 4, 5, and 6. Since your request for a fee waiver has failed to satisfy each of the required factors, I am denying your fee waiver request.

Provisions of the FOIA allow us to recover part of the cost of complying with your request. We shall charge you for records in accordance with the DHS Interim FOIA regulations as they apply to educational requesters. As an educational requester, you will be charged 10 cents per page for duplication; the first 100 pages are free. We will construe the submission of your request as an agreement to pay up to $25.00. You will be contacted before any further fees are accrued.

You have the right to appeal the determination to deny your fee waiver request. Should you wish to do so, please send your appeal following the procedures outlined in the DHS regulations at 6 Code of Federal Regulations § 5.9 and a copy of this letter to:

U.S. Immigration and Customs Enforcement
Office of Principal Legal Advisor
U.S. Department of Homeland Security
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009

Your appeal must be received within 60 days of the date of this letter. Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

ICE has queried the appropriate program offices within ICE for responsive records. If any responsive records are located, they will be reviewed for determination of releasability. Please be assured that one of the processors in our office will respond to your request as expeditiously as possible. We appreciate your patience as we proceed with your request.

Your request has been assigned reference number **2015-ICFO-03027**. Please refer to this identifier in any future correspondence. You may contact this office at (866) 633-1182.

Regards,

ICE FOIA Office
Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
Telephone: 1-866-633-1182
Visit our FOIA website at www.ice.gov/foia

# Exhibit 12

U.S. Department of Homeland Security
500 12th St. SW; STOP 5009
Washington, DC 20536-5009

U.S. Immigration
and Customs
Enforcement

July 23, 2015

Katherine Evans
University of Minnesota Law School
Ctr for New Americans - 190 W.F. Mondale Hall
229 19th Avenue South
Minneapolis, MN 55455

**RE: 2015-ICAP-00479, 2015-ICAP-00095, 2015-ICFO-03027**

Dear Ms. Evans:

This is in response to your letter dated June 23, 2015, requesting reconsideration of the denial of your Freedom of Information Act (FOIA) fee waiver request as moot in case 2015-ICAP-00095. This appeal adjudication is limited in scope to your request for a fee waiver.

Your original October 15, 2014, FOIA request sought 14 categories of records related to U.S. Immigration & Customs Enforcement's (ICE) risk classification assessment (RCA) tool, and ICE's use of mandatory detention tool within RCA. In your October 15, 2014 request, you sought a fee waiver. On October 21, 2014, the ICE FOIA Office acknowledged your request, assigned it case number 2015-ICFO-03027, and denied your request for a fee waiver.

On November 7, 2015, the ICE FOIA Office responded to your FOIA request determining that no responsive records were found. The November 7, 2015 decision also determined that no fee would be charged because the cost of complying with the request was less than $14.

On December 23, 2014, ICE received your appeal of the ICE FOIA's fee waiver determination. ICE assigned your fee waiver appeal case number 2015-ICAP-00095. On January 23, 2015, ICE determined that "your appeal of [ICE FOIA's October 21, 2014] denial of a fee waiver for your FOIA request is moot because ICE FOIA [on November 7, 2014] determined that there will be no charge on your FOIA request."

On January 5, 2015, you appealed the ICE FOIA Office's decision that no responsive records could be found. ICE assigned this appeal case number 2015-ICAP-00277. On April 23, 2015, ICE remanded the determination that no responsive records could be located to ICE FOIA for processing and re-tasking.

On June 23, 2015, ICE received the instant appeal requesting reconsideration of the decision in case 2015-ICAP-00095 in light of the remand in case 2015-ICAP-00277.

By email dated October 21, 2014, ICE FOIA denied your fee waiver request. Specifically, ICE FOIA stated: "Based on my review of your October 15, 2014 letter and for the reasons stated herein,

I have determined that your fee waiver request is deficient because your request has failed to satisfy factors 4, 5, and 6. Since your request for a fee waiver has failed to satisfy each of the required factors, I am denying your fee waiver request."

In your letter, received December 23, 2014, appealing the fee waiver determination you state: "disclosure of the records is in the public interest because it is likely to contribute to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester" and that you satisfy the factors at 6 C.F.R. § 5.11(k) for receiving a fee waiver.

With respect to the denial of a fee waiver, as was explained in the letter dated June 15, 2015, the DHS FOIA Regulations at 6 C.F.R. § 5.11(k) set forth six factors to examine in determining whether the applicable legal standard for a fee waiver has been met. These factors are:

> (1) Whether the subject of the requested records concerns "the operations or activities of the government";
> (2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities;
> (3) Whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requestor or a narrow segment of interested persons;
> (4) Whether the contribution to public understanding of government operations or activities will be "significant";
> (5) Whether the requester has a commercial interest that would be furthered by the requested disclosure; and
> (6) Whether the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requestor.

On appeal, ICE completes a *de novo* review of the fee assessment and fee waiver request. As a requester, you bear the burden under FOIA of showing that the fee waiver requirements have been met.

As to the first requirement, the requested information likely concerns the operations or activities of the government related to mandatory detention under the Immigration and Nationality Act (INA).

The second requirement requires that the disclosure "likely contribute" to the understanding of the public at large regarding specific government operations or activities. With respect to your request, the requested information will likely contribute to an understanding of government operations or activities related to mandatory detention under the INA.

The third requirement mandates the disclosure of the requested information contribute to the understanding of the public at large, as opposed to the individual understanding of the requestor or a narrow segment of interested persons. Moreover, a requestor must establish an ability to

disseminate the information to the public at large. *See Cause of Action v. Fed. Trade Comm'n*, 961 F. Supp. 2d 142, 158 (D.D.C. 2013) (requester must specifically demonstrate its intent and ability to disseminate the requested information to the public); *Larson v. C.I.A.*, 843 F.2d 1481, 1483 (D.C. Cir. 1988) (requester bears burden to demonstrate intent and ability to disseminate the information to the public). With respect to your request, the requested information will likely contribute to the understanding of the public at large. Moreover, the individual requesters, as academics, have established the ability and intent to disseminate the requested information through academic publications, media, and/or academic courses.

The fourth requirement mandates the disclosure and subsequent contribution to public understanding of government operations or activities be "significant." To warrant a waiver or reduction of fees, the public's understanding of the subject matter in question must be likely to be enhanced by the disclosure to a significant extent. With respect to your request, the requested information would likely contribute a significant public understanding of issues related to RCA and the application of mandatory detention provisions of the INA.

The fifth and sixth requirements consider whether the requester has a commercial interest that would be furthered by the requested disclosure; and whether the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requestor. In your appeal, you state that: "Requesters are professors and academics at public, not-for-profit higher education institutions and have no commercial interest here…Requesters plan to use the request information for future scholarly research and to publicize it through media including but not limited to academic articles in law reviews and humanities publications, reports, books, op-eds, presentations at conferences, and other public materials, made available through academic websites, press releases, and other publicly available mediums…" With respect to your request, you have established that any potential commercial interest is outweighed by the public interest and that the primary interest in disclosure is the public interest.

Upon review of the record, your request for a fee waiver in case 2015-ICFO-03027 is granted.

Should you have any questions regarding this appeal adjudication, please contact ICE at ice-foia@dhs.gov. In the subject line of the email please include the word "appeal," your appeal numbers, which are **2015-ICAP-00479,** and the FOIA case number, which is **2015-ICFO-03027**.

Sincerely,

Debbie Seguin
Chief
Government Information Law Division
ICE Office of the Principal Legal Advisor
U.S. Department of Homeland Security

# Exhibit 13

*Freedom of Information Act Office*

**U.S. Department of Homeland Security**
500 12th St SW, Stop 5009
Washington, DC 20536

U.S. Immigration and Customs Enforcement

November 7, 2014

Katherine Evans
University of Minnesota Law School
Center for New Americans - 190 W.F. Mondale Hall
229 19th Avenue South
Minneapolis, MN 55455

**RE: ICE FOIA Case Number 2015-ICFO-03027**

Dear Ms. Evans:

This letter is the final response to your Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), dated October 15, 2014. You have requested copies of the following records:

information for the public and educational research, regarding ICE's use of its risk classification assessment (RCA) tool and specifically, ICE's use of the mandatory detention tool within RCA (14 items detailed in the request)

ICE has considered your request under both the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Information about an individual that is maintained in a Privacy Act system of records may be accessed by that individual[1] unless the agency has exempted the system of records from the access provisions of the Privacy Act.[2]

ICE has conducted a search of the ICE Office of Enforcement & Removal Operations (ERO) and Office of Detention Policy and Planning (ODPP) for records responsive to your request and no records responsive to your request were found.

You have the right to appeal ICE's determination and should you wish to do so, please send your appeal following the procedures outlined in the DHS regulations at 6 Code of Federal Regulations § 5.9 and a copy of this letter to:

U.S. Immigration and Customs Enforcement
Office of Principal Legal Advisor
U.S. Department of Homeland Security
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009

---

[1] 5 U.S.C. § 552a(d)(1).
[2] 5 U.S.C. §§ 552a(d)(5), (j), and (k).

Washington, D.C. 20536-5009

Your appeal must be received within 60 days of the date of this letter. Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

The Office of Government Information Services (OGIS) also mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you wish to contact OGIS, you may email them at ogis@nara.gov or call 1-877-684-6448.

Provisions of the FOIA and Privacy Act allow us to recover part of the cost of complying with your request. In this instance, because the cost is below the $14 minimum, there is no charge.[3]

If you need to contact the FOIA office about this matter, please call (866) 633-1182 and refer to FOIA case number **2015-ICFO-03027**.

Sincerely,

R. Gowins,

Catrina M. Pavlik-Keenan
FOIA Officer

[3] 6 CFR § 5.11(d)(4).

# Exhibit 14

UNIVERSITY OF MINNESOTA

*Twin Cities Campus*

*Law Clinics*
*Law School*

*190 Walter F. Mondale Hall*
*229 19th Avenue South*
*Minneapolis, MN 55455*
*Office: 612-625-5515*
*Fax: 612-624-5771*

January 5, 2015

Associate General Counsel (General Law)
Department of Homeland Security
245 Murray Lane SW
Washington, D.C. 20528
*Via Federal Express Overnight*

U.S. Immigration and Customs Enforcement
Office of Principal Legal Advisor
U.S. Department of Homeland Security
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
*Via Federal Express Overnight*

Associate General Counsel (General Law)
Department of Homeland Security
Washington, D.C. 20528
*Via U.S. Postal Service Overnight*

Re: Freedom of Information Act Appeal
FOIA Case No. 2015-ICFO-03027 made by Professor Benjamin Casper (University of Minnesota Law School), Teaching Fellow Katherine Evans (University of Minnesota Law School), and Professor Robert Koulish (University of Maryland) on October 15, 2014
Appeal of Final Response (dated November 7, 2014)

To whom it may concern:

This is an appeal under the Freedom of Information Act, pursuant to 5 U.S.C. § 552 and 6 C.F.R. § 5.9. Requesters write to appeal the ICE FOIA Office's final response to their FOIA Request, which states that no responsive documents were found. This appeal letter is sent such that it will be received within 60 days of the November 7, 2014 final response. *See* 6 C.F.R. § 5.25.

On October 15, 2014, Requesters Professor Benjamin Casper (University of Minnesota Law School), Teaching Fellow Katherine Evans (University of Minnesota Law School), and Professor Robert Koulish (University of Maryland) (together, "Requesters") submitted a FOIA request related to the ICE related to its Risk Classification Assessment ("RCA") tool. *See* Exh. A (FOIA request, Case No. 2015-ICFO-03027). On November 7, 2014, the ICE FOIA Office issued a final response to Requesters' request, stating that "no records responsive to [Requesters'] request were found." *See* Exhibit B (final response).

Requesters hereby appeal this final "no records" response. An agency must conduct a reasonable search for records responsive to a FOIA request. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). A reasonable search is a search conducted in good faith, using methods that "can be reasonably expected to produce the information requested." *Id.* This

search was inadequate, because it is obvious from information in the public record – including statements made by government personnel and documents produced to a different party in response to a different FOIA request – that ICE has documents responsive to this request.

## I. Background on FOIA Request for Information Related to the Risk Classification Assessment

On March 19, 2013, ICE Director John Morton confirmed to Congress that ICE had completed a nationwide deployment of its new automated "Risk Classification Assessment" tool. As Director Morton stated, this RCA contains objective criteria to guide decision making regarding whether a noncitizen should be detained or released, and if detained, the noncitizen's appropriate custody classification level.[1] In an April 6, 2012 Privacy Impact Assessment (PIA) Update, DHS described ICE's new risk assessment tool.[2] ICE's electronic databases, based on risk assessment, now produce (1) an automated custody recommendation (i.e. detention or release), (2) an automated bond amount recommendation, (3) an automated custody classification (e.g. low-, low/medium-, medium/high-, or high-security), if the alien will be detained, and (4) an automated recommendation for technology supervision, if the alien will be released under supervision.[3] The PIA stated that "[u]sing the existing policies and guidance, ICE is automating the assessment process."[4] "When developing RCA, ICE created a methodology which incorporates the current ICE policies and guidance on detention decisions into a set of business rules."[5] Thus, "[i]nformation about the alien stored in EID will now be processed electronically through these business rules and a detention or release recommendation generated."[6]

From these public documents, and others ICE has released through FOIA, the Risk Classification Assessment also evaluates whether an individual is subject to mandatory detention, *i.e.* 8 U.S.C. § 1226(c). For example, an RCA "Quick Reference Guide" used to train officers states that "RCA completes an automatic assessment of whether an individual is subject to mandatory detention based on the Immigration and Nationality Act statutes, and allegations entered into the Enforcement Apprehension and Booking Module (EABM) and ENFORCE Alien Removal Module (EARM)."[7] RCA appears to evaluate mandatory detention using an automated "Subject to Mandatory Detention" Tool, listed on ICE's "RCA

---

[1] Written testimony of U.S. Immigration and Customs Enforcement Director John Morton for a House Committee on the Judiciary hearing titled: "The release of criminal detainees by U.S. Immigration and Customs Enforcement: Policy or Politics?" (March 19, 2013), available at http://judiciary.house.gov/_files/hearings/printers/113th/113-5_80066.PDF (at p. 13).

[2] Department of Homeland Security, Privacy Impact Assessment Update for the Enforcement Integrated Database (EID) Risk Classification Assessment (RCA 1.0), ENFORCE Alien Removal Module (EARM 5.0), and Crime Entry Screen (CES 2.0), DHS/ICE/PIA-015(d) (Apr. 6, 2012), *available at* http://www.dhs.gov/xlibrary/assets/privacy/privacy_piaupdate_EID_april2012.pdf.

[3] *Id.* at 10.

[4] *Id.* at 4. The PIA later stated as a "benefit" to ICE that it "automates a process that is currently manually performed by ERO officers and contractors." *Id.* at 5.

[5] *Id.* at 4.

[6] *Id.* at 5.

[7] *See* Exh. C, U.S. ICE, "RCA Quick Reference Guide 1.0," dated May 2012, at 1 (ICE2012FOIA02544.003479-3536).

Detailed Summary."[8] Supporting this, DHS' public PIA stated that the RCA Detailed Summary contains information relating to "mandatory detention factors."

Risk assessment was envisioned as part of a larger administrative strategy to reform the United States' sprawling immigration detention system, which in FY 2012 detained over 429,000 noncitizens per year and 34,000 at any one time— at a cost of nearly $2 billion. But, a recent U.S. Government Accountability Office (GAO) report stated that RCA recommended detention 91 percent of the time in FY 2013,[9] calling into question whether the RCA will be effective to appropriately balance competing concerns relating to detention. The GAO report also stated that from FY 2011 to 2013, 77 to 80 percent of noncitizens in detention facilities were mandatorily detained.[10] ICE's use of RCA to help make mandatory detention decisions may contribute to this high detention rate. Recent Congressional hearings have questioned whether ICE's recent releases of immigration detainees pose a risk to public safety. In response, ICE Director Morton has testified twice regarding ICE's introduction of its new RCA tool.

In their October 15, 2014 FOIA request, Requesters sought fourteen categories of information related to the "Subject to Mandatory Detention" tool that is part of the RCA, for assessing whether a noncitizen is subject to mandatory detention. *See* Exhibit A (FOIA Request). *See* Exhibit A (FOIA Request). On November 7, 2014, the ICE FOIA Office issued a final response to Requesters' request, stating that "no records responsive to [Requesters'] request were found." *See* Exhibit B (final response).

## II. The Search Was Inadequate

Requesters sought very basic information about an acknowledged government tool, yet were told that no records could be found. It is simply implausible that the very agency that created, implemented and currently uses the RCA tool has no documents related to the components, training, implementation and application of the tool.

Requesters are not privy to the precise search terms and method used by ICE. The ICE FOIA Office's final response provides sparse information about the agency's search methods, stating only that:

> ICE has conducted a search of the ICE Office of Enforcement & Removal Operations (ERO) and Office of Detention Policy and Planning (ODPP) for records responsive to your request and no records responsive to your request were found.

---

[8] *See* Exh. D, U.S. ICE, "Enforce Application Suite RCA Detailed Summary," dated March 5, 2013, at 2 ("Subject to Mandatory Detention Tool 2.0") (ICE2013.FOIA17861.000012-13). This and similar documents were released by ICE pursuant to FOIA request #2013-FOIA-17861, made Apr. 4, 2013 by Professor Robert Koulish, Director, MLAW Law and Society Program, at the University of Maryland-College Park, and Mark Noferi, now an Enforcement Fellow at the American Immigration Council.

[9] U.S. Government Accountability Office, *ALTERNATIVES TO DETENTION: Improved Data Collection and Analyses Needed to Better Assess Program Effectiveness* 27 (November 2014) at http://www.gao.gov/products/GAO-15-26.

[10] *Id.* at 28.

Exh. B. ICE did *not* assert that there were responsive records withheld pursuant to a FOIA exemption; it stated that no such records were found. However, the general nature of Requesters' FOIA request, coupled with the agency's open admission that it has developed and used this tool, demonstrates that the search method must not have been adequate. Further, Requesters are aware of several documents – produced after a different requester brought a lawsuit challenging ICE's failure to produce documents in response to a different FOIA request[11] – that fall squarely within the scope of their request. In fact, Requesters specifically requested one of these documents by title in their FOIA request, yet ICE (the author of this document) denied having any such document. The fact that ICE produced numerous documents (including training materials such as a 58-page "quick" RCA reference guide) after a different requester challenged its lack of response, yet now claims that there are no records whatsoever related to the RCA, demonstrates that ICE's search was unreasonable.

### A. It Is Implausible That No Records Exist for a Program Openly Acknowledged and Discussed By Government Officials

There can be no question that ICE uses RCA on hundreds of thousands of noncitizens, and that RCA has a tool that assesses whether a noncitizen is subject to mandatory detention. In the Department of Homeland Security's 2012 Privacy Impact Assessment Update, DHS noted that "ICE created a methodology" to develop the RCA, and has implemented it as a tab in a larger computer module.[12] On March 19, 2013, ICE Director John Morton confirmed to Congress that ICE had completed a nationwide deployment of its new automated "Risk Classification Assessment" tool.[13] Likewise, the White House acknowledged in a formal press release that ICE uses RCA, and trumpeted its benefits.[14] The November 2014 GAO report evaluated initial FY 2013 ICE data regarding ICE's use of RCA on 168,087 noncitizens, and the relationship of RCA to ICE's alternatives to detention programs.[15]

Further, ICE released a 58-page "quick guide" for law enforcement, with a subsection specifically devoted to "Assess[ing] Mandatory Detention." *See* Exh. C at pp. i & 6. That subsection states:

---

[11] These documents were released pursuant to litigation brought by the American Immigration Council ("AIC"). *See American Immigration Council, et al., v. DHS*, Case No. 3:12-cv-00355 (D. Conn. 2013). ICE is currently producing documents pursuant to a negotiated settlement agreement, filed with the Court on July 31, 2013 (Dkt. 44). For a description of the litigation, see http://www.legalactioncenter.org/litigation/criminal-alien-program-cap.

[12] Department of Homeland Security, Privacy Impact Assessment Update for the Enforcement Integrated Database (EID) Risk Classification Assessment (RCA 1.0), ENFORCE Alien Removal Module (EARM 5.0), and Crime Entry Screen (CES 2.0), DHS/ICE/PIA-015(d) (Apr. 6, 2012) pp. 2-3, *available at* http://www.dhs.gov/xlibrary/assets/privacy/privacy_piaupdate_EID_april2012.pdf.

[13] Written testimony of U.S. Immigration and Customs Enforcement Director John Morton for a House Committee on the Judiciary hearing titled: "The release of criminal detainees by U.S. Immigration and Customs Enforcement: Policy or Politics? " (March 19, 2013), available at http://judiciary.house.gov/_files/hearings/printers/113th/113-5_80066.PDF (at p. 13).

[14] The White House, Office of the Press Secretary, *FACT SHEET: Advancing The Human Rights Of LGBT Persons Globally* (June 24, 2014) at http://www.whitehouse.gov/the-press-office/2014/06/24/fact-sheet-advancing-human-rights-lgbt-persons-globally (emphasis added).

[15] U.S. Government Accountability Office, *ALTERNATIVES TO DETENTION*, at 8, 27-28.

> RCA completes an automatic assessment of whether an individual is subject to mandatory detention based on the Immigration and Nationality Act (INA) statutes and allegations entered into the EABM and EARM.[16]

The guide goes on to give guidance as to when RCA performs the "automatic assessment" for mandatory detention.[17] Moreover, RCA Detailed Summaries state that a "Subject to Mandatory Detention Version 2.0" "scoring and list of value (LOV)" tool was "utilized at the time this [RCA] decision was completed and data snapshot was stored," for at least some ICE detainees." *See* Exh. D. The existence of a "Version 2.0" implies ICE's continuous development of such a tool (i.e. that a Version 1.0 also existed).

Yet, when Requesters sought basic information about the rules, criteria, protocols, training or implementation of the tool, ICE responded that it had no such records. The search must have been inadequate, because it is implausible that ICE would have no records at all relating to an ICE program whose existence and implementation has been acknowledged by DHS, the White House, Congress and the ICE Director.

### B. The Search Method Was Inadequate, Because ICE Has Previously Disclosed Documents Authored by the Very Offices It States It Searched, Yet Now Claims There Are No Records

The inadequacy of the search is illustrated by the fact that ICE produced numerous documents to a different requester, yet failed to produce these documents in response to this request.[18] This is not a situation in which one document was inadvertently overlooked during an agency's reasonable search and production of a voluminous set of responsive documents. This is a situation in which an agency denies having *any* documentation about a key tool its officials have openly discussed in public. Tellingly, ICE refused to provide the documents to the prior requester American Immigration Counsel (AIC), until AIC initiated litigation to challenge ICE's deficient FOIA response.

Requesters can provide specific examples that demonstrate ICE's deficient response. For instance, ICE states that it conducted a search within the Office of Enforcement and Removal Operations and found no responsive documents. *See* Exh. B. However, ICE responded to a different requester by producing, among other things, a 58-page "quick" reference guide published by that very office (ERO) on this very topic (RCA). *See* Exh. C. Moreover, Requesters specifically asked for that document *by its date and title* in the current request.[19] Besides being specifically requested by name, the quick reference guide covers the topics described in the request in precisely the same language as the request. For example, the quick reference guide specifically describes the methodology for assessing mandatory detention: the core of the FOIA request at issue. The quick reference guide states: "[t]he methodology used by

[16] Exh. C at p. 6; *see also id.* at p. 1 ("The methodology used by the module is based upon a framework developed by ICE to consider the factors that inform the custodial decision making process," with the factors including "mandatory detention.").

[17] The Guide states that RCA performs the mandatory detention check when no final order exists. *Id.*

[18] To the best of Requesters' knowledge, the documents previously released to AIC are currently not publicly available, but Requesters were able to obtain copies of the documents from AIC.

[19] *See* Exh. A (requesting "[a] document, 'U.S. ICE, Enforcement and Removal Operations, Law Enforcement Systems and Analysis, *Risk Classification Assessment (RCA) Quick Reference Guide Version 1.0*, (May 2012)).

the [RCA] module is based upon a framework developed by ICE to consider the factors that inform the custodial decision making process. These factors include special vulnerabilities, ***mandatory detention***, risk of harm to public safety, and risk of flight." Exh. C at p. 1 (emphasis added).

Requester was able to obtain – from sources *other than ICE* – several documents created by ICE that relate to RCA and the Mandatory Detention tool. These documents demonstrate that responsive documents do exist. Requesters attach several example documents to this appeal:

- The 2012 "quick" reference guide that explains how to use the RCA, mentioned above. *See* Exh. C.
- A sample RCA Detailed Summary that shows application of the RCA to a specific individual. *See* Exh. D.
- A 2012 "Helpful Hints" document describing ICE workflow and use of the RCA and Subject to Mandatory Detention tool. *See* Exh. E at p. 93 (stating that "RCA will use these charges to determine if an alien is subject to mandatory detention per Statutes and Allegations"), and 94 (stating the mandatory detention tab is "automatically populated").
- A December 2012 email describing training for deployment of the RCA. *See* Exh. F. This email specifically refers to the "RCA Playbook," a document that Requesters have not received.
- A 2012 memorandum describing the deployment of RCA and briefly mentioning the role of human discretion and mandatory detention. *See* Exh. G.
- A 2012 presentation titled "RCA Training and Deployment Update for Baltimore and Washington." *See* Exh. H. This presentation identifies two "[a]dditional resources": the Risk Classification (RCA) Quick Reference Guide version 3.0, and the RCA Scenario Playbook version 1.0. Requesters do not have copies of either of these documents. *Id.* at p. 12. The document also states that RCA applies "business rules" to assess mandatory detention. *Id.* at p. 4.
- A January 3, 2013 document entitled "Risk Classification Assessment (RCA) Module, Phase 1-4 Deployment Lessons Learned." *See* Exh. I. This document addresses issues that had arisen within ICE during its piloting of RCA. For example, the document notes that private contractors were participating to some extent in ICE's RCA process, even though contractors were not receiving similar training and do not have "required understanding" of certain forms" (p. 1); that state and local officers under INA § 287(g) are participating in the RCA process (p. 2); and that ICE officers are showing "confusion" and requesting additional guidance on determining valid ID, substance abuse, and "community ties" (pp. 3-4).

ICE's statement that no responsive records were found – in the face of numerous example documents released in the past – demonstrates that the search method must not have been reasonable. While the documents described in this section demonstrate that ICE has responsive documents, they do not satisfy Requesters' FOIA request. The current request covers a different scope and timeframe than the prior request.

In this administrative appeal, Requesters can do more than simply assert that there must be responsive documents. Requesters can point to specific, example documents that were released to a different party. These documents were created by the very office ICE purportedly searched, and relate to the subject matter of the requests using precisely the same terminology as in the requests. Requesters can also identify two responsive documents not in their possession: the RCA Quick Reference Guide version 3.0, and the RCA Scenario Playbook. *See* Exh. H at p. 12. When the record reveals "positive indications of overlooked materials," courts have ruled that an agency's search was inadequate. *See, e.g., Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999) (noting that search was inadequate because agency records suggested that responsive documents were held by a different office that was not searched). ICE's search here was inadequate.

**C. The ICE FOIA Office Did Not Search All Locations Likely to Have Records**

Finally, the ICE FOIA Office's search was inadequate because it did not search all locations likely to have records. "It is well-settled that if an agency has reason to know that certain places may contain responsive documents, it is obligated under FOIA to search barring an undue burden." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999).

Requesters seek information relating to the development and implementation of the RCA and its component tools. Accordingly, a reasonable search should have included offices in addition to the two offices searched by ICE. Specifically, Requesters can identify four other offices that may have responsive information: the Office of State & Local Coordination, the Office of Management & Administration, the Office of Principal Legal Advisor, and ICE headquarters. *See* Exh. J (ICE organizational chart).[20]

Office of State & Local Coordination. The Office of State & Local Coordination may have responsive records because, upon information and belief, both the RCA and Subject to Mandatory Detention tool rely on criminal history information, including arrests, charges and convictions, many of which are derived from state and local law enforcement systems.[21] Additionally, local law enforcement officers, under INA § 287(g), appear to play a role in the RCA process that determines detention, from released documents.[22]

Office of Management & Administration. A search of the Office of Management & Administration is also necessary, because that office and its subdivisions are likely to have information related to training given to ICE officers using the tool. Requesters specifically asked for documents relating to "instructions, guidance or training to DHS officers or contractors" for use of the RCA and Subject to Mandatory Detention tools. *See* Exh. A at p. 5 (item 8). The Office of Management & Administration specifically includes a "Training & Development" department, which is likely to have information on training or development of the RCA and

[20] This chart can also be found at http://www.dhs.gov/xlibrary/assets/org-chart-ice.pdf.

[21] Exh. C (RCA Quick Reference Guide) at p. 1 ("RCA will utilize data that has been entered into the Crime Entry Screen (CES) to evaluate an individual's criminal history, including all charges and convictions."); *id.* at 7 ("*It is important that the criminal history data has been correctly entered into both the encounter and person in CES.*") (emphasis in original).

[22] Exh. I at p. 2; *see also* Exh. C (RCA Quick Reference Guide) at 1 ("Agents/officers will also provide inputs based on information gathered during the intake process."); *id.* at 7 ("Additional information regarding the individual will come from the intake interview, and will detail such information as Security Threat Group affiliation.")

Subject to Mandatory Detention tools. ICE has already released one such document, the RCA Quick Reference Guide, to a different requester, and other emails describe required training.[23]

Office of the Principal Legal Advisor. The Office of the Principal Legal Advisor may also have responsive information about the development and criteria for RCA and the Subject to Mandatory Detention tools, because, upon information and belief, these tools identify noncitizens who are subject to mandatory detention by statute or regulation. Requesters expect that ICE legal counsel were involved in, or at least reviewed, the criteria to ensure that they match the legal requirements. Requesters specifically asked for "[a]ny and all documents…relating to…the manner in which the 'Subject to Mandatory Detention' tool…is updated to reflect changes in the law." Exh. A at p. 3 (Request 5). The Office of the Principal Legal Advisor is likely to have this type of information.

ICE Headquarters. Lastly, the ICE Headquarters Office is very likely to have information regarding RCA. Considering that the White House has trumpeted the development of RCA, and the ICE Director has testified to Congress multiple times on RCA, , it is highly likely that discussions and guidance regarding development and implementation of the RCA and its component tools have occurred at the highest levels of ICE.

## III. Conclusion

For the reasons described above, Requesters respectfully appeal the ICE FOIA Office's final determination that no records exist. As described in Section I.A, it is simply implausible that there are no documents related to the development, criteria, training and implementation of a recognized government program. ICE's search was inadequate for two reasons. First, ICE's search of the two offices it identified was inadequate, because it did not locate documents known to exist. This document fall squarely within several of the items requested, uses precisely the same terminology as Requesters' FOIA request, and in fact was specifically requested by name. This is not a situation in which an agency simply overlooked one document when doing a comprehensive collection and production; in this instance, the agency claims it has no records at all, despite the fact that it produced numerous documents to a different FOIA requester. Second, the search was inadequate because ICE did not search all offices likely to have information. Specifically, the Office of State & Local Coordination, the Office of Management & Administration, the Office of the Principal Legal Advisor, and ICE Headquarters are likely to have responsive information, and should have been searched.

[23] Exh. G.

The Requesters certify that the above information is true and correct to the best of the Requesters' knowledge. Should you have any questions, please contact Requesters using the contact information below, or the mailing address in the letterhead on the first page of this appeal.

Sincerely,

Katherine Evans
Teaching Fellow, University of Minnesota Law School
evans407@umn.edu or (612) 625-5515

Benjamin Casper
Visiting Associate Professor, University of Minnesota Law School
caspe010@umn.edu or (612) 625-5515

Robert Koulish
Professor, University of Maryland
rkhoulish@umd.edu or (410) 925-3894

Enclosures

**List of Exhibits:**

Exhibit A: FOIA Request (October 15, 2014)

Exhibit B: ICE "No Records" Response (November 7, 2014)

Exhibit C: Risk Classification Assessment (RCA) Quick Reference Guide v. 1.0 (May 2012)

Exhibit D: Sample RCA Detailed Summary

Exhibit E: "Helpful Hints when Starting an RCA for Detain/Release Decision," December 2012

Exhibit F: December 12, 2014 email titled "Risk Classification Assessment (RCA) Deployment"

Exhibit G: August 2012 memo from Gary Mead, Executive Associate Director, Subject: Risk Classification and Assessment

Exhibit H: March 2012 "RCA Training and Deployment Update for Baltimore and Washington"

Exhibit I: January 3, 2013 document entitled "Risk Classification Assessment (RCA) Module, Phase 1-4 Deployment Lessons Learned"

Exhibit J: ICE Organizational Chart (from http://www.dhs.gov/xlibrary/assets/org-chart-ice.pdf)

English Customer Service USPS Mobile Register / Sign In

USPS.COM

# USPS Tracking™

Customer Service ›
Have questions? We're here to help.

Tracking Number: EM392769135US

Updated Delivery Day: **Wednesday, January 7, 2015**
Scheduled Delivery Day: Tuesday, January 6, 2015, 12:00 pm
**Money Back Guarantee**
Signed for By: K LUSBY // WASHINGTON, DC 20528 // 11:41 am

## Product & Tracking Information

**Postal Product:**
Priority Mail Express 1-Day™

**Features:**
PO to Addressee
Up to $100 insurance included
Restrictions Apply

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| January 7, 2015 , 11:41 am | Delivered | WASHINGTON, DC 20528 |

Your item was delivered at 11:41 am on January 7, 2015 in WASHINGTON, DC 20528 to HOMELAND SEC 20528. The item was signed for by K LUSBY.

| | | |
|---|---|---|
| January 7, 2015 , 6:17 am | Arrived at Post Office | WASHINGTON, DC 20018 |
| January 6, 2015 , 12:31 pm | Available for Pickup | WASHINGTON, DC 20528 |
| January 6, 2015 , 12:09 pm | Departed USPS Facility | WASHINGTON, DC 20074 |
| January 6, 2015 , 9:12 am | Arrived at USPS Facility | WASHINGTON, DC 20074 |
| January 5, 2015 , 8:07 pm | Departed USPS Facility | SAINT PAUL, MN 55111 |
| January 5, 2015 , 7:25 pm | Arrived at USPS Origin Facility | SAINT PAUL, MN 55111 |
| January 5, 2015 , 7:00 pm | Departed USPS Facility | MINNEAPOLIS, MN 55401 |
| January 5, 2015 , 6:16 pm | Arrived at USPS Origin Facility | MINNEAPOLIS, MN 55401 |
| January 5, 2015 , 5:09 pm | Departed Post Office | MINNEAPOLIS, MN 55415 |
| January 5, 2015 , 3:50 pm | Acceptance | MINNEAPOLIS, MN 55415 |

## Available Actions

Proof of Delivery

Text Updates

Email Updates

## Track Another Package

Tracking (or receipt) number

Track It

**Bianchi-Rossi, Deanna**

**From:** trackingupdates@fedex.com
**Sent:** Tuesday, January 06, 2015 11:11 AM
**To:** Bianchi-Rossi, Deanna
**Subject:** FedEx Shipment 772460431509 Delivered

---

This tracking update has been requested by:

Company Name: Dorsey & Whitney LLP
Name: Shannon Bjorklund
E-mail: bjorklund.shannon@dorsey.com

Message: PSShip eMail Notification

---

Our records indicate that the following shipment has been delivered:

Reference: 02016-700164.00004
Ship (P/U) date: Jan 5, 2015
Delivery date: Jan 6, 2015 11:47 AM
Sign for by: R.GILL
Delivery location: WASHINGTON, DC
Delivered to: Shipping/Receiving
Service type: FedEx Priority Overnight
Packaging type: FedEx Pak
Number of pieces: 1
Weight: 3.00 lb.
Special handling/Services: Deliver Weekday

Tracking number: 772460431509

| Shipper Information | Recipient Information |
| --- | --- |
| Shannon Bjorklund | Associate General Counsel |
| Dorsey & Whitney LLP | (General Law) |
| 50 S Sixth Street | 245 MURRAY LN SW |
| Suite 1500 | WASHINGTON |
| Minneapolis | DC |
| MN | US |
| US | 20528 |
| 55402 | |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 11:10 AM CST on 01/06/2015.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the status of this shipment online, please use the following:
https://www.fedex.com/insight/findit/nrp.jsp?tracknumbers=772460431509&language=en&opco=FX&clientype=ivpodalrt

This tracking update has been sent to you by FedEx on the behalf of the Requestor noted above. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

**Bianchi-Rossi, Deanna**

**From:** trackingupdates@fedex.com
**Sent:** Tuesday, January 06, 2015 11:11 AM
**To:** Bianchi-Rossi, Deanna
**Subject:** FedEx Shipment 772460477794 Delivered

---

This tracking update has been requested by:

Company Name: Dorsey & Whitney LLP
Name: Shannon Bjorklund
E-mail: bjorklund.shannon@dorsey.com

Message: PSShip eMail Notification

---

Our records indicate that the following shipment has been delivered:

Reference: 02016-700164.4
Ship (P/U) date: Jan 5, 2015
Delivery date: Jan 6, 2015 11:47 AM
Sign for by: R.GILL
Delivery location: Washington, DC
Delivered to: Shipping/Receiving
Service type: FedEx Priority Overnight
Packaging type: FedEx Pak
Number of pieces: 1
Weight: 3.00 lb.
Special handling/Services: Deliver Weekday

Tracking number: 772460477794

| Shipper Information | Recipient Information |
|---|---|
| Shannon Bjorklund | U.S. Immigration and Customs |
| Dorsey & Whitney LLP | Office of Principal Legal Advisor |
| 50 S Sixth Street | Freedom of Information Act |
| Suite 1500 | Office |
| Minneapolis | U.S. Depart of Homeland Security |
| MN | Washington |
| US | DC |
| 55402 | US |
| | 20536 |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 11:10 AM CST on 01/06/2015.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the status of this shipment online, please use the following:
https://www.fedex.com/insight/findit/nrp.jsp?tracknumbers=772460477794&language=en&opco=FX&clientype=ivpodalrt

This tracking update has been sent to you by FedEx on the behalf of the Requestor noted above. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

# Exhibit 15

U.S. Department of Homeland Security
500 12th St. SW; STOP 5009
Washington, DC 20536-5009

U.S. Immigration
and Customs
Enforcement

January 30, 2015

VIA REGULAR U.S. POSTAL SERVICE

Katherine Evans
University of Minnesota Law School
Center for New Americans – 190 W.F. Mondale Hall
229 19th Avenue South
Minneapolis, MN 55455

**RE: 2015-ICAP-00117, 2015-ICFO-03027**

Dear Ms. Evans:

This is in response to your letter dated January 5, 2015, which was received by ICE on January13, 2015, appealing the adverse determination by the U.S. Immigration and Customs Enforcement (ICE), Freedom of Information Act (FOIA) Office in response to your Freedom of Information Act/Privacy Act (FOIA/PA) request. The initial request was seeking information for the public and educational research regarding ICE's use of its risk classification assessment (RCA) tool and, specifically, ICE's use of the mandatory detention tool within RCA.

On November 7, 2014, ICE issued a final determination letter regarding your FOIA request. The letter informed you that, in response to your FOIA request, ICE conducted a search of the Office of Enforcement and Removal Operations and Office of Detention Policy and Planning and did not locate any records responsive to your FOIA request.

Under 6 C.F.R. § 5.9(a)(1), appeals to an adverse determination by the ICE FOIA Office "must be received by the Associate General Counsel (General Law) within 60 days of the date of the letter denying your request." Your appeal letter was received on January 13, 2015, which is more than sixty (60) days from the date of the November 7, 2014, final determination letter from the ICE FOIA Office. As such, ICE is administratively closing your appeal in this case pursuant to 6 C.F.R. § 5.9(a)(1).

This decision is the final action of the U.S. Immigration and Customs Enforcement concerning your FOIA/PA request. Inasmuch as you consider this to be denial of your appeal, you may obtain judicial review of this decision pursuant to the provisions of 5 U.S.C. § 552(a)(4)(B) in the United States District Court in the district in which you reside, or in which you have a principal place of business, or in which the agency records are situated, or in the District of Columbia.

Should you have any questions regarding this appeal, please contact ICE at ice-foia@dhs.gov. In the subject line of the email, please include the word "appeal," your appeal number, which is **2015-ICAP-00117** and the FOIA case number, which is **2015-ICFO-03027**.

Sincerely,

Debbie Seguin
Chief, Government Information Law Division
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

# Exhibit 16

UNIVERSITY OF MINNESOTA

*Twin Cities Campus*

*Law Clinics*
*Law School*

*190 Walter F. Mondale Hall*
*229 19th Avenue South*
*Minneapolis, MN 55455*

*Office: 612-625-5515*
*Fax: 612-624-5771*

February 2, 2015

***Via Email***

ICE FOIA
Government Information Law Division
ICE Office of the Principal Legal Advisor
U.S. Department of Homeland Security
ice-foia@dhs.gov

Re: Freedom of Information Act Appeal – Correspondence related to Appeal of Fee Waiver Denial: **Appeal No. 2015-ICAP-00117**
FOIA Request No. 2015-ICFO-03027 made by Professor Benjamin Casper (University of Minnesota Law School), Teaching Fellow Katherine Evans (University of Minnesota Law School), and Professor Robert Koulish (University of Maryland) on October 15, 2014

To whom it may concern:

On January 5, 2015, Requesters Professor Benjamin Casper (University of Minnesota Law School), Teaching Fellow Katherine Evans (University of Minnesota Law School), and Professor Robert Koulish (University of Maryland) (together, "Requesters") submitted an appeal of ICE's denial of Requesters' request for fee waiver approval. Requesters sent the letter via two methods: overnight mail via the United States Postal Service, and Next Day Delivery via Federal Express. FedEx confirmed that they delivered the appeal letter to both addresses on January 6, 2015. Although USPS stated that the package containing an additional copy of the appeal letter was "available for pickup" around noon on January 6, 2015, it was not delivered until around noon on January 7, 2015.

Requesters received a letter dated January 13, 2015, stating that the appeal was not received until January 13, 2015. For your convenience, Requesters are attaching copies of the confirmations they received confirming delivery by FedEx on January 6, 2015 and delivery by USPS on January 7, 2015.

If you have any questions, please do not hesitate to contact us using the contact information provided below.

Sincerely,

Katherine Evans
Teaching Fellow, University of Minnesota Law School
evans407@umn.edu or (612) 625-5515

Benjamin Casper
Visiting Associate Professor, University of Minnesota Law School
caspe010@umn.edu or (612) 625-5515

Robert Koulish
Professor, University of Maryland
rkhoulish@umn.edu or (410) 925-3894

Enclosures

USPS.COM

# USPS Tracking™

Customer Service ›
Have questions? We're here to help.

Tracking Number: EM392769135US

Updated Delivery Day: Wednesday, January 7, 2015
Scheduled Delivery Day: Tuesday, January 6, 2015, 12:00 pm
Money Back Guarantee
Signed for By: K LUSBY // WASHINGTON, DC 20528 // 11:41 am

## Product & Tracking Information

**Postal Product:** Priority Mail Express 1-Day™

**Features:** PO to Addressee

Up to $100 insurance included
Restrictions Apply

| Date & Time | Status of Item | Location |
|---|---|---|
| January 7, 2015 , 11:41 am | Delivered | WASHINGTON, DC 20528 |

Your item was delivered at 11:41 am on January 7, 2015 in WASHINGTON, DC 20528 to HOMELAND SEC 20528. The item was signed for by K LUSBY.

| | | |
|---|---|---|
| January 7, 2015 , 8:17 am | Arrived at Post Office | WASHINGTON, DC 20018 |
| January 6, 2015 , 12:31 pm | Available for Pickup | WASHINGTON, DC 20528 |
| January 6, 2015 , 12:09 pm | Departed USPS Facility | WASHINGTON, DC 20074 |
| January 6, 2015 , 9:12 am | Arrived at USPS Facility | WASHINGTON, DC 20074 |
| January 5, 2015 , 8:07 pm | Departed USPS Facility | SAINT PAUL, MN 55111 |
| January 5, 2015 , 7:25 pm | Arrived at USPS Origin Facility | SAINT PAUL, MN 55111 |
| January 5, 2015 , 7:00 pm | Departed USPS Facility | MINNEAPOLIS, MN 55401 |
| January 5, 2015 , 6:16 pm | Arrived at USPS Origin Facility | MINNEAPOLIS, MN 55401 |
| January 5, 2015 , 5:09 pm | Departed Post Office | MINNEAPOLIS, MN 55415 |
| January 5, 2015 , 3:50 pm | Acceptance | MINNEAPOLIS, MN 55415 |

## Available Actions

Proof of Delivery

Text Updates

Email Updates

## Track Another Package

Tracking (or receipt) number

Track It

Customer Copy
Label 11-F, April 2004

EXPRESS MAIL
UNITED STATES POSTAL SERVICE®

Post Office To Addressee

EM 392769135 US

**ORIGIN (POSTAL SERVICE USE ONLY)**

PO ZIP Code: 55415
Day of Delivery: ☐ Next ☐ 2nd ☐ 2nd Del. Day
Postage: $00.00
Date Accepted: 1 5 15 (Mo. Day Year)
Scheduled Date of Delivery: Month Day
Return Receipt Fee: $
Scheduled Time of Delivery: ☐ Noon ☐ 3 PM
COD Fee: $
Insurance Fee: $
Time Accepted: 3:55 ☐ AM ☐ PM
Military: ☐ 2nd Day ☐ 3rd Day
Total Postage & Fees: $00.00
Flat Rate ☐ or Weight: 2 lbs. 7 ozs.
Int'l Alpha Country Code
Acceptance Emp. Initials

**DELIVERY (POSTAL USE ONLY)**

Delivery Attempt (Mo. Day) — Time ☐ AM ☐ PM — Employee Signature
Delivery Attempt (Mo. Day) — Time ☐ AM ☐ PM — Employee Signature
Delivery Date (Mo. Day) — Time ☐ AM ☐ PM — Employee Signature

WAIVER OF SIGNATURE ... NO DELIVERY ☐ Weekend ☐ Holiday

**CUSTOMER USE ONLY**

METHOD OF PAYMENT: Express Mail Corporate Acct. No. X554845
Federal Agency Acct. No. or Postal Service Acct. No.

FROM: (PLEASE PRINT) PHONE 612 340 2600

Shannon L. Bjorklund
DORSEY & WHITNEY LAW FIRM
50 S 6TH ST STE 1500
MINNEAPOLIS MN 55402-1553

TO: (PLEASE PRINT) PHONE 202-254-4001

Associate General Counsel
(General Law)
Department of Homeland Security
Washington, D.C. 20528

FOR PICKUP OR TRACKING: Visit www.usps.com or Call 1-800-222-1811

EMS

**Bianchi-Rossi, Deanna**

**From:** trackingupdates@fedex.com
**Sent:** Tuesday, January 06, 2015 11:11 AM
**To:** Bianchi-Rossi, Deanna
**Subject:** FedEx Shipment 772460477794 Delivered

---

This tracking update has been requested by:

Company Name: Dorsey & Whitney LLP
Name: Shannon Bjorklund
E-mail: bjorklund.shannon@dorsey.com

Message: PSShip eMail Notification

---

Our records indicate that the following shipment has been delivered:

Reference: 02016-700164.4
Ship (P/U) date: Jan 5, 2015
Delivery date: Jan 6, 2015 11:47 AM
Sign for by: R.GILL
Delivery location: Washington, DC
Delivered to: Shipping/Receiving
Service type: FedEx Priority Overnight
Packaging type: FedEx Pak
Number of pieces: 1
Weight: 3.00 lb.
Special handling/Services: Deliver Weekday

Tracking number: 772460477794

| Shipper Information | Recipient Information |
|---|---|
| Shannon Bjorklund | U.S. Immigration and Customs |
| Dorsey & Whitney LLP | Office of Principal Legal Advisor |
| 50 S Sixth Street | Freedom of Information Act |
| Suite 1500 | Office |
| Minneapolis | U.S. Depart of Homeland Security |
| MN | Washington |
| US | DC |
| 55402 | US |
| | 20536 |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 11:10 AM CST on 01/06/2015.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the status of this shipment online, please use the following:
https://www.fedex.com/insight/findit/nrp.jsp?tracknumbers=772460477794&language=en&opco=FX&clientype=ivpodalrt

This tracking update has been sent to you by FedEx on the behalf of the Requestor noted above. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

psship FedEx®

*package id*
0099900
*ship date*
Mon, Jan 05 2015
*to*
U.S. Immigration and Customs
Office of Principal Legal Advisor
U.S. Depart of Homeland Security
Freedom of Information Act Office
500 12th St, SW, Stop 5009
Washington , DC 20536-5009
United States
(202) 254-4001
*residential address*
No
*return label*
No
*notification type*
Delivery
*notification recipients*
bjorklund.shannon@do...
rossi.deanna@dorsey.com

*from*
Shannon Bjorklund (02016)
Dorsey & Whitney LLP
50 S Sixth Street
Suite 1500
Minneapolis , MN 55402
United States
(612) 492-6636
*billing*
Pro Bono (Challenge)...icans-ICE FOIA Challenge RCA
(700164-00004)
*operator*
Deanna Bianchi-Rossi
(612) 340-7812
rossi.deanna@dorsey.com
*create time*
01/05/15, 11:11AM

*vendor*
FedEx
*tracking number*
772460477794
*service*
FedEx Priority Overnight®
*packaging*
FedEx® Pak
*dimensions*
2.0 LBS
*signature*
Deliver without signature
*courtesy quote*
20.84

*Quote may not reflect all accessorial charges*

## *Legal Terms and Conditions*

Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions, including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-800 -463-3339).

©2003-2015 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
FedEx service marks are owned by Federal Express Corporation and are used by permission.
Other product and company names listed are trademarks or trade names of their respective companies.

**Bianchi-Rossi, Deanna**

**From:** trackingupdates@fedex.com
**Sent:** Tuesday, January 06, 2015 11:11 AM
**To:** Bianchi-Rossi, Deanna
**Subject:** FedEx Shipment 772460431509 Delivered

---

This tracking update has been requested by:

Company Name: Dorsey & Whitney LLP
Name: Shannon Bjorklund
E-mail: bjorklund.shannon@dorsey.com

Message: PSShip eMail Notification

---

Our records indicate that the following shipment has been delivered:

Reference: 02016-700164.00004
Ship (P/U) date: Jan 5, 2015
Delivery date: Jan 6, 2015 11:47 AM
Sign for by: R.GILL
Delivery location: WASHINGTON, DC
Delivered to: Shipping/Receiving
Service type: FedEx Priority Overnight
Packaging type: FedEx Pak
Number of pieces: 1
Weight: 3.00 lb.
Special handling/Services: Deliver Weekday

Tracking number: 772460431509

| Shipper Information | Recipient Information |
|---|---|
| Shannon Bjorklund | Associate General Counsel |
| Dorsey & Whitney LLP | (General Law) |
| 50 S Sixth Street | 245 MURRAY LN SW |
| Suite 1500 | WASHINGTON |
| Minneapolis | DC |
| MN | US |
| US | 20528 |
| 55402 | |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 11:10 AM CST on 01/06/2015.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the status of this shipment online, please use the following:
https://www.fedex.com/insight/findit/nrp.jsp?tracknumbers=772460431509&language=en&opco=FX&clientype=ivpodalrt

This tracking update has been sent to you by FedEx on the behalf of the Requestor noted above. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

psship

FedEx®

*package id*
0099899
*ship date*
Mon, Jan 05 2015
*to*
Associate General Counsel

(General Law)
245 MURRAY LN SW
WASHINGTON , DC
20528-1002
United States
(202) 254-4001
*residential address*
No
*return label*
No
*notification type*
Delivery
*notification recipients*
bjorklund.shannon@do...
rossi.deanna@dorsey.com

*from*
Shannon Bjorklund
(02016)
Dorsey & Whitney LLP
50 S Sixth Street
Suite 1500
Minneapolis , MN 55402
United States
(612) 492-6636
*billing*
Pro Bono
(Challenge)...icans-ICE
FOIA Challenge RCA
(700164-00004)
*operator*
Deanna Bianchi-Rossi
(612) 340-7812
rossi.deanna@dorsey.com
*create time*
01/05/15, 11:09AM

*vendor*
FedEx
*tracking number*
772460431509
*service*
FedEx Priority Overnight®
*packaging*
FedEx® Pak
*dimensions*
2.0 LBS
*signature*
Deliver without signature
*courtesy quote*
20.84

*Quote may not reflect all accessorial charges*

*Legal Terms and Conditions*

Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions, including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-800 -463-3339).

©2003-2015 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
FedEx service marks are owned by Federal Express Corporation and are used by permission.
Other product and company names listed are trademarks or trade names of their respective companies.

# Exhibit 17

U.S. Department of Homeland Security
500 12th St. SW; STOP 5009
Washington, DC 20536-5009

U.S. Immigration and Customs Enforcement

April 23, 2015

Katherine Evans
University of Minnesota Law School
Center for New Americans - 190 W.F. Mondale Hall
229 19th Avenue South
Minneapolis, MN 55455

**RE: 2015-ICAP-00277, 2015-ICAP-00117, 2015-ICFO-03027**

Dear Ms. Evans:

This is in response to your letter dated March 24, 2015, and received on March 26, 2015, respectfully requesting reconsideration of the denial of your Freedom of Information Act (FOIA) Appeal as untimely. Your FOIA request to U.S. Immigration & Customs Enforcement (ICE) seeks information regarding ICE's use of its risk classification assessment (RCA) tool and specifically, ICE's use of the mandatory detention tool within RCA (14 items detailed in the request).

The administrative record indicates that the ICE FOIA Office stated in a letter dated January 30, 2015, "[u]nder 6 C.F.R. § 5.9(a)(1), appeals to an adverse determination by the ICE FOIA Office 'must be received by the Associate General Counsel (General Law) within 60 days of the date of the letter denying your request.' Your appeal letter was received on January 13, 2015, which is more than sixty (60) days from the date of the November 7, 2014, final determination letter from the ICE FOIA Office. As such, ICE is administratively closing your appeal in this case pursuant to 6 C.F.R. § 5.9(a)(1)."

Upon review of the delivery receipts that you provided with your March 24, 2015 letter, ICE finds that your appeal dated January 5, 2015, was delivered timely on January 6, 2015.

ICE records indicate that the ICE FOIA Office issued a final response in a letter dated November 7, 2014, and stated "ICE has considered your request under both the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Information about an individual that is maintained in a Privacy Act system of records may be accessed by that individuall unless the agency has exempted the system of records from the access provisions of the Privacy Act. ICE has conducted a search of the ICE Office of Enforcement & Removal Operations (ERO) and Office of Detention Policy and Planning (ODPP) for records responsive to your request and no records responsive to your request were found."

As was explained in ICE FOIA's final response letter sent via email on November 7, 2014, a search of ICE Enforcement & Removal Operations (ERO) and Office of Detention Policy and Planning (ODPP) did not locate any records responsive to your request. However, ICE has determined that new search(s) or, modifications to the existing search(s), could be made. We are therefore remanding your appeal to ICE FOIA for processing and re-tasking to the appropriate

agency/office(s) to obtain any responsive documents. The ICE FOIA Office will respond directly to you.

Should you have any questions regarding this appeal remand, please contact ICE at ice-foia@dhs.gov. In the subject line of the email please include the word "appeal," your appeal numbers, which are **2015-ICAP-00277** and **2015-ICAP-00117**, and the FOIA case number, which is **2015-ICFO-03027**.

Sincerely,

for

Debbie Seguin
Chief
Government Information Law Division
ICE Office of the Principal Legal Advisor
U.S. Department of Homeland Security

# Exhibit 18

UNIVERSITY OF MINNESOTA

*Twin Cities Campus*

*Law Clinics*
*Law School*

*190 Walter F. Mondale Hall*
*229 19th Avenue South*
*Minneapolis, MN 55455*

*Office: 612-625-5515*
*Fax: 612-624-5771*

October 15, 2014

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street SW, Stop 5009
Washington, D.C. 20536-5009

Re: Freedom of Information Act Request

To Whom It May Concern:

This is a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by Professor Benjamin Casper and Teaching Fellow Katherine Evans of the University of Minnesota Law School's Center for New Americans, and Professor Robert Koulish of the University of Maryland (collectively, "the Requestors").

The purpose of this request is to obtain information, for the public and for educational research, regarding Immigration and Customs Enforcement's ("ICE's") use of its "risk classification assessment" ("RCA") tool. Specifically, we request copies of RCA Detailed Summaries for ICE arrestees in the St. Paul, Minnesota Field Office area of responsibility. A short background and formal request follows.

**Background**

On March 19, 2013, ICE Director John Morton confirmed to Congress that ICE had completed a nationwide deployment of its new automated "Risk Classification Assessment" tool.[1] As Director Morton stated, "this assessment contains objective criteria to guide decision making, regarding whether an alien should be detained or released, and if detained, the alien's appropriate custody classification level." Morton stated the RCA would "improve transparency and uniformity in detention custody and classification decisions reflecting the agency's civil enforcement priorities."

Once a final RCA determination is made, according to DHS, an "RCA Detailed Summary" is printed and placed in the alien's A-File.[2] The RCA Detailed Summary contains the alien's

---

[1] *Written testimony of U.S. Immigration and Customs Enforcement Director John Morton for a House Committee on the Judiciary hearing titled: "The release of criminal detainees by U.S. Immigration and Customs Enforcement: Policy or Politics?"* (March 19, 2013), *available at* http://www.dhs.gov/news/2013/03/19/written-testimony-us-immigration-and-customs-enforcementdirector-john-morton-house.

[2] Department of Homeland Security, *Privacy Impact Assessment Update for the Enforcement Integrated Database (EID) Risk Classification Assessment (RCA 1.0), ENFORCE Alien Removal Module (EARM 5.0), and Crime Entry*

biographic information, criminal history, special vulnerabilities, risk to public safety factors, risk of flight factors, mandatory detention factors, the alien's current custody classification, and the history of the alien's custody classification recommendations and final ERO decisions.[3]

In December 2012, ICE stated that the RCA tool was scheduled to be deployed in the St. Paul Field Office Area of Responsibility ("AOR") on January 7, 2013 (covering North Dakota, South Dakota and Minnesota and the following counties in western Wisconsin: Ashland, Adams, Barron, Bayfield, Buffalo, Burnett, Chippewa, Clark, Douglas, Dunn, Eau Claire, Iron, Jackson, Juneau, La Crosse, Lincoln, Madeline Island, Marathon, Monroe, Oneida, Pepin, Pierce, Polk, Portage, Price, Rusk, Saint Croix, Sawyer, Taylor, Trempeleau, Vernon, Vilas, Washburn, and Wood).[4]

**Request**
Accordingly, pursuant to FOIA, we request:

- Copies of **ALL** the RCA Detailed Summaries produced by the ICE St. Paul Field Office Area of Responsibility, since the RCA tool was implemented in this jurisdiction.

- Separately, RCA Detailed Summaries reflecting risk assessments performed on individuals in ICE custody within the St. Paul Field Office Area of Responsibility, since the RCA tool was implemented, whose Notice to Appear was filed with the Bloomington, Minnesota Immigration Court—including RCA Detailed Summaries for those arrested in other Field Offices, but whose proceedings were transferred to the St. Paul Area of Responsibility.

**Additional Information**
Requestors include educational requestors under the provisions of the Freedom of Information Act, and we request to be so classified. Professor Benjamin Casper and Teaching Fellow Katherine Evans teach the Federal Immigration Litigation Clinic at the University of Minnesota Law School, a 501(c)(3) educational institution.[5] Professor Robert Koulish teaches classes on political science, immigration, and immigration law, and conducts active scholarly research at the University of Maryland, a 501(c)(3) educational institution, through its Center for American Politics and Citizenship and Francis King Carey School of Law.[6] Instructors Casper, Evans, and Koulish plan to use this information for future scholarly research, and publicize it through media including but not limited to academic articles in law reviews and humanities publications,

---

*Screen (CES 2.0)*, DHS/ICE/PIA-015(d) at 5 (Apr. 6, 2012), *available at* http://www.dhs.gov/xlibrary/assets/privacy/privacy_piaupdate_EID_april2012.pdf.

[3] *Id.*

[4] U.S. Immigration and Customs Enforcement, *The Public Advocate Voice* 2 (Issue 3, December 2012), *available at* http://www.ice.gov/doclib/about/offices/ero/pdf/voice-3_12-2012.pdf.

[5] *See* http://www.law.umn.edu/facultyprofiles/casperb.html (Benjamin Casper biography); http://www.law.umn.edu/newamericans/people/evanse.html (Katherine Evans biography).
[6] *See* http://www.capc.umd.edu/staff/koulish.asp (Robert Koulish biography).

reports, books, op-eds, and other public materials, made available through academic websites, press releases, and other publicly available mediums.

We agree to pay search, duplication, and review fees of up to $100. If fees will amount to more than $100, we request a full waiver of those fees over $100. Here, disclosure of RCA information contributes significantly to public understanding of immigration detention policies. These policies have attracted significant recent public attention as Congress examines whether release of immigration detainees poses a risk to public safety, imposes unnecessary costs, or unnecessarily restricts liberty. 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 6 C.F.R. § 5.11(k).

The Requestors certify that the above information is true and correct to the best of the Requestors' knowledge. *See* 6 C.F.R. § 5.5(d)(3). As set forth in 5 U.S.C. § 552(a)(6), we expect to receive a reply within the statutorily mandated deadline of 20 working days of receipt of this letter, and are aware of our right to an administrative appeal if we do not. If this request is denied in whole or in part, please justify all deletions by reference to the specific exemptions of the act. In addition, please release all segregable portions of otherwise exempt material pursuant to 5 U.S.C. § 552(b).

Should you have any questions, or if we can be of any assistance, please feel free to contact us. You can reach Katherine Evans at evans407@umn.edu and Benjamin Casper at caspe010@umn.edu or at (612) 625-5515. Robert Koulish can be reached at (410) 925-3894, or by email at rkoulish@umd.edu

Thank you very much for your consideration.

Sincerely,

Katherine Evans
Teaching Fellow

Benjamin Casper
Visiting Associate Clinical Professor

Robert Koulish
Professor, University of Maryland

# Exhibit 19

Katherine Evans <evans407@umn.edu>

# ICE FOIA Request 2015-ICFO-02993

**ice-foia@dhs.gov** <ice-foia@dhs.gov> Tue, Oct 21, 2014 at 11:15 AM
To: evans407@umn.edu

October 21, 2014

Katherine Evans
University of Minnesota Law School
Ctr for New Americans - 190 W.F. Mondale Hall
229 19th Avenue South
Minneapolis, MN 55455

**RE: ICE FOIA Case Number 2015-ICFO-02993**

Dear Ms. Evans:

This acknowledges receipt of your Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), dated October 15, 2014, and to your request for a waiver of all assessable FOIA fees. Your request was received in this office on October 21, 2014. Specifically, you requested copies of all the RCA detailed summaries produced by the ICE St. Paul Field Office AOR, since the RCA tool was implemented in this jurisdiction; separately, RCA detailed summaries reflecting risk assessments performed on individuals in ICE custody within the St. Paul Field Office AOR, since the RCA tool was implemented, whose NTA was filed with the Bloomington, MN Immigration Court - including RCA detailed summaries for those arrested in other Field Offices, but whose proceedings were transferred to the St. Paul AOR.

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. Per Section 5.5(a) of the DHS FOIA regulations, 6 C.F.R. Part 5, ICE processes FOIA requests according to their order of receipt. Although ICE's goal is to respond within 20 business days of receipt of your request, the FOIA does permit a 10- day extension of this time period. As your request seeks numerous documents that will necessitate a thorough and wide-ranging search, ICE will invoke a 10-day extension for your request, as allowed by Title 5 U.S.C. § 552(a)(6)(B). If you care to narrow the scope of your request, please contact our office. We will make every effort to comply with your request in a timely manner.

After thoroughly reviewing your letter and request for fee waiver, I have determined that you have not presented a convincing argument that University of Minnesota Law School is entitled to a blanket waiver of applicable fees.

The DHS FOIA Regulations at 6 CFR § 5.11(k)(2) set forth six factors to examine in determining whether the applicable legal standard for a fee waiver has been met. We will consider these factors in our evaluation of your request for a fee waiver:

(1) Whether the subject of the requested records concerns "the operations or activities of the government";

(2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities;

(3) Whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requestor or a narrow segment of interested persons;

(4) Whether the contribution to public understanding of government operations or activities will be "significant";

(5) Whether the requester has a commercial interest that would be furthered by the requested disclosure; and

(6) Whether the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requestor.

As a requester, you bear the burden under FOIA of showing that the fee waiver requirements have been met. Based on my review of your October 15, 2014 letter and for the reasons stated herein, I have determined that your fee waiver

request is deficient because your request did not satisfy factors 4, 5, and 6. Since your request for a fee waiver has failed to satisfy each of the required factors, I am denying your fee waiver request.

Provisions of the FOIA allow us to recover part of the cost of complying with your request. We shall charge you for records in accordance with the DHS Interim FOIA regulations as they apply to educational requesters. As an educational requester, you will be charged 10 cents per page for duplication; the first 100 pages are free. We will construe the submission of your request as an agreement to pay up to $25.00. You will be contacted before any further fees are accrued.

You have the right to appeal the determination to deny your fee waiver request. Should you wish to do so, please send your appeal following the procedures outlined in the DHS regulations at 6 Code of Federal Regulations § 5.9 and a copy of this letter to:

U.S. Immigration and Customs Enforcement
Office of Principal Legal Advisor
U.S. Department of Homeland Security
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009

Your appeal must be received within 60 days of the date of this letter. Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

ICE has queried the appropriate program offices within ICE for responsive records. If any responsive records are located, they will be reviewed for determination of releasability. Please be assured that one of the processors in our office will respond to your request as expeditiously as possible. We appreciate your patience as we proceed with your request.

Your request has been assigned reference number **2015-ICFO-02993.** Please refer to this identifier in any future correspondence. You may contact this office at (866) 633-1182.

Regards,

ICE FOIA Office
Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
Telephone: 1-866-633-1182
Visit our FOIA website at www.ice.gov/foia

# Exhibit 20

*Freedom of Information Act Office*

**U.S. Department of Homeland Security**
500 12[th] St SW, Stop 5009
Washington, DC 20536

U.S. Immigration
and Customs
Enforcement

April 9, 2015

Katherine Evans
University of Minnesota Law School
Center for New Americans - 190 W.F. Mondale Hall
229 19th Avenue South
Minneapolis, MN 55455

**RE: ICE FOIA Case Number 2015-ICFO-02993**

Dear Ms. Evans:

This letter is the final response to your Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), dated October 15, 2014. You have requested copies of Risk Classification Assessment (RCA) detailed summaries produced by the ICE St. Paul Field Office's area of responsibility since the RCA tool was implemented in the jurisdiction.

ICE has considered your request under the FOIA, 5 U.S.C. § 552.

A search of the ICE office of Enforcement and Removal Operations (ERO) for records responsive to your request produced 1 Microsoft Excel spreadsheet that is responsive to your request. After review of this document, I have determined that portions of the spreadsheet will be withheld pursuant to Exemptions of the FOIA as described below.

ICE has applied FOIA Exemptions to protect from disclosure:

**FOIA Exemption 3** protects information specifically exempted from disclosure by another statute, if the statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) established particular criteria for withholding or refers to particular types of matters to be withheld.

In this case, Exemption 3 is asserted on behalf of the Child Victims' and Child Witnesses' Rights. Section 3509 of Title 18, United States Code, prohibits the release or disclosure of the name or any other information concerning a child, in connection with a criminal proceeding, who is a victim of a crime of physical abuse, sexual abuse, or exploitation, or who is a witness to a crime committed against another person.

ICE has applied FOIA Exemptions 6 and 7(C) to protect from disclosure the names, e-mail addresses, and phone numbers of DHS employees, along with personally identifiable information pertaining to third party individuals, contained within the documents.

**FOIA Exemption 6** exempts from disclosure personnel or medical files and similar files the release of which would cause a clearly unwarranted invasion of personal privacy. This requires a balancing of the public's right to disclosure against the individual's right to privacy. The privacy interests of the individuals in the records you have requested outweigh any minimal public interest in disclosure of the information. Any private interest you may have in that information does not factor into the aforementioned balancing test.

**FOIA Exemption 7(C)** protects records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy. This exemption takes particular note of the strong interests of individuals, whether they are suspects, witnesses, or investigators, in not being unwarrantably associated with alleged criminal activity. That interest extends to persons who are not only the subjects of the investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation. Based upon the traditional recognition of strong privacy interest in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate. As such, ICE has determined that the privacy interest in the identities of individuals in the records you have requested clearly outweigh any minimal public interest in disclosure of the information. Please note that any private interest you may have in that information does not factor into this determination.

ICE has applied FOIA Exemption 7(E) to protect from disclosure internal agency case numbers contained within the document.

**FOIA Exemption 7(E)** protects records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. ICE has determined that disclosure of certain law enforcement sensitive information contained within the responsive records could reasonably be expected to risk circumvention of the law. Additionally, the techniques and procedures at issue are not well known to the public.

You have the right to appeal ICE's determination and should you wish to do so, please send your appeal following the procedures outlined in the DHS regulations at 6 Code of Federal Regulations § 5.9 and a copy of this letter to:

U.S. Immigration and Customs Enforcement
Office of Principal Legal Advisor
U.S. Department of Homeland Security
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009

Your appeal must be received within 60 days of the date of this letter. Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

The Office of Government Information Services (OGIS) also mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you wish to contact OGIS, you may email them at ogis@nara.gov or call 1-877-684-6448.

Provisions of the FOIA and Privacy Act allow us to recover part of the cost of complying with your request. In this instance, because the cost is below the $14 minimum, there is no charge.[1]

If you need to contact the FOIA office about this matter, please call (866) 633-1182 and refer to FOIA case number **2015-ICFO-02993**.

Sincerely,

Bradley E. White for

Catrina M. Pavlik-Keenan
FOIA Officer

Enclosure: One Excel Spreadsheet

[1] 6 CFR § 5.11(d)(4).

# Exhibit 21

Associate General Counsel (General Law)
Department of Homeland Security
245 Murray Lane SW
Washington, D.C. 20528
*Via Federal Express Overnight*

U.S. Immigration and Customs Enforcement
Office of Principal Legal Advisor
U.S. Department of Homeland Security
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
*Via Federal Express Overnight*

Associate General Counsel (General Law)
Department of Homeland Security
Washington, D.C. 20528
*Via U.S. Postal Service Overnight*

Re: Freedom of Information Act Appeal
Request No. 2015-ICFO-02993 made by Professor Benjamin Casper (University of Minnesota Law School), Teaching Fellow Katherine Evans (University of Minnesota Law School), and Professor Robert Koulish (University of Maryland) on October 15, 2014
Appeal of Denial of Fee Waiver (dated October 21, 2014)

To whom it may concern:

This is an appeal under the Freedom of Information Act, pursuant to 5 U.S.C. § 552 and 6 C.F.R. § 5.9. Requesters write to appeal the denial of Requesters' fee waiver request by the Immigration and Customs Enforcement Freedom of Information Act Office on October 21, 2014.

On October 15, 2014, Requesters Professor Benjamin Casper (University of Minnesota Law School), Teaching Fellow Katherine Evans (University of Minnesota Law School), and Professor Robert Koulish (University of Maryland) (together, "Requesters") submitted a FOIA request (Freedom of Information Act Case No. 2015-ICFO-02993).

Specifically, Requesters sought copies of Risk Classification Assessment ("RCA") Detailed Summaries produced by the St. Paul Field Office Area of Responsibility, and RCA Detailed Summaries performed for individuals in ICE custody within the St. Paul Field Office Area of Responsibility. *See* Exhibit A (FOIA Request).

On October 21, 2014, the ICE FOIA Office issued an email denying Requesters' request for waiver of fees associated with the FOIA request. Although the ICE FOIA Office determined that Requesters were "educational requesters" under the Freedom of Information Act ("FOIA") and relevant DHS regulations, the ICE FOIA Office denied Requesters' fee waiver request, stating that the fee waiver "request did not satisfy factors 4, 5, and 6" of the DHS fee waiver regulation (6 C.F.R. § 5.11(k)). *See* Exhibit B (denial of fee waiver request).

Requesters hereby appeal this denial of their fee waiver request. A waiver of all fees is warranted because "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government

and is not primarily in the commercial interest of the requester."[1] When the documents are "not sought for commercial use" and the "request is made by an educational or noncommercial scientific institution, whose purpose is scholarly or scientific research," "[d]ocuments shall be furnished without any charge or at a charge reduced below the [standard charges] if disclosure of the information is in the public interest."[2] As the Court of Appeals for the District of Columbia has noted, "Congress amended FOIA to ensure that it be 'liberally construed in favor of [fee] waivers for noncommercial requesters.'"[3] As described below, Requesters assert and believe that they are entitled to a waiver of fees, because disclosure of the documents is in the public interest, and Requesters do not have a commercial interest in the disclosure.[4] The ICE FOIA Office recently granted Requesters' fee waiver request for a FOIA request related to a different component of the RCA. *See* Exhibit C (FOIA Request Case No. 2015-ICO-08279) & Exhibit D (conditional grant of fee waiver request).

## I. A Fee Waiver Should Be Granted Pursuant to DHS FOIA Regulations.

In their October 15, 2014 FOIA request, Requesters sought a waiver of all fees associated with the request. Although a requester must describe the basis for a fee waiver request with "reasonable specificity," Congress intended that FOIA be "liberally construed in favor of [fee] waivers for noncommercial requesters."[5] As described below, Requesters have explained the basis for their fee waiver request with reasonable specificity, and the request should be granted.

According to DHS regulations, a fee waiver must be granted if two criteria are met:

a) Disclosure of the requested information is in the public interest because it is likely to contribute significantly to the public understanding of the operations or activities of the government; and
b) Disclosure of the information is not primarily in the commercial interest of the requester.[6]

The DHS regulation provides a number of "factors" that must be considered by the agency when determining whether the two-prong test is met.[7] In its October 21, 2014 letter, the ICE FOIA Office denied Requesters' request for a fee waiver, stating that the fee waiver "request did not satisfy factors 4, 5, and 6" of the DHS FOIA Regulations § 5.11(k)(2). Because Requesters satisfy these factors, the fee waiver request should be granted.

### A. The Public Interest Demands Disclosure of the Information (6 C.F.R. § 5.11(k)(1)(i)).

Requesters satisfy the first criterion of the fee waiver test, because disclosure of information about the RCA (a disclosed but never publicly-analyzed operations tool) is in the

[1] 5 U.S.C. § 552(a)(4)(A)(iii).
[2] 5 U.S.C. § 552(a)(4)(A)(ii) & (iii).
[3] *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (quoting *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987) & 132 CONG. REC. 27,190 (1986) (Sen. Leahy)).
[4] *Id.*; 6 C.F.R. § 5.11(k).
[5] *Judicial Watch*, 326 F.3d at 1312 (quoting *McClellan Ecological Seepage Situation*, 835 F.2d at 1284 (9th Cir. 1987) & 132 CONG. REC. 27,190 (1986) (Sen. Leahy)).
[6] 6 C.F.R. § 5.11(k)(1).
[7] 6 C.F.R. § 5.11(k)(2).

public interest as defined by 6 C.F.R. § 5.11(k)(2). Disclosure of this requested information is in the "public interest" because it is "likely to contribute significantly to public understanding of government operations or activities." The national public interest is particularly great as Congress debates immigration law reform and President Obama implements his new enforcement priorities and detention policies, which provide that "DHS detention resources should be used to support the [new] enforcement priorities" or "for aliens subject to mandatory detention by law."[8] But, a recent U.S. Government Accountability Office (GAO) report stated that RCA recommended detention 91 percent of the time in FY 2013,[9] calling into question whether Obama's direction will be realized. The RCA tool itself also appears to play a role in determining mandatory detention, which GAO reported constituted 77 percent to 80 percent of aliens in detention facilities from FY 2011 to FY 2013.[10]

The current absence of understanding about the RCA, and the wealth of potential information through Requesters' analysis and publication of the request, will significantly contribute to the public's understanding. Moreover, Requesters have the knowledge, experience, and resources to digest, analyze and make this information available to the public.

**1. The Request Specifically Concerns Identifiable "Operations or Activities of the Government," Because It Relates to ICE's Use of the RCA Tool When Making Detention Determinations (Factor 1).**

The October 21, 2014 denial does not dispute that the request satisfies factor one: the subject of the requested records specifically concern identifiable operations or activities of the government.[11] The requested records "specifically concern identifiable 'operations or activities of the government,'" namely ICE's use of the RCA.[12] There is a direct and clear connection with the federal government because it is an operation conducted within the sole purview of the Department of Homeland Security, its agents, or its contractors.

On March 19, 2013, ICE Director John Morton confirmed to Congress that ICE had completed a nationwide deployment of its new automated "Risk Classification Assessment" tool. As Director Morton stated, this RCA contains objective criteria to guide decision making regarding whether a noncitizen should be detained or released, and if detained, the noncitizen's appropriate custody classification level.[13] RCA "also requires ICE officers to determine whether there is any special vulnerability that may impact custody and classification determinations."[14] In an April 6, 2012 Privacy Impact Assessment (PIA)

[8] U.S. DHS Secretary Jeh Charles Johnson, *Policies for the Apprehension, Detention and Removal of Undocumented Immigrants* 5 (Nov. 20, 2014) [hereinafter 2014 Johnson Priorities Memo], available at http://www.dhs.gov/sites/default/files/publications/14_1120_memo_prosecutorial_discretion.pdf.

[9] U.S. Government Accountability Office, *ALTERNATIVES TO DETENTION: Improved Data Collection and Analyses Needed to Better Assess Program Effectiveness* 27 (November 2014) at http://www.gao.gov/products/GAO-15-26.

[10] Id. at 28.

[11] 6 C.F.R. § 5.11(k)(2)(i).

[12] *Id.*

[13] *Written testimony of U.S. Immigration and Customs Enforcement Director John Morton for a House Committee on the Judiciary hearing titled: "The release of criminal detainees by U.S. Immigration and Customs Enforcement: Policy or Politics? "* (March 19, 2013), *available at* http://judiciary.house.gov/_files/hearings/printers/113th/113-5_80066.PDF (at p. 13).

[14] *Id.*

Update, DHS described ICE's new risk assessment tool.[15] ICE's electronic databases, based on risk assessment, now produce (1) an automated custody recommendation (i.e. detention or release), (2) an automated bond amount recommendation, (3) an automated custody classification (e.g. low-, low/medium-, medium/high-, or high-security), if the alien will be detained, and (4) an automated recommendation for technology supervision, if the alien will be released under supervision.[16] The PIA stated that "[u]sing the existing policies and guidance, ICE is automating the assessment process."[17] "When developing RCA, ICE created a methodology which incorporates the current ICE policies and guidance on detention decisions into a set of business rules."[18] Thus, "[i]nformation about the alien stored in EID will now be processed electronically through these business rules and a detention or release recommendation generated."[19]

Upon information and belief, the Risk Classification Assessment also evaluates whether an individual is subject to mandatory detention, *i.e.* 8 U.S.C. § 1226(c), based on the Immigration and Nationality Act statutes, and allegations entered into the Enforcement Apprehension and Booking Module (EABM) and ENFORCE Alien Removal Module (EARM). Also upon information and belief, RCA evaluates this using an automated "Subject to Mandatory Detention" Tool. Supporting this, the PIA stated that the RCA Detailed Summary contains information relating to "mandatory detention factors."

The development, implementation and use of the RCA are without question an "operation or activity" of the government, and Requesters satisfy the first factor of the fee waiver analysis.

**2. The Request Is Likely to Contribute to an Increased Understanding of the Issue Because the Requested Material is Central to Understanding the Validity and Application of the RCA Tool (Factor 2).**

Second, disclosure of documents is "likely to contribute" to an increased understanding because they are "meaningfully informative about government operations or activities" and are not already in the public domain.[20] In its October 21, 2014 denial, the ICE FOIA Office did not dispute that this factor was met.

Specifically, Requesters sought copies of RCA Detailed Summaries produced by the St. Paul Field Office Area of Responsibility, and RCA Detailed Summaries performed for individuals in ICE custody within the St. Paul Field Office Area of Responsibility. *See* Exhibit A (FOIA Request). This request seeks the actual risk assessment reports generated for this program, which are critical to any methodological or statistical assessment of risk analysis. These actual "RCA Detailed Summaries" will provide

[15] Department of Homeland Security, Privacy Impact Assessment Update for the Enforcement Integrated Database (EID) Risk Classification Assessment (RCA 1.0), ENFORCE Alien Removal Module (EARM 5.0), and Crime Entry Screen (CES 2.0), DHS/ICE/PIA-015(d) (Apr. 6, 2012), *available at* http://www.dhs.gov/xlibrary/assets/privacy/privacy_piaupdate_EID_april2012.pdf.
[16] *Id.* at 10.
[17] *Id.* at 4. The PIA later stated as a "benefit" to ICE that it "automates a process that is currently manually performed by ERO officers and contractors." *Id.* at 5.
[18] *Id.* at 4.
[19] *Id.* at 5.
[20] 6 C.F.R. § 5.11(k)(2)(ii).

critical information about the operation and application of the RCA that cannot be gleaned from training, summary or protocol documents. The "RCA Detailed Summaries" will allow an analysis of how the tool is applied to cases and its treatment of traditionally discretionary factors that were previously considered only by human officers. The St. Paul specific materials will also provide information on different DHS offices apply and use the RCA tool in different manners. As described in more detail in Section I.A.4 below, the requested RCA information is not already available to the public, and thus adds to the public's substantive and procedural understanding of this government operation. Disclosure of the information would allow Requesters to test the Government's assertions about the efficacy and accuracy of the RCA, one of the core objectives of FOIA.

**3. The Request Will Contribute to Public Understanding of the Subject Because Requesters Plan to Disseminate Their Analysis of the Requested Information Through Publication in Scholarly Journals, Teaching, and Presentations at National Seminars and Conferences (Factor 3).**

Third, the disclosure contributes to "public understanding," as opposed to the individual understanding of the Requester or a narrow segment of interested persons. To satisfy this factor, disclosure must "contribute to the understanding of *a reasonably broad audience* of persons interested in the subject," and "[a] requester's expertise in the subject area and ability and intention to effectively convey information to the public shall be considered."[21] Requesters satisfy this factor, because ICE's use of the RCA is of interest to a large population, and the Requesters will use their ample expertise and resources to analyze the information and further this broad and ongoing public discussion that is already taking place all over the country. Indeed, the ICE FOIA Office did not dispute that the request satisfies this factor.

*A Broad Audience Is Interested in the Subject Matter of the Request*

The operation and validity of the RCA have nationwide impact, not just an impact on a small group of people. The public faces the risks and the costs of both over- and under-detention, two evils the RCA is designed to avoid. Whether the RCA is achieving those goals is a matter of concern to the general public. Over-detention would impose a huge financial cost on taxpayers, while under-detention may expose the public to the risk of violence or criminal activity. Risk assessment was envisioned as part of a larger administrative strategy to reform the United States' sprawling immigration detention system, which in FY 2012 detained over 429,000 noncitizens per year and 34,000 at any one time— at a cost of nearly $2 billion. But, a recent U.S. Government Accountability Office (GAO) report stated that RCA recommended detention 91 percent of the time in FY 2013,[22] calling into question whether the RCA will be effective to appropriately balance competing concerns relating to detention.

---

[21] 6 C.F.R. § 5.11(k)(2)(iii).
[22] U.S. Government Accountability Office, *ALTERNATIVES TO DETENTION: Improved Data Collection and Analyses Needed to Better Assess Program Effectiveness* 27 (November 2014) at http://www.gao.gov/products/GAO-15-26.

The risk immigration detainees pose – or do not pose – to public safety or to flight from proceedings has been foremost in the debate. In response to ICE's release of over 2,000 noncitizens from detention in advance of "sequestration" budget cuts some congressional members accused ICE of endangering public safety and characterized the released detainees as "dangerous" and "criminals."[23] Conversely, the White House referred to the detainees as "low-risk, noncriminal detainees,"[24] and ICE Director Morton "disputed accusations" that releases "included many dangerous criminals."[25] Indeed, if these detainees are low-risk, public advocacy groups and commentators questioned whether detainees had "no business in detention in the first place."[26] Senators have echoed those concerns, arguing that "[t]housands of people . . . are unnecessarily detained at great expense to taxpayers even though they pose no threat to public safety."[27] Recent Congressional hearings have also questioned whether ICE's releases of immigration detainees pose a risk to public safety. In response, ICE Director Morton has testified twice regarding ICE's introduction of its new RCA tool. Information on the validity and implementation of risk assessment practices would be of great relevance to the current debate regarding immigration detention reform.[28] Advocacy organizations have urged Congress to require the use of risk assessment,[29] and media outlets have reported on the fact that ICE is using risk assessment, but no party has analyzed the efficacy and scope of use of the RCA.[30] Disclosure of the requested information would substantially further the public understanding and discussion of this topic.

---

[23] *See generally* Patrik Jonsson, *Republicans call foul on release of immigrant detainees* (Mar. 2, 2013), *available at* http://www.csmonitor.com/USA/Politics/2013/0228/Republicans-call-foul-on-release-of-immigrant-detainees-video. *See* "Grassley, Goodlatte Press Napolitano for Answers on Release of Illegal Immigrants from Detention Facilities" (Feb. 28, 2013), *available at* http://www.grassley.senate.gov/news/news-releases/grassley-goodlatte-press-napolitano-answers-release-illegal-immigrants-detention (calling noncitizens "dangerous" and the release an "abrogation of [DHS'] mission to ensure the safety and security of Americans"). Rep. Goodlatte also stated, "By releasing criminal immigrants onto the streets, the Administration is needlessly endangering American lives." *DHS Releases Hundreds of Illegal Immigrants From Immigration Jails Ahead of Sequester,* Washington Post (Feb. 26, 2013).

[24] *See* Caldwell, *AP Exclusive: DHS released over 2,000 immigrants,* Associated Press, (March 1, 2013) (quoting White House spokesman Jay Carney). ICE spokeswoman Gillian Christensen reiterated that the agency's "priority for detention remains on serious criminal offenders and other individuals who pose a significant threat to public safety." *DHS Releases Hundreds of Illegal Immigrants from Immigration Jails Ahead of Sequester,* Washington Post (Feb. 26, 2013).

[25] Julia Preston, *Administration Official Defends Release of Detainees,* N.Y. Times (Mar. 19, 2013), *available at* http://www.nytimes.com/2013/03/20/us/immigration-official-defends-release-of-detainees.html.

[26] Ruthie Epstein, Human Rights First, *Detention centers releases may have silver lining,* The Hill (Feb. 28, 2013), *available at* http://thehill.com/blogs/congress-blog/homeland-security/285515-detention-centers-releases-may-have-silver-lining.

[27] *See In immigration debate, Senator Coons seeks due process and human rights guarantees* (Feb. 5, 2013) (letter from Sens. Coons, Leahy, Hirono, and Blumenthal), *available at* http://www.coons.senate.gov/newsroom/releases/release/in-immigration-debate-senator-coons-seeks-due-process-and-human-rights-guarantees.

[28] Robert Koulish and Mark Noferi, *Unlocking Immigrant Detention Reform,* Baltimore Sun (Feb. 20, 2013), available http://articles.baltimoresun.com/2013-02-20/news/bs-ed-immigrant-detention-20130220_1_mandatory-detention-immigration-detention-detention-costs.

[29] *See, e.g.,* Human Rights First, *Congress Urged To Reform Detention System in Immigration Legislation* (Mar. 14, 2013), *available at* http://www.humanrightsfirst.org/press-release/congress-urged-reform-detention-system-immigration-legislation.

[30] Jude Joffe-Block, *ICE Using New Tool For Detention Decisions,* Fronteras (Mar. 7, 2013), *available at* http://www.fronterasdesk.org/content/ice-using-new-tool-detention-decisions.

Detention of noncitizens has a far-reaching effect on the general public in other ways as well. For example, family members of noncitizens are dramatically affected by losing the family support (and/or income) of their detained family member. Detention of noncitizens has a direct impact on state government legal processes, such as family court, business licensing, criminal court and other judicial proceedings in which the noncitizen is a party or witness. These areas are affected by the way in which the RCA tool functions with respect to discretionary factors such as criminal arrests (not convictions), family ties and employment history. Unnecessary over-detention – or inaccurate risk assessment – may unnecessarily delay or complicate state judicial proceedings.

*Requesters Have the Expertise, Ability and Intention to Effectively Convey the Information to This Broad Audience (and the General Public)*

The Requesters are well-suited to analyze the information from the request and distill it for public consumption to further this public dialog. Requesters are immigration attorneys and academics who have a history and an expertise in researching and writing scholarship related to immigrants facing deportation. All three Requesters have advanced academic training that will allow them to appropriately assess and analyze the requested information: Requester Koulish received a Ph.D. in Political Science, and Requesters Casper and Evans received J.D. degrees for the study of law.[31] Requesters have published numerous book chapters, scholarly articles and articles in legal journals.[32] Requesters have also taught on the topics of immigration law and policy in different contexts, including undergraduate classes, law school classes, law school legal clinics, symposia, conferences and continuing legal education classes.[33]

Their collective experience as practitioners and scholars provides the requisite expertise in immigration removal defense and detention to easily reach a wide audience. For example, Requester Professor Koulish has published articles on immigration reform in general circulation newspapers such as the Baltimore Sun, reaching a population of approximately 180,000 people.[34] Requester Professor Koulish has a forthcoming scholarly article on the RCA tool (and lack of information thereof) that will be published by the Georgetown Immigration Law Journal in 2015.[35] Requesters have published numerous national works on immigration law and policy, including books, legal articles, op-eds and newspaper articles.[36]

[31] *See* http://www.capc.umd.edu/staff/koulish.asp (Robert Koulish biography); http://www.law.umn.edu/facultyprofiles/casperb.html (Benjamin Casper biography); http://www.law.umn.edu/newamericans/people/evanse.html (Katherine Evans biography).
[32] *Id.*
[33] *Id.*
[34] Robert Koulish and Mark Noferi, *Unlocking Immigrant Detention Reform,* Baltimore Sun (Feb. 20, 2013), available http://articles.baltimoresun.com/2013-02-20/news/bs-ed-immigrant-detention-20130220_1_mandatory-detention-immigration-detention-detention-costs; Alliance for an Audited Media, *Top 25 U.S. Newspapers for 2012*, available at http://auditedmedia.com/news/research-and-data/top-25-us-newspapers-for-march-2012/ (describing the Baltimore Sun's circulation as 179,574 as of 3/31/2012).
[35] Mark Noferi and Robert Koulish, *The Immigration Detention Risk Assessment*, 29 Geo. Imm. L.J. __ (forthcoming 2015).
[36] *See, e.g.*, Robert Koulish (co-ed.), Immigration, Risk, and Human Rights (forthcoming, Springer Press, 2015); Robert Koulish, "Entering the Risk Society: A Contested Terrain for Immigration Enforcement," *Social Control and Justice: Crimmigration in the Age of Fear*, Lemma/Eleven Publishing (2012); Robert Koulish, "Spiderman's Web and the Governmentality of Electronic Immigrant Detention," J. L. Culture & the Humanities (Feb. 13, 2012);

Requesters plan to present the requested information to a "reasonably broad audience of persons interested in the subject"[37] which will enhance public understanding. Requesters have presented at numerous national and international conferences, televised events, and other gatherings on issues of immigration law, detention and risk assessment.[38] Requesters plan to present the requested information in a similar way.

In addition, research results will be made available to the public at large through the Center for New Americans' public website and through publication of online articles, blog posts, and social media.[39] Even viewing only one of those outlets – the Center for New Americans webpage – shows that Requesters have the ability to reach a large audience. The Center for New Americans webpage has had nearly 7000 page view in the past year, with nearly 1000 of those views in the last 7 weeks.[40] Members of the Center for New Americans regularly give interviews and presentations on issues of immigration reform.[41]

Additionally, Instructors Casper, Evans, and Koulish plan to collaborate with other immigration scholars to distribute research results through publicly available academic articles, reports, and op-eds. Moreover, findings will be presented at conferences and symposia at the intersection of immigration law, human rights, and criminal law. Indeed, Requester Professor Koulish has submitted a proposal for a pane on immigration and criminal risk assessment at the upcoming Law and Society Association Annual Meeting in Seattle in May 2015.[42] The Requesters also plan to respond, free of charge, to inquiries from the press, scholars, public interest groups, and other members of the public as necessary. All these educational and public service activities will address critical gaps in public knowledge and will help individuals and organizations find necessary information concerning agency policies and practices.

---

Robert Koulish and Mark Noferi, *ICE Risk Assessments: From Mass Detention to Mass Supervision?*, crimmigration.com(May 16, 2013) (available at http://crimmigration.com/2013/05/16/ice-risk-assessments-from-mass-detention-to-mass-supervision/); Robert Koulish and Mark Noferi, *Boost Protections for Detained Immigrants*, Newark Star-Ledger (May 1, 2013) (op-ed) (available at http://blog.nj.com/njv_guest_blog/2013/05/boost_protections_for_detained.html).

[37] 6 C.F.R. § 5.11(k)(2)(iii).

[38] Robert Koulish, *CINETS First Crimmigration Control Conference*, Universidade de Coimbra, Portugal, Oct. 11-12, 2012 (available at http://www.crimmigrationcontrol.com/content/news/CINETS%20Final%20program.pdf); Robert Koulish, CINETS Conferenced in Leiden, Netherlands, Oct. 9-10, 2012 (available at http://www.crimmigrationcontrol.com/2nd_CINETS_Conference.php); Robert Casper, Law and Society Meetings in Minneapolis, May 2014; Robert Koulish, International Crimmigration Conference at University of Leiden, Netherlands, Oct. 2014; upcoming presentation ""Changes to Immigration Detention in the Risk Era," 50th Anniversary of the 1965 Immigration Act, Columbia University, New York, NY, March, 2015; co-professor of course on risk and immigration, University of Leiden, Netherland, starting June 2015.

[39] *See* http://www.law.umn.edu/newamericans/news.html.

[40] The Center for New Americans website had 6,958 page views from 12/16/2013 to 12/16/2014. Of those page views, 995 of them occurred between November 1, 2014 and December 16, 2014. *See also* "U Law School gets $9 million gift from Robina Foundation," *Star Tribune*, May 30, 2013 (available at http://www.startribune.com/local/minneapolis/209602771.html) (describing creation of Center for New Americans). The Minneapolis Star Tribune has been ranked one of the top 25 newspapers nationally, based on circulation. *See* Alliance for Audited Media, *Top 25 Newspapers for March 2013*, available at http://auditedmedia.com/news/research-and-data/top-25-us-newspapers-for-march-2013.aspx.

[41] http://www.law.umn.edu/newamericans/news.html.

[42] http://www.lawandsociety.org/aboutmeetings.html.

Requesters satisfy the third factor, because the information is of interest to a broad sector of the public, and Requesters have the knowledge, experience, and resources to analyze the requested information and publish materials that will further the public understanding of this relatively new, ill-understood, government activity.

**4. The Request Is Likely to Contribute "Significantly" to an Increased Understanding, Because There Is No Publicly-Available Methodological Analysis or Assessment of the RCA Tool (Factor 4).**

Concerning the fourth and final factor related to the public interest, the disclosure contributes "significantly" to public understanding and enhances the public's knowledge of these government operations or activities.[43] The ICE FOIA Office rejected the fee waiver request on the basis that this factor was not met. However, this request – when placed in context – clearly and unambiguously contributes significantly to the public understanding of an as-yet ill-understood government activity.

In considering this factor, it is necessary to compare "the level of public understanding existing prior to the disclosure" with the public knowledge after the disclosure.[44] Currently there is no public understanding about the RCA, and specifically about the aspect of the RCA that is the subject of this request. Requests that seek information about the scope and extent of a government program may increase public understanding and qualify for a fee waiver.[45] Accordingly, disclosure of the requested information would dramatically increase the public understanding of this government activity.

Specifically, Requesters sought copies of RCA Detailed Summaries produced by the St. Paul Field Office Area of Responsibility, and RCA Detailed Summaries performed for individuals in ICE custody within the St. Paul Field Office Area of Responsibility. *See* Exhibit A (FOIA Request). The requested RCA information is not already available to the public, and thus adds to the substantive and procedural understanding of the public. Although certain sample RCA Summaries have been made available pursuant to a FOIA request by another party, these few samples do not allow for rigorous methodological study of the accuracy and application of the RCA tool, as the requested information would allow. To date, there has been no scholarly or methodological analysis of the RCA or RCA Detailed Summaries.[46] There is a high likelihood of increased understanding because Requesters plan to publish an in-depth discussion of the RCA. As explained in the Section I.A.3, above, Requesters have the training, experience and resources to compile and analyze the RCA Detailed Summaries, and publish information related to the RCA.

---

[43] 6 C.F.R. § 5.11(k)(2)(iv).
[44] *Id.*
[45] *See, e.g., Forest Guardians v. U.S. Dep't of Interior*, 416 F.3d 1173, 1181 (10th Cir. 2005) (holding that FOIA request related to "scope" and "extent" of government program increased public knowledge and merited a fee waiver, even though the existence of the government program was already known).
[46] Alina Das, *Immigration Detention: Information Gaps and Institutional Barriers to Reform*, 80 U. Chi. L. Rev. 137, 162 (2013) ("Presumably, the agency [ICE] will be able to use the risk assessment tool to make better decisions about the flight risk and danger posed by a noncitizen pending removal proceedings... Without changes to mandatory detention rules, however, the agency will nonetheless be prevented from effectively utilizing this information to effectuate releases in a large subset of cases.")

Because the public has received little information about the RCA – aside from its mere existence – Requesters' planned publications and presentations will dramatically increase the public knowledge of government operations and activities.

**B. Requesters Have No Commercial Interest in the Requested Information (6 C.F.R. § 5.11(k)(1)(ii)).**

Requesters have no commercial interest in the requested information, and therefore the significant public interest clearly outweighs the non-existent commercial interest.

**1. The "Existence and Magnitude of a Commercial Interest" is Non-Existent Because Requesters Have No Commercial Interest in this Information (Factor 5).**

Requesters lack a commercial interest that would be furthered by the disclosure of the requested RCA information. Accordingly, the fourth factor favors a fee waiver, despite the ICE FOIA Office's October 21, 2014 determination that this factor was not met.

Requesters are professors and academics at public, not-for-profit higher educational institutions and have no commercial interest here. According to DHS regulations, an "[e]ducational institution means…an institution of undergraduate higher education, an institution of graduate higher education, [or] an institution of professional education…that operates a program of scholarly research." 6 C.F.R. § 5.11(b)(4). Requesters are experienced, qualified professors and researchers at qualifying education institutions. Therefore, Requesters are "educational requesters" under the provisions of FOIA and DHS regulations, and were properly so classified by the ICE FOIA Office in the October 21, 2014 letter. *See* Exhibit B (fee waiver denial). Despite acknowledging Requesters' educational requester status, the ICE FOIA Office determined that factor four – the existence and magnitude of commercial interest – had not been met. Requesters now clarify and explicitly state that their only intended use for the requested information is for scholarly publication (including articles, books, op-eds, and so on), presentations (such as conferences and symposia) and other public commentary and discussion. Requesters reserve the right to use the information in litigation if necessary, but in no event will Requesters sell, offer for sale or otherwise charge for access to the requested information.

Requesters Professor Benjamin Casper and Teaching Fellow Katherine Evans teach the Federal Immigration Litigation Clinic at the University of Minnesota Law School, a 501(c)(3) educational institution.[47] The University of Minnesota Law School is a recognized, accredited graduate higher education and/or professional education institution that offers students the ability to obtain several different graduate degrees, including a J.D. (juris doctor), LL.M. (Master of Laws), joint degree (J.D. and degree in other university graduate program), or Master of Science in Patent Law.[48] The University of Minnesota Law School is one of the graduate schools in the larger University of Minnesota, and is a state-funded accredited university that offers post-

---

[47] *See* http://www.law.umn.edu/facultyprofiles/casperb.html (Benjamin Casper biography); http://www.law.umn.edu/newamericans/people/evanse.html (Katherine Evans biography).
[48] *See* University of Minnesota Law School, Legal Education Programs, available at http://www.law.umn.edu/legaledprograms/index.html.

secondary degrees, including undergraduate degrees, graduate degrees, and professional degrees.[49]

Requester Professor Robert Koulish teaches classes on political science, immigration, and immigration law, and conducts active scholarly research at the University of Maryland, a 501(c)(3) educational institution, through its Center for American Politics and Citizenship and Francis King Carey School of Law.[50] The University of Maryland is a state-funded accredited university that offers post-secondary degrees, including undergraduate degrees, graduate degrees, and professional degrees.[51] The University of Maryland Law School is a recognized graduate higher education and/or professional education institution that offers students the ability to obtain several different graduate degrees, including a J.D. (juris doctor), LL.M. (Master of Laws), or Master of Science in Law.[52]

As part of their employment at the University of Minnesota Law School and the University of Maryland, respectively, Respecters perform research, writing, teaching and presentations on issues of public concern, such as the ICE RCA. For example, Requester Professor Casper has presented numerous continuing legal education programs relating to immigration law and policy, and has published articles relating to immigration law in legal journals.[53] Requester Instructor Evans has also published articles on immigration law in legal and scholarly journals.[54] Requester Professor Koulish has authored several book chapters, law reviews and peer-reviewed articles on human rights, immigration enforcement and political asylum.[55]

Requesters plan to use the requested information for future scholarly research and to publicize it through media including but not limited to academic articles in law reviews and humanities publications, reports, books, op-eds, presentations at conferences, and other public materials, made available through academic websites, press releases, and other publicly available mediums. As noted by the Court of Appeals for the District of Columbia, any "quasi-commercial nature" of academic research is "irrelevant for the purposes of calculating an appropriate fee waiver."[56] Accordingly, a mere interest in publication is not a "commercial purpose" within the meaning of FOIA and DHS regulations.

Requesters are authorized to request this information, perform research and analysis, and publish and/or verbally present on topics such as ICE enforcement and the RCA as part of their job duties for their respective educational institutions. Requesters are members of the University of Minnesota Law School's Center for New Americans and the University of Maryland's Center for American Politics and Citizenship, and accordingly the subject of this request is central to their employment and work at their respective institutions. Moreover, these institutions host various conferences, at which Requesters are expected to present new research and material in their subject areas of immigration law and reform. For example, the

[49] *See* University of Minnesota website, http://www.academic.umn.edu/provost/reviews/accreditation.html.
[50] *See* http://www.capc.umd.edu/staff/koulish.asp (Robert Koulish biography).
[51] *See* University of Maryland website, http://www.umd.edu/.
[52] *See* University of Maryland Law School website, http://www.law.umaryland.edu/academics/.
[53] *See* http://www.law.umn.edu/facultyprofiles/casperb.html (Benjamin Casper biography).
[54] *See* http://www.law.umn.edu/newamericans/people/evanse.html (Katherine Evans biography).
[55] *See* http://www.capc.umd.edu/staff/koulish.asp (Robert Koulish biography).
[56] *Campbell v. US. Dep 't of Justice,* 164 F.3d 20, 36 (D.C. Cir. 1998).

University of Maryland will be hosting a conference for CRImmigration (a group that bills itself as "the intersection of criminal law and immigration law") in 2016. Detention of noncitizens based on perceived risk of criminal violations is closely tied to the subject matter of this conference. Because the subject matter closely relates to the key roles served by Requesters at their respective institutions, and because the requested data will further new understanding the field of immigration law and public policy, these requests are authorized and, indeed at the core of, the respective educational institutions' goals.

Requesters hereby certify that they will not sell, offer for sale or charge for access, or otherwise use the requested information for commercial purposes, as defined by FOIA and the DHS regulations. Requesters are not acting on any person or organization's behalf who may have a commercial interest that would be furthered by the requested disclosure.

### 2. The Primary Interest in Disclosure is the Public Interest, Not Any Commercial Interest (Factor 6).

The final factor requires the agency to balance the Requesters' commercial interest against the public interest in disclosure. According to the DHS regulation, a "fee waiver or reduction is justified where the public interest is greater in magnitude than that of any identified commercial interest in disclosure."[57] The ICE FOIA Office determined that this factor was not met. As described above, Requesters' interest in obtaining and releasing the documents is purely non-commercial: it is academic, intellectual and in the spirit of the public interest and public discourse. Since there is no commercial interest, the scales tip in favor of the public interest in disclosure.

To the extent there is any tangential, quasi-commercial quality to the request, related to Requesters' publication or presentation of analysis based on the requested material, this interest is overwhelmingly outweighed by the public interest in the information. As described in detail in Section I above, the public has a strong interest in RCA, how it works, how it is implemented, and the appropriate level of detention of noncitizens. The United States' immigration system detains over 429,000 noncitizens per year, at a cost of nearly $2 billion. Over-detention results in excessive and unnecessary taxpayer expense; under-detention may pose a safety risk. Because public safety, taxpayer money, and national policy are at stake, informing the public about RCA is in the public interest. Appropriate immigration policy and noncitizen detention has been at the forefront of congressional and media discussions, yet there is no systematic or detailed analysis of the existing risk assessment tools, or the development, implementation and application of those tools. Requesters' academic contributions would dramatically increase the public understanding of this government activity. Therefore, the public interest overwhelmingly outweighs any tangential, speculative quasi-commercial interest in publication.

## II. Conclusion

For the reasons described above, Requesters respectfully appeal the ICE FOIA Office's denial of their fee waiver request. Disclosure of the information serves the public interest because there has been no detailed or systematic study of RCA, and Requesters are fully capable of digesting, analyzing and disseminating analysis to further the public understanding of this

---

[57] 6 C.F.R. § 5.11(k)(3)(ii).

government activity. Requesters have no commercial interest in the requested information, and to the extent any tangential interest in publication is considered, it is overwhelmingly outweighed by the strong public interest in disclosure. Accordingly, Requesters are entitled to a fee waiver under 6 C.F.R. § 5.11(k), and all fees should be waived.

The Requesters certify that the above information is true and correct to the best of the Requesters' knowledge.

Sincerely,

Katherine Evans
Teaching Fellow, University of Minnesota Law School

Benjamin Casper
Visiting Associate Professor, University of Minnesota Law School

Robert Koulish
Professor, University of Maryland

USPS.COM

# USPS Tracking™

Customer Service ›
Have questions? We're here to help.

Tracking Number: EM392769121US

Updated Delivery Day: **Saturday, December 20, 2014**
Scheduled Delivery Day: Friday, December 19, 2014, 12:00 pm
**Money Back Guarantee**
Signed for By: K LUSBY // WASHINGTON, DC 20528 // 11:50 am

## Product & Tracking Information

**Postal Product:**
Priority Mail Express 1-Day™

**Features:**
PO to Addressee
Up to $100 insurance included
Restrictions Apply

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| December 19, 2014 , 11:50 am | Delivered | WASHINGTON, DC 20528 |
| Your item was delivered at 11:50 am on December 19, 2014 in WASHINGTON, DC 20528 to HOMELAND SEC 20528. The item was signed for by K LUSBY. | | |
| December 19, 2014 , 10:37 am | Arrived at Post Office | WASHINGTON, DC 20018 |
| December 19, 2014 , 9:29 am | Arrived at USPS Facility | WASHINGTON, DC 20074 |
| December 18, 2014 , 7:04 pm | Departed USPS Facility | MINNEAPOLIS, MN 55401 |
| December 18, 2014 , 6:18 pm | Arrived at USPS Origin Facility | SAINT PAUL, MN 55111 |
| December 18, 2014 , 5:02 pm | Arrived at USPS Origin Facility | MINNEAPOLIS, MN 55401 |
| December 18, 2014 , 5:02 pm | Departed Post Office | MINNEAPOLIS, MN 55415 |
| December 18, 2014 , 3:53 pm | Acceptance | MINNEAPOLIS, MN 55415 |

## Available Actions

Proof of Delivery

Text Updates

Email Updates

## Track Another Package

**Tracking (or receipt) number**

Track It

VICE®

Freedom of Information Act Appeal

2-POUND PA

RESSEE

EM 392769121 US

Mailing Label
Label 11-F, April 2004

EXPRESS MAIL
UNITED STATES POSTAL SERVICE®

Post Office To Addressee

| ORIGIN (POSTAL SERVICE USE ONLY) | | |
|---|---|---|
| PO ZIP Code | Day of Delivery ☐ Next ☐ 2nd ☐ 2nd Del. Day | Postage $ |
| Date Accepted Mo. Day Year | Scheduled Date of Delivery Month Day | Return Receipt Fee $ |
| Time Accepted ☐ AM ☐ PM | Scheduled Time of Delivery ☐ Noon ☐ 3 PM | COD Fee $ / Insurance Fee $ |
| Flat Rate ☐ or Weight lbs. ozs. | Military ☐ 2nd Day ☐ 3rd Day | Total Postage & Fees $ |
| | Int'l Alpha Country Code | Acceptance Emp. Initials |

| DELIVERY (POSTAL USE ONLY) | | |
|---|---|---|
| Delivery Attempt Mo. Day | Time ☐ AM ☐ PM | Employee Signature |
| Delivery Attempt Mo. Day | Time ☐ AM ☐ PM | Employee Signature |
| Delivery Date Mo. Day | Time ☐ AM ☐ PM | Employee Signature |

CUSTOMER USE ONLY
METHOD OF PAYMENT:
Express Mail Corporate Acct. No. X554845
Federal Agency Acct. No. or Postal Service Acct. No.

FROM: (PLEASE PRINT) PHONE 612 340 2600

SLB
DORSEY & WHITNEY LAW FIRM
50 S 6TH ST STE 1500
MINNEAPOLIS MN 55402-1553

TO: (PLEASE PRINT) PHONE 202 254-4001

Associate General Counsel
(General Law)
Department of Homeland Security
Washington, D.C. 20528

PRESS HARD. YOU ARE MAKING 3 COPIES.

FOR PICKUP OR TRACKING: Visit WWW.USPS.COM or Call 1-800-222-1811

**Bianchi-Rossi, Deanna**

**From:** trackingupdates@fedex.com
**Sent:** Friday, December 19, 2014 9:56 AM
**To:** Bianchi-Rossi, Deanna
**Subject:** FedEx Shipment 772306151811 Delivered

---

This tracking update has been requested by:

Company Name: Dorsey & Whitney LLP
Name: Shannon Bjorklund
E-mail: bjorklund.shannon@dorsey.com

Message: PSShip eMail Notification

---

Our records indicate that the following shipment has been delivered:

Reference: 02016-484879.00999
Ship (P/U) date: Dec 18, 2014
Delivery date: Dec 19, 2014 10:22 AM
Sign for by: R.GILL
Delivery location: Washington, DC
Delivered to: Shipping/Receiving
Service type: FedEx Priority Overnight
Packaging type: FedEx Pak
Number of pieces: 1
Weight: 2.00 lb.
Special handling/Services: Deliver Weekday

Tracking number: 772306151811

| Shipper Information | Recipient Information |
|---|---|
| Shannon Bjorklund | Associate General Counsel |
| Dorsey & Whitney LLP | (General Law) |
| 50 S Sixth Street | 245 Murray Lane S.W. |
| Suite 1500 | Department of Homeland Security |
| Minneapolis | Washington |
| MN | DC |
| US | US |
| 55402 | 20528 |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 9:55 AM CST on 12/19/2014.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the status of this shipment online, please use the following:
https://www.fedex.com/insight/findit/nrp.jsp?tracknumbers=772306151811&language=en&opco=FX&clientype=ivpodalrt

This tracking update has been sent to you by FedEx on the behalf of the Requestor noted above. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

psship FedEx®

*package id*
0099123
*ship date*
Thu, Dec 18 2014
*to*
Associate General Counsel

(General Law)
Department of Homeland Security
245 Murray Lane S.W.
Washington , DC 20528
United States
(202) 254-4001
*residential address*
No
*return label*
No
*notification type*
Delivery
*notification recipients*
bjorklund.shannon@do...
rossi.deanna@dorsey.com

*from*
Shannon Bjorklund (02016)
Dorsey & Whitney LLP
50 S Sixth Street
Suite 1500
Minneapolis , MN 55402
United States
(612) 492-6636
*billing*
Shannon Bjorklund-Holding File/ Client Charges
(484879-00999)
FOIA - UofM
*operator*
Deanna Bianchi-Rossi
(612) 340-7812
rossi.deanna@dorsey.com
*create time*
12/18/14, 2:32PM

*vendor*
FedEx
*tracking number*
772306151811
*service*
FedEx Priority Overnight®
*packaging*
FedEx® Pak
*dimensions*
2.0 LBS
*signature*
Deliver without signature
*courtesy quote*
20.26

*Quote may not reflect all accessorial charges*

*Legal Terms and Conditions*

Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions, including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-800 -463-3339).

©2003-2014 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
FedEx service marks are owned by Federal Express Corporation and are used by permission.
Other product and company names listed are trademarks or trade names of their respective companies.

From: (612) 340-2600
Shannon Bjorklund
Dorsey & Whitney LLP
50 S Sixth Street
Suite 1500
Minneapolis, MN 55402

Origin ID: GPZA

FedEx Express

E

J142214092303uv

Ship Date: 18DEC14
ActWgt: 2.0 LB
CAD: 103143495/WSXI2750

Delivery Address Bar Code

SHIP TO: (202) 254-4001 BILL SENDER
**Associate General Counsel**
**(General Law)**
**Department of Homeland Security**
**245 Murray Lane S.W.**
**Washington, DC 20528**

Ref # 02016-484879.00999
Invoice #
PO #
Dept #

RELEASE#: 3785346

FRI - 19 DEC 10:30A
PRIORITY OVERNIGHT

TRK# 7723 0615 1811
0201

20528
DC-US
IAD

**XC RDVA**

522G2/DC75/8AC9

FOLD on this line and place in shipping pouch with bar code and delivery address visible

1. Fold the first printed page in half and use as the shipping label.
2. Place the label in a waybill pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.
3. Keep the second page as a receipt for your records. The receipt contains the terms and conditions of shipping and information useful for tracking your package.

**Bianchi-Rossi, Deanna**

**From:** trackingupdates@fedex.com
**Sent:** Friday, December 19, 2014 9:56 AM
**To:** Bianchi-Rossi, Deanna
**Subject:** FedEx Shipment 772305965310 Delivered

---

This tracking update has been requested by:

Company Name: Dorsey & Whitney LLP
Name: Shannon Bjorklund
E-mail: bjorklund.shannon@dorsey.com

Message: PSShip eMail Notification

---

Our records indicate that the following shipment has been delivered:

Reference: 02016-484879.00999
Ship (P/U) date: Dec 18, 2014
Delivery date: Dec 19, 2014 10:22 AM
Sign for by: R.GILL
Delivery location: Washington, DC
Delivered to: Shipping/Receiving
Service type: FedEx Priority Overnight
Packaging type: FedEx Pak
Number of pieces: 1
Weight: 2.00 lb.
Special handling/Services: Deliver Weekday

Tracking number: 772305965310

| Shipper Information | Recipient Information |
|---|---|
| Shannon Bjorklund | U.S. Immigration and Customs |
| Dorsey & Whitney LLP | Office of Principal Legal Advisor |
| 50 S Sixth Street | Freedom of Information Act |
| Suite 1500 | Office |
| Minneapolis | U.S. Depart of Homeland Security |
| MN | Washington |
| US | DC |
| 55402 | US |
| | 20536 |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 9:56 AM CST on 12/19/2014.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the status of this shipment online, please use the following:
https://www.fedex.com/insight/findit/nrp.jsp?tracknumbers=772305965310&language=en&opco=FX&clientype=ivpodalrt

This tracking update has been sent to you by FedEx on the behalf of the Requestor noted above. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

*package id*
0099121
*ship date*
Thu, Dec 18 2014
*to*
U.S. Immigration and Customs
Office of Principal Legal Advisor
U.S. Depart of Homeland Security
Freedom of Information Act ~~Office~~
500 12th S
~~Washington~~, DC 20536-5009
United States
(202) 254-4001
*residential address*
No
*return label*
No
*notification type*
Delivery
*notification recipients*
bjorklund.shannon@do...
rossi.deanna@dorsey.com

*from*
Shannon Bjorklund (02016)
Dorsey & Whitney LLP
50 S Sixth Street
Suite 1500
Minneapolis , MN 55402
United States
(612) 492-6636
*billing*
Shannon Bjorklund-Holding File/ Client Charges
(484879-00999)
FOIA - UofM
*operator*
Deanna Bianchi-Rossi
(612) 340-7812
rossi.deanna@dorsey.com
*create time*
12/18/14, 2:27PM

*vendor*
FedEx
*tracking number*
772305965310
*service*
FedEx Priority Overnight®
*packaging*
FedEx® Pak
*dimensions*
2.0 LBS
*signature*
Deliver without signature
*courtesy quote*
20.26

*Quote may not reflect all accessorial charges*

## *Legal Terms and Conditions*

Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions, including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-800-463-3339).

From: (612) 340-2600
Shannon Bjorklund
Dorsey & Whitney LLP
50 S Sixth Street
Suite 1500
Minneapolis, MN 55402

Origin ID: GPZA

FedEx Express

E

J142214092303uv

Ship Date: 18DEC14
ActWgt: 2.0 LB
CAD: 103143495/WSXI2750

Delivery Address Bar Code

SHIP TO: (202) 254-4001 BILL SENDER

U.S. Immigration and Customs
Office of Principal Legal Advisor
U.S. Depart of Homeland Security
Freedom of Information Act Office
Washington, DC 20536

Ref # 02016-484879.00999
Invoice #
PO #
Dept #

RELEASE#: 3785346

FRI - 19 DEC 10:30A
PRIORITY OVERNIGHT

TRK# 0201 7723 0596 5310

XC RDVA

20536
DC-US
IAD

522G2/DC75/8AC9

FOLD on this line and place in shipping pouch with bar code and delivery address visible

1. Fold the first printed page in half and use as the shipping label.
2. Place the label in a waybill pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.
3. Keep the second page as a receipt for your records. The receipt contains the terms and conditions of shipping and information useful for tracking your package.

# Exhibit 22

U.S. Department of Homeland Security
500 12th St. SW; STOP 5009
Washington, DC 20546-5009

U.S. Immigration
and Customs
Enforcement

February 3, 2015

Katherine Evans
University of Minnesota Law School
Ctr for New Americans – 190 W.F. Mondale Hall
229 19th Avenue South
Minneapolis, MN 55455

**RE: 2015-ICFO-02993, 2015-ICAP-00096**

Dear Ms. Evans:

This is in response to your letter dated December 19, 2014, appealing the denial of a fee waiver by the U.S. Immigration & Customs Enforcement (ICE) Freedom of Information Act (FOIA) Office, in response to the FOIA request you filed, dated October 15, 2014. You requested information regarding copies of all RCA detailed summaries produced by the ICE St. Paul Field Office AOR, since the RCA tool was implemented in this jurisdiction; separately, RCA detailed summaries reflecting risk assessments performed on individuals in ICE custody within the St. Paul Field Office AOR, since the RCA tool was implemented, whose NTA was filed with the Bloomington, MN Immigration Court – including RCA detailed summaries for those arrested in other Field Offices, but whose proceedings were transferred to the St. Paul AOR.

In correspondence sent to you dated October 21, 2014, the ICE FOIA Office denied your request for a full fee waiver. In correspondence dated December 19, 2014, received on December 23, 2014, you appealed the denial of your fee waiver request.

Under 6 C.F.R. § 5.9(a)(1), appeals to an adverse determination by the ICE FOIA Office "must be received by the Associate General Counsel (General Law) within 60 days of the date of the letter denying your request." Your appeal letter was received on December 23, 2014, which is more than sixty (60) days from the date of the October 21, 2014, response letter denying your fee waiver request from the ICE FOIA Office. As such, ICE is administratively closing your appeal in this case pursuant to 6 C.F.R. § 5.9(a)(1).

Should you have any questions regarding this appeal closure, please contact ICE at ice-foia@dhs.gov. In the subject line of the email, please include the word "appeal," your appeal number, which is **2015-ICAP-00096,** and the FOIA case number, which is **2014-ICFO-02993**.

Sincerely,

for Debbie Seguin
Chief, Government Information Law Division
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

# Exhibit 23

UNIVERSITY OF MINNESOTA

*Twin Cities Campus*

*Law Clinics*
*Law School*

*190 Walter F. Mondale Hall*
*229 19th Avenue South*
*Minneapolis, MN 55455*

*Office: 612-625-5515*
*Fax: 612-624-5771*

January 7, 2015

Associate General Counsel (General Law)
Department of Homeland Security
245 Murray Lane SW
Washington, D.C. 20528
*Via Federal Express*

U.S. Immigration and Customs Enforcement
Office of Principal Legal Advisor
U.S. Department of Homeland Security
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
*Via Federal Express*

Associate General Counsel (General Law)
Department of Homeland Security
Washington, D.C. 20528
*Via U.S. Postal Service*

Re: Freedom of Information Act Appeal
Request No. 2015-ICFO-02993 made by Professor Benjamin Casper (University of Minnesota Law School), Teaching Fellow Katherine Evans (University of Minnesota Law School), and Professor Robert Koulish (University of Maryland) on October 15, 2014
Appeal of Fee Waiver Denial (dated October 21, 2014) – appeal letter delivered December 19, 2014

To whom it may concern:

On December 18, 2014, Requesters Professor Benjamin Casper (University of Minnesota Law School), Teaching Fellow Katherine Evans (University of Minnesota Law School), and Professor Robert Koulish (University of Maryland) (together, "Requesters") submitted an appeal of ICE's denial of Requesters' request for fee waiver approval. Requesters received confirmation on December 19, 2014 that the appeal letter was successfully delivered.

The appeal letter did not prominently display Requesters' full contact information. As a courtesy, and to avoid any uncertainty, the information is provided below:

- Professor Benjamin Casper, The University of Minnesota Law School, 190 Walter F. Mondale Hall, 229 19th Avenue South, Minneapolis, MN 55455, (612) 625-5515, caspe010@umn.edu
- Teaching Fellow Katherine Evans, The University of Minnesota Law School, 190 Walter F. Mondale Hall, 229 19th Avenue South, Minneapolis, MN 55455, (612) 625-5515, evans407@umn.edu

- Professor Robert Koulish, The University of Maryland, 3140 Tydings Hall, College Park, MD 20742, (410) 925-3894, rkhoulish@umd.edu

For your convenience, a copy of the December 18, 2014 appeal and supporting exhibits is enclosed. Please do not hesitate to contact us if you have questions.

Sincerely,

Katherine Evans
Teaching Fellow, University of Minnesota Law School
evans407@umn.edu or (612) 625-5515

Benjamin Casper
Visiting Associate Professor, University of Minnesota Law School
caspe010@umn.edu or (612) 625-5515

Robert Koulish
Professor, University of Maryland
rkhoulish@umn.edu or (410) 925-3894

Enclosures

# Exhibit 24

UNIVERSITY OF MINNESOTA

*Twin Cities Campus*

*Law Clinics*
*Law School*

*190 Walter F. Mondale Hall*
*229 19th Avenue South*
*Minneapolis, MN 55455*

*Office: 612-625-5515*
*Fax: 612-624-5771*

January 23, 2015

***Via Email***
ICE FOIA
Government Information Law Division
ICE Office of the Principal Legal Advisor
U.S. Department of Homeland Security
ice-foia@dhs.gov

Re: Freedom of Information Act Appeal – Correspondence related to Appeal of Fee Waiver Denial: **Appeal No. 2015-ICAP-00096**
FOIA Request No. 2015-ICFO-02993 made by Professor Benjamin Casper (University of Minnesota Law School), Teaching Fellow Katherine Evans (University of Minnesota Law School), and Professor Robert Koulish (University of Maryland) on October 15, 2014

To whom it may concern:

On December 18, 2014, Requesters Professor Benjamin Casper (University of Minnesota Law School), Teaching Fellow Katherine Evans (University of Minnesota Law School), and Professor Robert Koulish (University of Maryland) (together, "Requesters") submitted an appeal of ICE's denial of Requesters' request for fee waiver approval. Requesters sent the letter via two methods: overnight mail via the United States Postal Service, and Next Day Delivery via Federal Express. Both USPS and FedEx confirmed that they delivered (separate copies of) the appeal letter on December 19, 2014.

Requesters received a letter dated December 30, 2014, stating that the appeal was not received until December 23, 2014. For your convenience, Requesters are attaching copies of the confirmations they received from both FedEx and USPS, confirming delivery on December 19.

If you have any questions, please do not hesitate to contact us using the contact information provided below.

Sincerely,

Katherine Evans
Teaching Fellow, University of Minnesota Law School
evans407@umn.edu or (612) 625-5515

Benjamin Casper
Visiting Associate Professor, University of Minnesota Law School
caspe010@umn.edu or (612) 625-5515

Robert Koulish
Professor, University of Maryland
rkhoulish@umn.edu or (410) 925-3894

Enclosures

English Customer Service USPS Mobile Register / Sign In

USPS.COM

# USPS Tracking™

Customer Service ›
Have questions? We're here to help.

Tracking Number: EM392769121US

Updated Delivery Day: **Saturday, December 20, 2014**
Scheduled Delivery Day: Friday, December 19, 2014, 12:00 pm
**Money Back Guarantee**
Signed for By: K LUSBY // WASHINGTON, DC 20528 // 11:50 am

## Product & Tracking Information

**Postal Product:**
Priority Mail Express 1-Day™

**Features:**
PO to Addressee
Up to $100 insurance included
Restrictions Apply

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **December 19, 2014 , 11:50 am** | Delivered | **WASHINGTON, DC 20528** |

Your item was delivered at 11:50 am on December 19, 2014 in WASHINGTON, DC 20528 to HOMELAND SEC 20528. The item was signed for by K LUSBY.

| | | |
|---|---|---|
| December 19, 2014 , 10:37 am | Arrived at Post Office | WASHINGTON, DC 20018 |
| December 19, 2014 , 9:29 am | Arrived at USPS Facility | WASHINGTON, DC 20074 |
| December 18, 2014 , 7:04 pm | Departed USPS Facility | MINNEAPOLIS, MN 55401 |
| December 18, 2014 , 6:18 pm | Arrived at USPS Origin Facility | SAINT PAUL, MN 55111 |
| December 18, 2014 , 5:02 pm | Arrived at USPS Origin Facility | MINNEAPOLIS, MN 55401 |
| December 18, 2014 , 5:02 pm | Departed Post Office | MINNEAPOLIS, MN 55415 |
| December 18, 2014 , 3:53 pm | Acceptance | MINNEAPOLIS, MN 55415 |

## Available Actions

Proof of Delivery

Text Updates

Email Updates

## Track Another Package

**Tracking (or receipt) number**

Track It

RVICE®

2-POUND PA

RESSEE

**Freedom of Information Act Appeal**

EM 392769121 US

**Mailing Label**
Label 11-F, April 2004

EXPRESS MAIL
UNITED STATES POSTAL SERVICE®

**Post Office To Addressee**

PRESS HARD. YOU ARE MAKING 3 COPIES.

**ORIGIN (POSTAL SERVICE USE ONLY)**

| | | |
|---|---|---|
| PO ZIP Code | Day of Delivery ☐ Next ☐ 2nd ☐ 2nd Del. Day | Postage $ |
| Date Accepted Mo. Day Year | Scheduled Date of Delivery Month Day | Return Receipt Fee $ |
| Time Accepted ☐ AM ☐ PM | Scheduled Time of Delivery ☐ Noon ☐ 3 PM | COD Fee $ / Insurance Fee $ |
| Flat Rate ☐ or Weight lbs. ozs. | Military ☐ 2nd Day ☐ 3rd Day | Total Postage & Fees $ |
| | Int'l Alpha Country Code | Acceptance Emp. Initials |

**DELIVERY (POSTAL USE ONLY)**

| | | |
|---|---|---|
| Delivery Attempt Mo. Day | Time ☐ AM ☐ PM | Employee Signature |
| Delivery Attempt Mo. Day | Time ☐ AM ☐ PM | Employee Signature |
| Delivery Date Mo. Day | Time ☐ AM ☐ PM | Employee Signature |

CUSTOMER USE ONLY
METHOD OF PAYMENT:
Express Mail Corporate Acct. No. X554845

Federal Agency Acct. No. or Postal Service Acct. No.

FROM: (PLEASE PRINT) PHONE 612 340 2600

SLB
DORSEY & WHITNEY LAW FIRM
50 S 6TH ST STE 1500
MINNEAPOLIS MN 55402-1553

TO: (PLEASE PRINT) PHONE 202 254-4001

Associate General Counsel
(General Law)
Department of Homeland Security
Washington, D.C. 20528

FOR PICKUP OR TRACKING: Visit WWW.USPS.COM or Call 1-800-222-1811

**Bianchi-Rossi, Deanna**

**From:** trackingupdates@fedex.com
**Sent:** Friday, December 19, 2014 9:56 AM
**To:** Bianchi-Rossi, Deanna
**Subject:** FedEx Shipment 772306151811 Delivered

---

This tracking update has been requested by:

Company Name: Dorsey & Whitney LLP
Name: Shannon Bjorklund
E-mail: bjorklund.shannon@dorsey.com

Message: PSShip eMail Notification

---

Our records indicate that the following shipment has been delivered:

Reference: 02016-484879.00999
Ship (P/U) date: Dec 18, 2014
Delivery date: Dec 19, 2014 10:22 AM
Sign for by: R.GILL
Delivery location: Washington, DC
Delivered to: Shipping/Receiving
Service type: FedEx Priority Overnight
Packaging type: FedEx Pak
Number of pieces: 1
Weight: 2.00 lb.
Special handling/Services: Deliver Weekday

Tracking number: 772306151811

| Shipper Information | Recipient Information |
|---|---|
| Shannon Bjorklund | Associate General Counsel |
| Dorsey & Whitney LLP | (General Law) |
| 50 S Sixth Street | 245 Murray Lane S.W. |
| Suite 1500 | Department of Homeland Security |
| Minneapolis | Washington |
| MN | DC |
| US | US |
| 55402 | 20528 |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 9:55 AM CST on 12/19/2014.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the status of this shipment online, please use the following:
https://www.fedex.com/insight/findit/nrp.jsp?tracknumbers=772306151811&language=en&opco=FX&clientype=ivpodalrt

This tracking update has been sent to you by FedEx on the behalf of the Requestor noted above. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

*package id*
0099123
*ship date*
Thu, Dec 18 2014
*to*
Associate General Counsel

(General Law)
Department of Homeland Security
245 Murray Lane S.W.
Washington , DC 20528
United States
(202) 254-4001
*residential address*
No
*return label*
No
*notification type*
Delivery
*notification recipients*
bjorklund.shannon@do...
rossi.deanna@dorsey.com

*from*
Shannon Bjorklund (02016)
Dorsey & Whitney LLP
50 S Sixth Street
Suite 1500
Minneapolis , MN 55402
United States
(612) 492-6636
*billing*
Shannon Bjorklund-Holding File/ Client Charges
(484879-00999)
FOIA - UofM
*operator*
Deanna Bianchi-Rossi
(612) 340-7812
rossi.deanna@dorsey.com
*create time*
12/18/14, 2:32PM

*vendor*
FedEx
*tracking number*
772306151811
*service*
FedEx Priority Overnight®
*packaging*
FedEx® Pak
*dimensions*
2.0 LBS
*signature*
Deliver without signature
*courtesy quote*
20.26

*Quote may not reflect all accessorial charges*

*Legal Terms and Conditions*

Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions, including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-800 -463-3339).

©2003-2014 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
FedEx service marks are owned by Federal Express Corporation and are used by permission.
Other product and company names listed are trademarks or trade names of their respective companies.

From: (612) 340-2600 Origin ID: GPZA
Shannon Bjorklund
Dorsey & Whitney LLP
50 S Sixth Street
Suite 1500
Minneapolis, MN 55402

FedEx Express

E

J142214092303uv

Ship Date: 18DEC14
ActWgt: 2.0 LB
CAD: 103143495/WSXI2750

Delivery Address Bar Code

SHIP TO: (202) 254-4001 BILL SENDER
**Associate General Counsel**
**(General Law)**
**Department of Homeland Security**
**245 Murray Lane S.W.**
**Washington, DC 20528**

Ref # 02016-484879.00999
Invoice #
PO #
Dept #

RELEASE#: 3785346

FRI - 19 DEC 10:30A
PRIORITY OVERNIGHT

TRK# 7723 0615 1811
0201

20528
DC-US
IAD

**XC RDVA**

522G2/DC75/8AC9

FOLD on this line and place in shipping pouch with bar code and delivery address visible

1. Fold the first printed page in half and use as the shipping label.
2. Place the label in a waybill pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.
3. Keep the second page as a receipt for your records. The receipt contains the terms and conditions of shipping and information useful for tracking your package.

**Bianchi-Rossi, Deanna**

**From:** trackingupdates@fedex.com
**Sent:** Friday, December 19, 2014 9:56 AM
**To:** Bianchi-Rossi, Deanna
**Subject:** FedEx Shipment 772305965310 Delivered

---

This tracking update has been requested by:

Company Name: Dorsey & Whitney LLP
Name: Shannon Bjorklund
E-mail: bjorklund.shannon@dorsey.com

Message: PSShip eMail Notification

---

Our records indicate that the following shipment has been delivered:

Reference: 02016-484879.00999
Ship (P/U) date: Dec 18, 2014
Delivery date: Dec 19, 2014 10:22 AM
Sign for by: R.GILL
Delivery location: Washington, DC
Delivered to: Shipping/Receiving
Service type: FedEx Priority Overnight
Packaging type: FedEx Pak
Number of pieces: 1
Weight: 2.00 lb.
Special handling/Services: Deliver Weekday

Tracking number: 772305965310

| Shipper Information | Recipient Information |
|---|---|
| Shannon Bjorklund | U.S. Immigration and Customs |
| Dorsey & Whitney LLP | Office of Principal Legal Advisor |
| 50 S Sixth Street | Freedom of Information Act |
| Suite 1500 | Office |
| Minneapolis | U.S. Depart of Homeland Security |
| MN | Washington |
| US | DC |
| 55402 | US |
| | 20536 |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 9:56 AM CST on 12/19/2014.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the status of this shipment online, please use the following:
https://www.fedex.com/insight/findit/nrp.jsp?tracknumbers=772305965310&language=en&opco=FX&clientype=ivpodalrt

This tracking update has been sent to you by FedEx on the behalf of the Requestor noted above. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

*package id*
0099121
*ship date*
Thu, Dec 18 2014
*to*
U.S. Immigration and Customs
Office of Principal Legal Advisor
U.S. Depart of Homeland Security
Freedom of Information Act ~~Office~~
500 12th S
~~Washington~~, DC 20536-5009
United States
(202) 254-4001
*residential address*
No
*return label*
No
*notification type*
Delivery
*notification recipients*
bjorklund.shannon@do...
rossi.deanna@dorsey.com

*from*
Shannon Bjorklund (02016)
Dorsey & Whitney LLP
50 S Sixth Street
Suite 1500
Minneapolis , MN 55402
United States
(612) 492-6636
*billing*
Shannon Bjorklund-Holding File/ Client Charges
(484879-00999)
FOIA - UofM
*operator*
Deanna Bianchi-Rossi
(612) 340-7812
rossi.deanna@dorsey.com
*create time*
12/18/14, 2:27PM

*vendor*
FedEx
*tracking number*
772305965310
*service*
FedEx Priority Overnight®
*packaging*
FedEx® Pak
*dimensions*
2.0 LBS
*signature*
Deliver without signature
*courtesy quote*
20.26

*Quote may not reflect all accessorial charges*

*Legal Terms and Conditions*

Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions, including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-800 -463-3339).

From: (612) 340-2600
Shannon Bjorklund
Dorsey & Whitney LLP
50 S Sixth Street
Suite 1500
Minneapolis, MN 55402

Origin ID: GPZA

FedEx Express

E

J142214092303uv

Ship Date: 18DEC14
ActWgt: 2.0 LB
CAD: 103143495/WSXI2750

Delivery Address Bar Code

SHIP TO: (202) 254-4001 BILL SENDER
U.S. Immigration and Customs
Office of Principal Legal Advisor
U.S. Depart of Homeland Security
Freedom of Information Act Office
Washington, DC 20536

Ref # 02016-484879.00999
Invoice #
PO #
Dept #

RELEASE#: 3785346

FRI - 19 DEC 10:30A
PRIORITY OVERNIGHT

TRK# 7723 0596 5310
0201

20536
DC-US
IAD

XC RDVA

522G2/DC75/8AC9

FOLD on this line and place in shipping pouch with bar code and delivery address visible

1. Fold the first printed page in half and use as the shipping label.
2. Place the label in a waybill pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.
3. Keep the second page as a receipt for your records. The receipt contains the terms and conditions of shipping and information useful for tracking your package.

# Exhibit 25

UNIVERSITY OF MINNESOTA

*Twin Cities Campus*

*Law Clinics*
*Law School*

*190 Walter F. Mondale Hall*
*229 19th Avenue South*
*Minneapolis, MN 55455*

*Office: 612-625-5515*
*Fax: 612-624-5771*

March 24, 2015

Associate General Counsel (General Law)
Department of Homeland Security
245 Murray Lane SW
Washington, D.C. 20528
*Via Federal Express*

U.S. Immigration and Customs Enforcement
Office of Principal Legal Advisor
U.S. Department of Homeland Security
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
*Via Federal Express*

Associate General Counsel (General Law)
Department of Homeland Security
Washington, D.C. 20528
*Via U.S. Postal Service*

Re: Freedom of Information Act Appeal
Request Nos. 2015-ICFO-02993 and 2015-ICAP-00096 made by Professor Benjamin Casper (University of Minnesota Law School), Teaching Fellow Katherine Evans (University of Minnesota Law School), and Professor Robert Koulish (University of Maryland) on October 15, 2014
Appeal of Denial of FOIA Fee Waiver Request as Untimely (undated) – appeal letter delivered February 3, 2015

To whom it may concern:

Requesters write to you respectfully requesting reconsideration of the denial of our FOIA Fee Waiver Request Appeal as untimely. As described in greater detail below, the tracking confirmation proves that the appeal was timely received within the 60-day period, and to avoid spending the government's as well as our own valuable time and resources appealing clerical errors in federal district court, we respectfully request that you correct the letter receipt date and reconsider the FOIA Fee Waiver Request appeal on the merits..

FOIA fee waiver request 2015-ICAP-00096 was initially submitted on October 15, 2014 and denied on October 21, 2014. We appealed in a letter on December 18, 2014. The letter, along with other fee waiver request appeal letters, was sent via two methods: overnight mail via the United States Postal Service and Next Day Delivery via Federal Express. Both FedEx and USPS confirmed that they delivered the appeal letter on December 19, 2014. Thus, the Associate General Counsel received the appeal within 60 days as required by 6 C.F.R. § 5.9(a)(1).

Requesters received a letter dated December 30, 2014, stating that the appeal was not received until December 23, 2015. On January 23, 2015, Requesters sent an e-mail correcting the

appeal letter's receipt date and provided copies of confirmations from both FedEx and USPS of delivery on December 19, 2014.

Unfortunately, we did not receive confirmation that the January 23rd date correction letter had been received, and the appeal letter's receipt date was not corrected. In a letter dated February 3, 2015, DHS denied the FOIA fee waiver request as untimely even though DHS had already considered one of our FOIA fee waiver requests—which had been delivered in the same package—on the merits in a letter dated January 23, 2015. In light of these facts, we respectfully request reconsideration of the fee waiver request.

Requesters' prior letters and tracking information are attached for your convenience. We look forward to resolving this matter in a manner that is both efficient and agreeable for all parties involved.

Sincerely,

Katherine Evans
Teaching Fellow, University of Minnesota Law School
evans407@umn.edu or (612) 625-5515

Benjamin Casper
Visiting Associate Professor, University of Minnesota Law School
caspe010@umn.edu or (612) 625-5515

Robert Koulish
Professor, University of Maryland
rkhoulish@umn.edu or (410) 925-3894

Enclosures

# Exhibit 26

U.S. Department of Homeland Security
500 12th St. SW; STOP 5009
Washington, DC 20536-5009

U.S. Immigration
and Customs
Enforcement

July 7, 2015

Katherine Evans
University of Minnesota Law School
Center for New Americans – 190 W.F. Mondale Hall
229 19th Avenue South
Minneapolis, MN 55455

**RE: 2015-ICAP-00434, 2015-ICFO-02993**

Dear Ms. Evans:

This is in response to your letter dated June 4, 2015, appealing the adverse determination by the U.S. Immigration and Customs Enforcement (ICE), Freedom of Information Act (FOIA) Office in response to your Freedom of Information Act/Privacy Act (FOIA/PA) request seeking:

1. All Risk Classification Assessment (RCA) Detailed Summaries produced by the ICE St. Paul Field Office AOR since the RCA tool was implemented in that jurisdiction;

2. All RCA Detailed Summaries reflecting risk assessments performed on individuals in ICE custody within the St. Paul Field Office AOR and whose Notice to Appear (NTA) was filed with the Bloomington, MN Immigration Court since the RCA tool was implemented, including RCA Detailed Summaries for those arrested in other field offices but whose proceedings changed venue to the St. Paul AOR.

Your appeal dated June 4, 2015, was received on June 8, 2015. Supplemental correspondence regarding your appeal was received via email on June 24, 2015.

A search of the ICE Office of Enforcement and Removal Operations (ERO) conducted in response to your October 15, 2014 request produced one (1) Excel spreadsheet containing records information from the RCA database that was responsive to your request. The spreadsheet was processed under the FOIA, 5 U.S.C. § 552 and the Privacy Act, 5 U.S.C. § 552a. Portions of the spreadsheet were withheld by the ICE FOIA Office under Exemptions (b)(3), (b)(6), (b)(7)(C), and (b)(7)(E) of the FOIA. You have appealed some of the withholdings under Exemptions (b)(6), (b)(7)(C), and (b)(7)(E) as applied to the spreadsheet and the adequacy of the search. In addition, you have requested reconsideration of the denial of your request for a blanket fee waiver if your request was remanded for an additional search.

As was explained in the ICE FOIA Office's letter dated April 9, 2015, ICE FOIA has applied FOIA Exemption (b)(7)(E) to protect from disclosure investigative techniques and procedures, such as internal agency law enforcement case categories and codes. Disclosure of these internal database categories and codes could reasonably be expected to risk circumvention of the law. Upon a complete review of the information withheld by ICE under FOIA Exemption (b)(7)(E) in the initial determination on your FOIA/PA request, the withholding of this information was proper in all respects, and the information is exempt from disclosure under the applicable provisions of 5 U.S.C. § 552 and 5 U.S.C. § 552a cited above.

However, upon complete review of the record, ICE has determined that the subjects' anonymized identity numbers were improperly withheld under FOIA Exemptions (b)(6), (b)(7)(C). Therefore, ICE is remanding your request to the ICE FOIA Office for reprocessing of that information and direct response to you.

As to your appeal of the adequacy of the search, ICE has discussed your original FOIA request with the ICE Office of Enforcement and Removal Operations (ERO), the ICE component responsible for searching the RCA database and determined that your initial FOIA request is unreasonably burdensome. The sample RCA Detailed Summary provided with your appeal is not a type of record independently maintained in an ICE database in the format provided in your sample. It is the product of a certain type of query that must be individually run through the database for each RCA decision. A query involves multiple steps to navigate through the database to produce a RCA Detailed Summary. An individual alien may have multiple RCA assessments.[1] The ERO Office estimates there are approximately 18,000 RCA decisions responsive to the first part of your FOIA request, i.e. RCA decisions originating from the St. Paul, MN AOR since the RCA was implemented in 2013. To search for RCA Detailed Summaries for each of the estimated 18,000 decisions would take approximately 1,500 hours or 37.5 full-time work weeks. Such a search would produce approximately 36,000 pages of records which would then need to be individually reviewed and processed by the ICE FOIA Office before they could be released to you.

As to the second part of your FOIA request, the ERO Office indicates it is not possible to search and produce RCA Detailed Summaries by the location of the immigration court where the NTA was filed or to identify aliens arrested in other AORs whose proceedings changed venue to St. Paul AOR, without independently cross-referencing information contained in other ICE databases.

In an effort to satisfy your request, ICE has produced a spreadsheet containing the RCA decision information the agency is currently capable of producing in spreadsheet form. Without narrowing the scope of your request and potentially tailoring ICE's queries, currently, the only additional RCA information which could be produced in spreadsheet form is limited to Alien number, Alien's First and Last Name, Officer identity number and Supervisor identity number – all information that would be withheld in full under FOIA Exemptions (b)(6) and (b)(7)(C) as the privacy interests of the individuals in the records outweigh any minimal public interest in the disclosure of that information. ICE therefore affirms the adequacy of the search conducted by ICE FOIA.

However, ICE understands that you have initiated a conversation with ICE FOIA via email dated June 24, 2015, regarding possible modification or narrowing of your original FOIA request. In light of the agency's decision, we welcome the opportunity to work with you in narrowing the scope of your original request. Please feel free to contact the ICE FOIA Office in this effort.

As to your fee waiver request on remand, fee waivers are properly granted "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operation or activities of the government and is not primarily in the commercial interest of the requestor." *See* 6 C.F.R. § 5.11(k)(1)(i), (ii). The DHS FOIA regulations at 6 C.F.R. § 5.11(k)(2)-(3) set forth six factors that are examined in determining whether the applicable legal standard for a fee waiver had been met. Those six factors are as follows: (i) whether the subject of the requested records concerns "the operations or activities of the government"; (2) whether the disclosure is "likely to contribute" to an understanding of government

[1] As explained in the RCA PIA, dated April 6, 2012, risk classification assessments are conducted at the time an alien first enters ICE custody but also at various other times triggered by such events as disciplinary infractions committed by the alien, the discovery of new case information, violations of the conditions of release or changes in ICE policies. *See* http://www.dhs.gov/xlibrary/assets/privacy/privacy_piaupdate_EID_april2012.pdf.

operations or activities; (3) whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of a narrow segment of interested persons; (4) whether the contribution to public understanding of government operations or activities will be "significant"; (5) and (6) whether the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure that disclosure is primarily in the commercial interest of the requestor.

The information you have requested may relate to the operations or activities of the government. However, ICE also needs to examine whether the disclosure is "likely to contribute" to the understanding of the public at large regarding specific government operations or activities. The original request does not provide any basis for concluding that disclosure of the requested information would contribute significantly to the public understanding of the operations or activities of the government. As noted in your appeal, there is a Privacy Impact Assessment (PIA) for the RCA dated April 6, 2012, which is publicly available and explains in detail the RCA system, the information it stores and how the system works. Specifically, the PIA states that the RCA is based on the existing ICE policies and guidance regarding detention or release of aliens. ICE detention policies have not changed with the addition of the RCA. Nor does it change the information that ICE collects about aliens. The PIA also states that the RCA automates the assessment process, and produces recommendation whether an alien should be detained or released on bond or under supervision. The RCA produces a custody determination. However, an ICE Officer makes the final custody determination, considering the RCA determination as well as information from other sources. This clearly demonstrates that there is a wide range of information available to the public on the RCA and that it is based on existing ICE policies shows that the disclosure of this information would not be likely to contribute or significantly contribute to the understanding of the public of this particular government activity, particularly as this request is limited to RCA decisions in one geographic area of the country. ICE detention policies are widely known and available to the public. Neither the RCA nor the information it stores changes those policies or guidance. In addition, the PIA also states that there is a substantial amount of personal and sensitive information contained in these RCA Detailed Summaries, such as the names, addresses and criminal history of detainees, that could potentially involve information protected from disclosure under FOIA Exemptions (b)(6) and (b)(7)(C). The possibility that the information contained in these Detailed Summaries being requested could be withheld under the FOIA, limits the public's access to this information and the ability to significantly contribute to the public's understanding of DHS policy.

ICE FOIA previously determined that you had failed to meet requirements 4, 5 and 6. However, upon further review and analysis, it has been determined that you have met factors 5 and 6. Nevertheless, in order for you to be granted a fee waiver, you must meet all six factors cited above. ICE has determined that you have failed to meet factors 2 and 4. Therefore, you have failed to meet the statutory requirements for a fee waiver.

Should you have any questions regarding this appeal remand, please contact ICE at ice-foia@dhs.gov. In the subject line of the email, please include the word "appeal," your appeal number, which is **2015-ICAP-00434**, and the FOIA case number, which is **2015-ICFO-02993**.

Sincerely,

for Debbie Seguin
Chief
Government Information Law Division
ICE Office of the Principal Legal Advisor
U.S. Department of Homeland Security

# Exhibit 27

UNIVERSITY OF MINNESOTA

*Twin Cities Campus*

*Law Clinics*
*Law School*

*190 Walter F. Mondale Hall*
*229 19th Avenue South*
*Minneapolis, MN 55455*
*Office: 612-625-5515*
*Fax: 612-624-5771*

June 4, 2015

Associate General Counsel (General Law)
Department of Homeland Security
245 Murray Lane SW
Washington, D.C. 20528
*Via Federal Express Overnight*

U.S. Immigration and Customs Enforcement
Office of Principal Legal Advisor
U.S. Department of Homeland Security
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
*Via Federal Express Overnight*

Associate General Counsel (General Law)
Department of Homeland Security
Washington, D.C. 20528
*Via U.S. Postal Service Overnight*

Re: Freedom of Information Act Appeal
FOIA Case No. 2015-ICFO-02993 made by Professor Benjamin Casper (University of Minnesota Law School), Teaching Fellow Katherine Evans (University of Minnesota Law School), and Professor Robert Koulish (University of Maryland) on October 15, 2014
Appeal of Final Response (dated April 9, 2015)

To whom it may concern:

This is an appeal under the Freedom of Information Act, pursuant to 5 U.S.C. § 552 and 6 C.F.R. § 5.9. Requesters write to appeal the ICE FOIA Office's final response to their FOIA Request, which provided one heavily redacted Microsoft Excel spreadsheet that did not contain all the information set forth in the documents that were the subject of the request. Certain fields on the spreadsheet were redacted and fields for other information were omitted entirely. This appeal letter is sent such that it will be received within 60 days of the April 9, 2015 final response. *See* 6 C.F.R. § 5.25.

On October 15, 2014, Requesters Professor Benjamin Casper (University of Minnesota Law School), Teaching Fellow Katherine Evans (University of Minnesota Law School), and Professor Robert Koulish (University of Maryland) (together, "Requesters") submitted a FOIA request seeking Detailed Summaries arising from the use of ICE's Risk Classification Assessment ("RCA") tool in the Area of Responsibility ("AOR") for ICE's St. Paul Field Office. *See* Exhibit A (FOIA request, Case No. 2015-ICFO-02993). On April 9, 2015, the ICE FOIA Office issued a final response to Requesters' request and provided a spreadsheet with some of the information contained within the documents requested. The final response further stated that

some portions of the responsive document were withheld under FOIA Exemptions 3, 6, 7(c), and 7(e). *See* Exhibit B (final response).

Requesters hereby appeal this final response on the grounds that the information found on responsive individual RCA Summaries from the St. Paul Field Office's AOR, including but not limited to demographic, case category, alert code, criminal history including dates, and family and community ties information should have been provided because FOIA Exemptions 6, 7(c), and 7(e) do not apply. Requesters are entitled to the RCA Summaries themselves, but may be willing to accept an additional spreadsheet that contains the withheld information.

## I. ICE Improperly Withheld Responsive Information.

"FOIA promotes a broad policy of transparency in government," *Casa De Maryland, Inc. v. U.S. Department of Homeland Sec.*, 409 Fed. Appx. 697, 699 (4th Cir. 2011). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Id.* (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). While some statutory exemptions to this general FOIA policy exist, they are narrowly construed. *Id.* (citing *Bowers v. United States Dep't of Justice,* 930 F.2d 350, 354 (4th Cir.1991)). For the reasons explained in greater detail below, FOIA Exemptions 6, 7(c), and 7(e) do not apply to the information responsive to Requesters' FOIA request, and the requested information should be produced in its entirety.

### A. FOIA Exemptions 6 and 7(c) Do Not Apply.

FOIA Exemptions 6 and 7(c) apply only if "disclosure would constitute an 'unwarranted invasion of personal privacy.'" *Id.* at 700. If disclosure of information is not likely to identify a party, as is the case here, it should be disclosed. "An agency may not exempt from disclosure all of the material in an investigatory record solely on the grounds that the record includes some information which identifies a private citizen or provides that person's name and address." *Center to Prevent Handgun Violence v. U.S. Dep't of Treasury*, 981 F.Supp. 20, 24 (D. D.C., 1997) (internal quotation omitted). In *Center to Prevent Handgun Violence v. U.S. Dep't of Treasury*, ("*CPHV*"), the D.C. District Court ordered the disclosure of the serial numbers of guns sold because the privacy interest of gun buyers could only be implicated if the buyers could be identified by the public lists of gun serial numbers. *Id.* The FOIA request for gun serial numbers included one state that published the numbers in a non-computerized database. *Id.* Accordingly, the court held that the privacy interest was "vanishingly small" and ordered disclosure of the serial numbers. Similarly, in *Rosenfeld v. United States Dep't of Justice*, the court found that disclosure of a police officer's name was not an unwarranted intrusion of privacy because "the information was not likely to identify the party." 57 F.3d 803, 812–13 (9th Cir. 1995).

The likelihood that identities will be discernable from demographic, criminal history, and family and community ties information[1] is even smaller than in *CPHV* or *Rosenfeld*. Unlike in

[1] To be clear, aside from the subjects' ID Numbers, which ICE redacted under Exemption 6 and 7(c), ICE has simply failed to provide, rather than redact, the vast majority of demographic, criminal history, and family and community ties information that is collected during the RCA process, exists in an RCA Detailed Summary, and that

*CPHV* where one piece of information could be compared to a public list to identify individuals, here, several fragments of information would have to be pieced together with other non-public information in order to identify the individuals in question. Most importantly, unlike in *Rosenfeld*, the requesters are willing to concede redaction of the names of the detained individuals. Thus, because it is highly unlikely that an individual's identity will be ascertained, Requesters should be given the requested information.

Past ICE FOIA disclosures further demonstrate that the type of information requested should not be withheld under Exemption 6 or 7(c). In response to a prior FOIA request by one of the Requesters for RCA Detailed Summaries from ICE regarding its Baltimore Field Office (2013-FOIA-17861), ICE provided pdfs of the actual RCA detailed summary and left unredacted the demographic, criminal history, and family and community ties information. *See* Exhibit C (showing demographic information at the top of page 1, criminal history—offense description and disposition—at the bottom of page 1,[2] and family and community ties information on page 2).

Indeed, ICE has released similar criminal history information through FOIA for use in public reports and media articles to other requesters multiple times.[3] Similarly, in *New York Times Co. v. United States Dep't of Homeland Security*, the requesters asked for "a list of convicted criminal aliens released by ICE, but not deported, since 1/1/2008 due to the 2001 Supreme Court decision in *Zadvydas*." 959 F.Supp.2d 449, 451 (S.D.N.Y. 2013). DHS provided the requesters with a spreadsheet, without judicial intervention, "containing, for each individual, the most serious crime for which an individual was convicted, the date of the release from ICE custody, and the jurisdiction in which the release took place." *Id.* ICE has also released similar family history information through FOIA—for example, on parents of US citizen children deported through ICE enforcement processes.[4] ICE has also released similar demographic information through FOIA.[5]

---

ICE has previously released under FOIA previously. *See* Exhibit C. Thus, it is impossible to discern what FOIA exemption ICE might claim over that information, if any. In this appeal, we reiterate our request for the missing information and preserve any and all arguments against any FOIA exemptions, including but not limited to Exemptions 6, 7(c), and 7(e).

[2] In this FOIA response, ICE redacted the dates of convictions. However, in other FOIA responses, ICE has provided information on the age of convictions. *See* Marc R. Rosenblum and Kristen McCabe, *Deportation and Discretion: Reviewing the Record and Options for Change*, Migration Policy Institute, Oct. 2014, at 6–7, 15–16 (using ICE EID information obtained by the New York Times through FOIA, calculating the time between a criminal conviction and ICE arrest or ICE removal, and reporting how old criminal convictions are, of the 2.9 million ICE removals and 500,000 ICE informal returns, from FY 2003 through FY 2013), http://www.migrationpolicy.org/sites/default/files/publications/Deportation-Discretion-Report.pdf. We reiterate our request for dates of convictions as part of the information included in an RCA Detailed Summary.

[3] *Id.*, at 6–7, 12–16, 44–46 (reporting most serious criminal convictions and age of convictions for all those removed from FY 2003 through FY 2013); Boston Globe, *Jailed Immigrants Face Long Stays in Federal Cells*, Dec. 9, 2012 (reporting information obtained from ICE through FOIA such as most serious criminal charge), http://www.bostonglobe.com/metro/2014/02/18/ice-imprisoned-czech-national-scott-vitkovic-for-seven-years-but-never-charged-him-with-crime/d0VPTgZsvbY0OEjcjbJMpM/igraphic.html; TRAC Immigration, *ICE Criminal Offense Levels Business Rules*, Apr. 24, 2013 (ICE released through FOIA its "business rules" for coding different criminal charges as ICE "offense levels" (e.g. Level 1, 2, and 3), based on criminal NCIC code).

[4] Seth Freed Wessler, *Nearly 205K Deportations of Parents of U.S. Citizens in Just Over Two Years*, ColorLines, Dec. 17, 2012, http://www.colorlines.com/articles/nearly-205k-deportations-parents-us-citizens-just-over-two-years; *see also* Seth Freed Wessler, *Primary Data: Deportations of Parents of U.S. Citizen Kids*, ColorLines, Dec. 17,

Thus, DHS has itself shown the information sought by Requesters is not barred under the claimed exemptions, and the same information should now be disclosed.

**B. FOIA Exemption 7(e) Does Not Apply.**

FOIA Exemption 7(e) applies to "to records or information compiled for law enforcement purposes to the extent release of such records 'would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." *Citizens for Responsibility and Ethics in Washington v. United States Dep't of Justice*, 746 F.3d 1082, 1101–02 (D.C. Cir. 2014) (quoting 5 U.S.C. § 552(b)(7)(e)). The case category and alert code information, while compiled for law enforcement purposes, neither disclose techniques or procedures for law enforcement investigations or prosecutions nor disclose guidelines for investigations or prosecutions. The case category information simply provides the status of the case in the same way that designations such as "criminal," "civil," or "tax" provide information on the specific type of law at play in a case or the way that "arraignment," "pending trial," or "on appeal" designate the status of a traditional criminal prosecution. Providing case category information will not provide information about how ICE will investigate a particular case as in *Jordan v. United States Dep't of Just*ice, 668 F.3d 1188, 1200–01 (10th Cir. 2011), how ICE will search, organize, or report certain data as in *Blackwell v. F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2011), or increase the risk that past or future violators will escape legal consequences as was the case in *Mayer Brown LLP v. I.R.S.*, 562 F.3d 1190, 1193 (D.C. Cir. 2009). Similarly, alert codes, like demographic or criminal history information, provide information about a particular detainee (that the detainee is an aggravated felon, for example), and are thus devoid of information about law enforcement techniques, procedures, guidelines, or ways to circumvent the law.

Indeed, ICE has previously provided case category information through FOIA on multiple occasions.[6] The Baltimore Field Office provided some of this information in the RCA Summaries under the name "processing disposition" and included information such as notice to appear, expedited removal, reinstatement, or administrative removal. *See* Exhibit C. Additionally, on information and belief, ICE has previously provided alert codes under FOIA. These prior disclosures further demonstrate that case category and alert code information do not

---

2012 (attaching spreadsheet provided by ICE ERO LESA Statistical Tracking Unit), http://www.colorlines.com/articles/primary-data-deportations-parents-us-citizen-kids.

[5] *See* Donald Kerwin and Serena Yi-Ying Lin, *Immigrant Detention: Can ICE Meet its Legal Imperatives and Case Management Responsibilities?*, Migration Policy Institute, Sept. 2009 (reporting gender and country of citizenship information), http://www.migrationpolicy.org/research/immigrant-detention-can-ice-meet-its-legal-imperatives-and-case-management-responsibilities.

[6] Boston Globe, *Jailed Immigrants Face Long Stays in Federal Cells*, Dec. 9, 2012 (reporting case category information obtained from ICE, along with criminal history), http://www.bostonglobe.com/metro/2014/02/18/ice-imprisoned-czech-national-scott-vitkovic-for-seven-years-but-never-charged-him-with-crime/d0VPTgZsvbY0OEjcjbJMpM/igraphic.html; *see also* ACLU, https://www.aclu.org/files/assets/aclu_foia_request_1_response-lesa-stu-final.pdf (reporting case category information obtained from ICE through FOIA, as well as dates of final removal orders); Center for Immigration Studies, http://cis.org/sites/cis.org/files/Crane%20ICE%20STU%20Removal%20Statistics.pdf (providing case category information in public lawsuit).

trigger a 7(e) Exemption. For these reasons, the case category and alert code information should be disclosed.

## II. Requesters' Fee-Waiver Request Should Be Reconsidered.

Requesters' fee-waiver request was initially denied by ICE on October 21, 2014. Requesters appeal was first denied as untimely on February, 3, 2015, but the appeal was reconsidered and found not untimely but denied as moot on April 23, 2015 because the cost to produce the records did not exceed $14. To the extent supplying further information in response to Requesters FOIA request exceeds the $14 minimum or the allotted 100 free pages, Requesters ask that their petition for a fee waiver request be reconsidered in light of the current disposition of the FOIA request.

## III. Conclusion

For the reasons stated above, Requesters respectfully ask that ICE grant their appeal and produce the information contained within the full RCA Summaries, as well as reconsider Requesters fee-waiver request to the extent it is applicable.

Sincerely,

Katherine Evans
Teaching Fellow, University of Minnesota Law School
evans407@umn.edu or (612) 625-5515

Benjamin Casper
Visiting Associate Professor, University of Minnesota Law School
caspe010@umn.edu or (612) 625-5515

Robert Koulish
Professor, University of Maryland
rkhoulish@umd.edu or (410) 925-3894

Enclosures

**List of Exhibits:**

Exhibit A: FOIA Request (October 15, 2014)

Exhibit B: ICE Response (April 9, 2015)

Exhibit C: Sample RCA Detailed Summaries produced in response to other request

FILE COPY

EM392768700US

**Customer Copy**
Label 11-F, April 2004

EM 392768700 US

**EXPRESS MAIL**
UNITED STATES POSTAL SERVICE®

**Post Office To Addressee**

**ORIGIN (POSTAL SERVICE USE ONLY)**

| | | |
|---|---|---|
| PO ZIP Code: 55401 | Day of Delivery: ☐ Next ☐ 2nd ☒ 2nd Del. Day | Postage: $ 19.99 |
| Date Accepted: 2 4 15 (Mo. Day Year) | Scheduled Date of Delivery: 6 6 (Month Day) | Return Receipt Fee: $ |
| Time Accepted: 6:53 ☐ AM ☒ PM | Scheduled Time of Delivery: ☒ Noon ☐ 3 PM | COD Fee: $ / Insurance Fee: $ |
| Flat Rate ☒ or Weight: 7.2 lbs. ozs. | Military: ☐ 2nd Day ☐ 3rd Day | Total Postage & Fees: $ 19.99 |
| | Int'l Alpha Country Code | Acceptance Emp. Initials: KM |

**DELIVERY (POSTAL USE ONLY)**

| | | |
|---|---|---|
| Delivery Attempt: Mo. Day | Time: ☐ AM ☐ PM | Employee Signature |
| Delivery Attempt: Mo. Day | Time: ☐ AM ☐ PM | Employee Signature |
| Delivery Date: Mo. Day | Time: ☐ AM ☐ PM | Employee Signature |

[Postmark: USPS MINNEAPOLIS MN JUN - 4 2015]

WAIVER OF SIGNATURE (Domestic Mail Only) Additional merchandise insurance is void if waiver of signature is requested. I wish delivery to be made without obtaining signature of addressee or addressee's agent (if delivery employee judges that article can be left in secure location) and I authorize that delivery employee's signature constitutes valid proof of delivery.

NO DELIVERY ☐ Weekend ☐ Holiday

Customer Signature

**CUSTOMER USE ONLY**

METHOD OF PAYMENT:
Express Mail Corporate Acct. No. X554845

Federal Agency Acct. No. or Postal Service Acct. No.

**FROM:** (PLEASE PRINT) PHONE 612 340 2600

DORSEY & WHITNEY LAW FIRM
50 S 6TH ST STE 1500
MINNEAPOLIS MN 55402-1553

J583-700164-4 (2993)

**TO:** (PLEASE PRINT) PHONE 202 254-4001

Associate Gen. Counsel
(General Law)
Dept of Homeland Security
Washington, DC 20528

FOR PICKUP OR TRACKING: Visit **www.usps.com** or Call 1-800-222-1811

EMS

From: (612) 340-2600
Vanessa Szalapski
Dorsey & Whitney LLP
50 S Sixth Street
Suite 1500
Minneapolis, MN 55402

Origin ID: GPZA

FedEx Express

E

J151215022303uv

Ship Date: 04JUN15
ActWgt: 0.5 LB
CAD: 103143495/WSXI2750

Delivery Address Bar Code

SHIP TO: (202) 254-4001 BILL SENDER
**Associate General Counsel**
**(General Law)**
**245 MURRAY LN SW**

**WASHINGTON, DC 20528**

Ref # 01583-700164.00004
Invoice #
PO #
Dept #

RELEASE#: 3785346

**FRI - 05 JUN 10:30A**
**PRIORITY OVERNIGHT**

TRK# 7807 6808 0319
0201

**20528**
DC-US
**IAD**

# XC RDVA

537J1/8A0E/EE48

**FOLD on this line and place in shipping pouch with bar code and delivery address visible**

1. Fold the first printed page in half and use as the shipping label.
2. Place the label in a waybill pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.
3. Keep the second page as a receipt for your records. The receipt contains the terms and conditions of shipping and information useful for tracking your package.

## *Legal Terms and Conditions*

Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions, including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-800-463-3339).

From: (612) 340-2600
Vanessa Szalapski
Dorsey & Whitney LLP
50 S Sixth Street
Suite 1500
Minneapolis, MN 55402

Origin ID: GPZA

FedEx Express

E

J151215022303uv

Ship Date: 04JUN15
ActWgt: 0.5 LB
CAD: 103143495/WSXI2750

Delivery Address Bar Code

SHIP TO: (202) 254-4001 BILL SENDER

**US Immigration & Customs Enforce.**
**Office of Principal Legal Advisor**
**US Dept of Homeland Security - FOIA**
**500 12th St SW, Stop 5009**
**Washington, DC 20536**

Ref # 01583-700164.00004
Invoice #
PO #
Dept #

RELEASE#: 3785346

**FRI - 05 JUN 10:30A**
**PRIORITY OVERNIGHT**

TRK# 7807 6827 5808
0201

**XC RDVA**

**20536**
DC-US
**IAD**

537J1/8A0E/EE4B

FOLD on this line and place in shipping pouch with bar code and delivery address visible

1. Fold the first printed page in half and use as the shipping label.
2. Place the label in a waybill pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.
3. Keep the second page as a receipt for your records. The receipt contains the terms and conditions of shipping and information useful for tracking your package.

## *Legal Terms and Conditions*

Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions, including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-800-463-3339).

EM 392768700 US

**Mailing Label**
Label 11-F, April 2004

EXPRESS MAIL
UNITED STATES POSTAL SERVICE®

**Post Office To Addressee**

PRESS HARD. YOU ARE MAKING 3 COPIES.

**ORIGIN (POSTAL SERVICE USE ONLY)**

PO ZIP Code | Day of Delivery ☐ Next ☐ 2nd ☐ 2nd Del. Day | Postage $
Date Accepted Mo. Day Year | Scheduled Date of Delivery Month Day | Return Receipt Fee $
Time Accepted ☐ AM ☐ PM | Scheduled Time of Delivery ☐ Noon ☐ 3 PM | COD Fee $ | Insurance Fee $
Military ☐ 2nd Day ☐ 3rd Day | Total Postage & Fees $
Flat Rate ☐ or Weight lbs. ozs. | Int'l Alpha Country Code | Acceptance Emp. Initials

**DELIVERY (POSTAL USE ONLY)**

Delivery Attempt Mo. Day | Time ☐ AM ☐ PM | Employee Signature
Delivery Attempt Mo. Day | Time ☐ AM ☐ PM | Employee Signature
Delivery Date Mo. Day | Time ☐ AM ☐ PM | Employee Signature

☐ WAIVER OF SIGNATURE (Domestic Mail Only) Additional merchandise insurance is void if waiver of signature is requested. I wish delivery to be made without obtaining signature of addressee or addressee's agent (if delivery employee judges that article can be left in secure location) and I authorize that delivery employee's signature constitutes valid proof of delivery.

NO DELIVERY ☐ Weekend ☐ Holiday ____ Customer Signature

**CUSTOMER USE ONLY**
METHOD OF PAYMENT:
Express Mail Corporate Acct. No. X554845

Federal Agency Acct. No. or Postal Service Acct. No.

FROM: (PLEASE PRINT) PHONE (612) 340 2600

DORSEY & WHITNEY LAW FIRM
50 S 6TH ST STE 1500
MINNEAPOLIS MN 55402-1553

1583-700164-4

TO: (PLEASE PRINT) PHONE 202, 254-4001

Associate Gen. Counsel
(General Law)
Dept of Homeland Security
Washington, DC 20528

FOR PICKUP OR TRACKING: Visit www.usps.com or Call 1-800-222-1811

EMS

239/ 1000 F:02 T:

**Maikkula, Myrna**

**From:** trackingupdates@fedex.com
**Sent:** Friday, June 05, 2015 9:22 AM
**To:** Maikkula, Myrna
**Subject:** FedEx Shipment 780768275808 Delivered

---

This tracking update has been requested by:

Company Name: Dorsey & Whitney LLP
Name: Vanessa Szalapski
E-mail: szalapski.vanessa@dorsey.com

Message: PSShip eMail Notification

Saved in NetDocs

---

Our records indicate that the following shipment has been delivered:

Reference: 01583-700164.00004
Ship (P/U) date: Jun 4, 2015
Delivery date: Jun 5, 2015 9:53 AM
Sign for by: R.GILL
Delivery location: Washington, DC
Delivered to: Shipping/Receiving
Service type: FedEx Priority Overnight
Packaging type: FedEx Envelope
Number of pieces: 1
Weight: 0.50 lb.
Special handling/Services: No Signature Required
Deliver Weekday

Tracking number: 780768275808

| Shipper Information | Recipient Information |
|---|---|
| Vanessa Szalapski | US Immigration & Customs Enforce. |
| Dorsey & Whitney LLP | Office of Principal Legal Advisor |
| 50 S Sixth Street | 500 12th St SW, Stop 5009 |
| Suite 1500 | US Dept of Homeland Security - |
| Minneapolis | FOIA |
| MN | Washington |
| US | DC |
| 55402 | US |
| | 20536 |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 9:22 AM CDT on 06/05/2015.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the status of this shipment online, please use the following:
https://www.fedex.com/insight/findit/nrp.jsp?tracknumbers=780768275808&language=en&opco=FX&clientype=ivpodalrt

This tracking update has been sent to you by FedEx on the behalf of the Requestor noted above. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

*package id*
0110077
*ship date*
Thu, Jun 04 2015
*to*
US Immigration & Customs Enforce.
Office of Principal Legal Advisor
US Dept of Homeland Security - FOIA
500 12th St SW, Stop 5009
Washington , DC 20536-5009
United States
202-254-4001
*residential address*
No
*return label*
No
*notification type*
Delivery
*notification recipients*
szalapski.vanessa@do...
maikkula.myrna@dorse...

*from*
Vanessa Szalapski (01583)
Dorsey & Whitney LLP
50 S Sixth Street
Suite 1500
Minneapolis , MN 55402
United States
(612) 492-6743
*billing*
Pro Bono (Challenge)...icans-ICE FOIA Challenge RCA (700164-00004)
*operator*
Myrna Maikkula
612-492-6649
maikkula.myrna@dorsey.com
*create time*
06/04/15, 3:05PM

*vendor*
FedEx
*tracking number*
780768275808
*service*
FedEx Priority Overnight®
*packaging*
FedEx® Envelope
*signature*
Deliver without signature
*courtesy quote*
12.40

*Quote may not reflect all accessorial charges*

©2003-2015 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
FedEx service marks are owned by Federal Express Corporation and are used by permission.
Other product and company names listed are trademarks or trade names of their respective companies.

## Maikkula, Myrna

**From:** trackingupdates@fedex.com
**Sent:** Friday, June 05, 2015 9:22 AM
**To:** Maikkula, Myrna
**Subject:** FedEx Shipment 780768080319 Delivered

Saved in NetDocs

---

This tracking update has been requested by:

Company Name: Dorsey & Whitney LLP
Name: Vanessa Szalapski
E-mail: szalapski.vanessa@dorsey.com

Message: PSShip eMail Notification

---

Our records indicate that the following shipment has been delivered:

Reference: 01583-700164.00004
Ship (P/U) date: Jun 4, 2015
Delivery date: Jun 5, 2015 9:53 AM
Sign for by: R.GILL
Delivery location: WASHINGTON, DC
Delivered to: Shipping/Receiving
Service type: FedEx Priority Overnight
Packaging type: FedEx Envelope
Number of pieces: 1
Weight: 0.50 lb.
Special handling/Services: No Signature Required
Deliver Weekday

Tracking number: 780768080319

| Shipper Information | Recipient Information |
|---|---|
| Vanessa Szalapski | Associate General Counsel |
| Dorsey & Whitney LLP | (General Law) |
| 50 S Sixth Street | 245 MURRAY LN SW |
| Suite 1500 | WASHINGTON |
| Minneapolis | DC |
| MN | US |
| US | 20528 |
| 55402 | |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 9:22 AM CDT on 06/05/2015.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the status of this shipment online, please use the following:
https://www.fedex.com/insight/findit/nrp.jsp?tracknumbers=780768080319&language=en&opco=FX&clientype=ivpodalrt

This tracking update has been sent to you by FedEx on the behalf of the Requestor noted above. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

psship FedEx®

*package id*
0110074
*ship date*
Thu, Jun 04 2015
*to*
Associate General Counsel
(General Law)
245 MURRAY LN SW
WASHINGTON , DC 20528-1002
United States
202-254-4001
*residential address*
No
*return label*
No
*notification type*
Delivery
*notification recipients*
szalapski.vanessa@do...
maikkula.myrna@dorse...

*from*
Vanessa Szalapski (01583)
Dorsey & Whitney LLP
50 S Sixth Street
Suite 1500
Minneapolis , MN 55402
United States
(612) 492-6743
*billing*
Pro Bono (Challenge)...icans-ICE FOIA Challenge RCA (700164-00004)
*operator*
Myrna Maikkula
612-492-6649
maikkula.myrna@dorsey.com
*create time*
06/04/15, 2:46PM

*vendor*
FedEx
*tracking number*
780768080319
*service*
FedEx Priority Overnight®
*packaging*
FedEx® Envelope
*signature*
Deliver without signature
*courtesy quote*
12.40

*Quote may not reflect all accessorial charges*

©2003-2015 Lynch Marks LLC. All rights reserved. PS|Ship™ is a trademark of Lynch Marks LLC.
FedEx service marks are owned by Federal Express Corporation and are used by permission.
Other product and company names listed are trademarks or trade names of their respective companies.

# Exhibit 28

U.S. Department of Homeland Security
500 12th St. SW; STOP 5009
Washington, DC 20536-5009

U.S. Immigration
and Customs
Enforcement

July 7, 2015

Katherine Evans
University of Minnesota Law School
Center for New Americans – 190 W.F. Mondale Hall
229 19th Avenue South
Minneapolis, MN 55455

**RE: 2015-ICAP-00434, 2015-ICFO-02993**

Dear Ms. Evans:

This is in response to your letter dated June 4, 2015, appealing the adverse determination by the U.S. Immigration and Customs Enforcement (ICE), Freedom of Information Act (FOIA) Office in response to your Freedom of Information Act/Privacy Act (FOIA/PA) request seeking:

1. All Risk Classification Assessment (RCA) Detailed Summaries produced by the ICE St. Paul Field Office AOR since the RCA tool was implemented in that jurisdiction;

2. All RCA Detailed Summaries reflecting risk assessments performed on individuals in ICE custody within the St. Paul Field Office AOR and whose Notice to Appear (NTA) was filed with the Bloomington, MN Immigration Court since the RCA tool was implemented, including RCA Detailed Summaries for those arrested in other field offices but whose proceedings changed venue to the St. Paul AOR.

Your appeal dated June 4, 2015, was received on June 8, 2015. Supplemental correspondence regarding your appeal was received via email on June 24, 2015.

A search of the ICE Office of Enforcement and Removal Operations (ERO) conducted in response to your October 15, 2014 request produced one (1) Excel spreadsheet containing records information from the RCA database that was responsive to your request. The spreadsheet was processed under the FOIA, 5 U.S.C. § 552 and the Privacy Act, 5 U.S.C. § 552a. Portions of the spreadsheet were withheld by the ICE FOIA Office under Exemptions (b)(3), (b)(6), (b)(7)(C), and (b)(7)(E) of the FOIA. You have appealed some of the withholdings under Exemptions (b)(6), (b)(7)(C), and (b)(7)(E) as applied to the spreadsheet and the adequacy of the search. In addition, you have requested reconsideration of the denial of your request for a blanket fee waiver if your request was remanded for an additional search.

As was explained in the ICE FOIA Office's letter dated April 9, 2015, ICE FOIA has applied FOIA Exemption (b)(7)(E) to protect from disclosure investigative techniques and procedures, such as internal agency law enforcement case categories and codes. Disclosure of these internal database categories and codes could reasonably be expected to risk circumvention of the law. Upon a complete review of the information withheld by ICE under FOIA Exemption (b)(7)(E) in the initial determination on your FOIA/PA request, the withholding of this information was proper in all respects, and the information is exempt from disclosure under the applicable provisions of 5 U.S.C. § 552 and 5 U.S.C. § 552a cited above.

However, upon complete review of the record, ICE has determined that the subjects' anonymized identity numbers were improperly withheld under FOIA Exemptions (b)(6), (b)(7)(C). Therefore, ICE is remanding your request to the ICE FOIA Office for reprocessing of that information and direct response to you.

As to your appeal of the adequacy of the search, ICE has discussed your original FOIA request with the ICE Office of Enforcement and Removal Operations (ERO), the ICE component responsible for searching the RCA database and determined that your initial FOIA request is unreasonably burdensome. The sample RCA Detailed Summary provided with your appeal is not a type of record independently maintained in an ICE database in the format provided in your sample. It is the product of a certain type of query that must be individually run through the database for each RCA decision. A query involves multiple steps to navigate through the database to produce a RCA Detailed Summary. An individual alien may have multiple RCA assessments.[1] The ERO Office estimates there are approximately 18,000 RCA decisions responsive to the first part of your FOIA request, i.e. RCA decisions originating from the St. Paul, MN AOR since the RCA was implemented in 2013. To search for RCA Detailed Summaries for each of the estimated 18,000 decisions would take approximately 1,500 hours or 37.5 full-time work weeks. Such a search would produce approximately 36,000 pages of records which would then need to be individually reviewed and processed by the ICE FOIA Office before they could be released to you.

As to the second part of your FOIA request, the ERO Office indicates it is not possible to search and produce RCA Detailed Summaries by the location of the immigration court where the NTA was filed or to identify aliens arrested in other AORs whose proceedings changed venue to St. Paul AOR, without independently cross-referencing information contained in other ICE databases.

In an effort to satisfy your request, ICE has produced a spreadsheet containing the RCA decision information the agency is currently capable of producing in spreadsheet form. Without narrowing the scope of your request and potentially tailoring ICE's queries, currently, the only additional RCA information which could be produced in spreadsheet form is limited to Alien number, Alien's First and Last Name, Officer identity number and Supervisor identity number – all information that would be withheld in full under FOIA Exemptions (b)(6) and (b)(7)(C) as the privacy interests of the individuals in the records outweigh any minimal public interest in the disclosure of that information. ICE therefore affirms the adequacy of the search conducted by ICE FOIA.

However, ICE understands that you have initiated a conversation with ICE FOIA via email dated June 24, 2015, regarding possible modification or narrowing of your original FOIA request. In light of the agency's decision, we welcome the opportunity to work with you in narrowing the scope of your original request. Please feel free to contact the ICE FOIA Office in this effort.

As to your fee waiver request on remand, fee waivers are properly granted "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operation or activities of the government and is not primarily in the commercial interest of the requestor." *See* 6 C.F.R. § 5.11(k)(1)(i), (ii). The DHS FOIA regulations at 6 C.F.R. § 5.11(k)(2)-(3) set forth six factors that are examined in determining whether the applicable legal standard for a fee waiver had been met. Those six factors are as follows: (i) whether the subject of the requested records concerns "the operations or activities of the government"; (2) whether the disclosure is "likely to contribute" to an understanding of government

[1] As explained in the RCA PIA, dated April 6, 2012, risk classification assessments are conducted at the time an alien first enters ICE custody but also at various other times triggered by such events as disciplinary infractions committed by the alien, the discovery of new case information, violations of the conditions of release or changes in ICE policies. *See* http://www.dhs.gov/xlibrary/assets/privacy/privacy_piaupdate_EID_april2012.pdf.

operations or activities; (3) whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of a narrow segment of interested persons; (4) whether the contribution to public understanding of government operations or activities will be "significant"; (5) and (6) whether the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure that disclosure is primarily in the commercial interest of the requestor.

The information you have requested may relate to the operations or activities of the government. However, ICE also needs to examine whether the disclosure is "likely to contribute" to the understanding of the public at large regarding specific government operations or activities. The original request does not provide any basis for concluding that disclosure of the requested information would contribute significantly to the public understanding of the operations or activities of the government. As noted in your appeal, there is a Privacy Impact Assessment (PIA) for the RCA dated April 6, 2012, which is publicly available and explains in detail the RCA system, the information it stores and how the system works. Specifically, the PIA states that the RCA is based on the existing ICE policies and guidance regarding detention or release of aliens. ICE detention policies have not changed with the addition of the RCA. Nor does it change the information that ICE collects about aliens. The PIA also states that the RCA automates the assessment process, and produces recommendation whether an alien should be detained or released on bond or under supervision. The RCA produces a custody determination. However, an ICE Officer makes the final custody determination, considering the RCA determination as well as information from other sources. This clearly demonstrates that there is a wide range of information available to the public on the RCA and that it is based on existing ICE policies shows that the disclosure of this information would not be likely to contribute or significantly contribute to the understanding of the public of this particular government activity, particularly as this request is limited to RCA decisions in one geographic area of the country. ICE detention policies are widely known and available to the public. Neither the RCA nor the information it stores changes those policies or guidance. In addition, the PIA also states that there is a substantial amount of personal and sensitive information contained in these RCA Detailed Summaries, such as the names, addresses and criminal history of detainees, that could potentially involve information protected from disclosure under FOIA Exemptions (b)(6) and (b)(7)(C). The possibility that the information contained in these Detailed Summaries being requested could be withheld under the FOIA, limits the public's access to this information and the ability to significantly contribute to the public's understanding of DHS policy.

ICE FOIA previously determined that you had failed to meet requirements 4, 5 and 6. However, upon further review and analysis, it has been determined that you have met factors 5 and 6. Nevertheless, in order for you to be granted a fee waiver, you must meet all six factors cited above. ICE has determined that you have failed to meet factors 2 and 4. Therefore, you have failed to meet the statutory requirements for a fee waiver.

Should you have any questions regarding this appeal remand, please contact ICE at ice-foia@dhs.gov. In the subject line of the email, please include the word "appeal," your appeal number, which is **2015-ICAP-00434**, and the FOIA case number, which is **2015-ICFO-02993**.

Sincerely,

for Debbie Seguin
Chief
Government Information Law Division
ICE Office of the Principal Legal Advisor
U.S. Department of Homeland Security

# Exhibit 29

**From:** "Robert E. Koulish" <rkoulish@umd.edu>
**Subject: follow up re: FOIA Case Number 2015-ICFO-02993**
**Date:** October 20, 2015 at 2:17:21 PM EDT
**To:** "ice-foia@dhs.gov" <ice-foia@dhs.gov>
**Cc:** "Robert E. Koulish" <rkoulish@umd.edu>

Dear ICE FOIA Office,

I am writing to express my appreciation for ICE's response to FOIA Case Number 2015-ICFO-02993. The data will help advance our understanding of the risk classification assessment tool. In particular our analysis is intended to enhance ICE RCA effectiveness as intended by guidelines set forth by the ICE Director's office.

Several categories of data included in the RCA summary received pursuant to a previous request FOIA 2013FOIA17861
are not included in the spreadsheet that was sent in response to FOIA Case Number 2015-ICFO-02993. I am writing to request the following data requested pursuant to 2015-ICFO-02993.

In particular, here's what I need:
1. the following biographic data: cob; sex; age, and I would like the case categories: processing disposition.

2. In addition, my analysis requires data from the following categories:
Recommendation and Decision Results
Special Vulnerabilities
Mandatory Detention per Statutes and Allegations, w/ tables info listing INA charges;
Risk to Public Safety (w tables info):
Criminal Record Evaluation Criteria
Criminal charges and convictions
Other Public Safety Factors Evaluation Criteria
Disciplinary Infraction Information Evaluation Criteria
Risk of Flight:
Home stability
Ties to local community

With much thanks,
Please don't hesitate to call me at 301-405-3175

Sincerely,
Robert

Robert Koulish, Ph.D.
Director, MLAW Programs
Research Associate Professor, Government and Politics
University of Maryland, College Park
College Park, MD. 20742
office: 301-405-3175
cell: 410-925-3894
homepage: mlaw.umd.edu

# Exhibit 30

**From:** <ice-foia@dhs.gov>
**Subject: ICE FOIA Request 2016-ICFO-08141**
**Date:** November 12, 2015 at 1:37:20 PM EST
**To:** <rkoulish@umd.edu>

November 12, 2015

Robert Koulish
University of Maryland
3140 Tydings Hall
College Park, MD 20742

**RE: ICE FOIA Case Number 2016-ICFO-08141**

Dear Mr. Koulish:

This acknowledges receipt of your October 20, 2015, Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), for 1. the following biographic data: cob; sex; age, and I would like the case categories: processing disposition. 2. In addition, my analysis requires data from the following categories: Recommendation and Decision Results Special Vulnerabilities Mandatory Detention per Statutes and Allegations, w/ tables info listing INA charges; Risk to Public Safety (w tables info): Criminal Record Evaluation Criteria Criminal charges and convictions Other Public Safety Factors Evaluation Criteria Disciplinary Infraction Information Evaluation Criteria Risk of Flight: Home stability Ties to local community. Your request was received in this office on November 12, 2015.

After careful review of your FOIA request, we determined that your request is too broad in scope, did not specifically identify the records which you are seeking, or only posed questions to the agency. Records must be described in reasonably sufficient detail to enable government employees who are familiar with the subject area to locate records without placing an unreasonable burden upon the agency. For this reason, §5.3(b) of the DHS regulations, 6 C.F.R. Part 5, require that you describe the records you are seeking with as much information as possible to ensure that our search can locate them with a reasonable amount of effort. Whenever possible, a request should include specific information about each record sought, such as the date, title or name, author, recipients, and subject matter of the records, if known, or the ICE program office you believe created and/or controls the record. The FOIA does not require an agency to create new records, answer questions posed by requesters, or attempt to interpret a request that does not identify specific records.

Please resubmit your request containing a reasonable description of the records you are seeking. Upon receipt of a perfected request, you will be advised as to the status of your request.

If we do not hear from you within 10 days from the date of this letter, we will assume you are no longer interested in this FOIA request, and the case will be administratively closed. Please be advised that this action is not a denial of your request and will not preclude you from filing other requests in the future.

Your request has been assigned reference number **2016-ICFO-08141**. Please refer to this identifier in any future correspondence. To check the status of an ICE FOIA/PA request, please visit http://www.dhs.gov/foia-status. Please note that to check the status of a request, you must enter the 2015ICFO-XXXXX or 2016-ICFO-XXXXX tracking number. You may contact this office at (866) 633-1182. Our mailing address is 500 12th Street, S.W., Stop 5009, Washington, D.C. 20536-5009.

Sincerely,

ICE FOIA Office

Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
Telephone: 1-866-633-1182
Visit our FOIA website at www.ice.gov/foia

# Exhibit 31

**From:** "Robert E. Koulish" <rkoulish@umd.edu>
**Subject: FOIA Case No 2015-ICFO-02993**
**Date:** November 19, 2015 at 2:34:09 PM EST
**To:** ICE-FOIA@ice.dhs.gov

Dear ICE FOIA Office,

*[At 2:07 pm on 11/18/15 I sent an email referencing 2015-ICFO-03004 and 2016-ICFO-08141. Please disregard that email, as it had an incorrect reference number. Please accept and consider this email in response to 2016-ICFO-08141/2015-ICFO-02993.]*

I am writing regarding FOIA Case Number 2015-ICFO-02993. In our original FOIA request dated October 15, 2014, we requested copies of the RCA Detailed Summaries for ICE arrestees in the St. Paul, Minnesota field office area of responsibility. In response, your office sent us a spreadsheet with information derived from the RCA Detailed Summaries, with a significant amount of information redacted. The spreadsheet included only 31 data fields, instead of data from all fields that appear on an RCA Risk Summary.

We appealed the use of exemptions relating to some of those redactions (Appeal No. 2015-ICAP-00434). DHS determined that the subjects' anonymized identity numbers should not have been withheld and remanded the request to your office for reprocessing, but we have not received any further information from you. Please produce a revised copy of the spreadsheet with these anonymized identity numbers.

The appeal also noted that "[w]ithout narrowing the scope of your request and potentially ***tailoring ICE's queries***, currently, the only additional RCA information which could be produced ***in spreadsheet form*** is limited to" information that DHS/ICE states is exempt from disclosure. DHS encouraged us to contact your office to work on "possible modification or narrowing" of the scope of our original request, and specifically stated "we welcome the opportunity to work with you in narrowing the scope of your original request."

We are aware that there are additional data fields, because ICE previously produced RCA data to me (in RCA Summary format) with significantly more data than the 31 fields of the spreadsheet. (Request 2013-FOIA-17861.) Based on several different public officials' descriptions of the RCA tool, we believe that all of the data exist electronically within the system, and can be output from the system in different formats (including the RCA Summary and spreadsheet format).

We would like to work with you on obtaining this data in an electronic format, even if that format is different than a single spreadsheet. For example, we would be willing to discuss receiving data in multiple spreadsheets or in some other electronic format. We would also be willing to discuss narrowing the parameters for the subjects at issue, if that would allow ICE to export the data. We request clarification on how "tailoring ICE's queries" could result in more data.

On October 20, 2015, in response to the invitation to follow up with ICE FOIA about the information provided, I asked that ICE produce the additional data fields:

1. The following biographic data:

a. Cob
b. Sex
c. age

2. Case categories:

d. Processing disposition
e. Recommendation and Decision Results
f. Special Vulnerabilities
g. Mandatory Detention per Statutes and Allegations, w/ tables info listing INA charges;
h. Risk to Public Safety (w tables info);

i. Criminal Record Evaluation Criteria;
ii. Criminal charges and convictions;
iii. Other Public Safety Factors Evaluation Criteria;

i. Disciplinary Infraction Information Evaluation Criteria;
j. Risk of Flight:

iv. Home stability
v. Ties to local community

In response to that request, I received an email with the subject "ICE FOIA Request 2016-ICFO-08141" dated November 12, 2015. That email stated that my request was too broad and asked me to resubmit it within 10 days. I write to clarify that my email dated October 20, 2015 was not a new FOIA request, but was to ask for additional data fields in response to a prior request (No. 2015-ICFO-02993) and as specifically recommended by DHS. (I am attaching the prior FOIA request and appeal decision for your convenience.)

In conclusion, I ask for three things:

1. Please reproduce the spreadsheet with the anonymized ID numbers, as required by the appeal decision.
2. Please reproduce the data with the new data categories listed above.
3. If it is not possible to produce those new categories of data in the current spreadsheet format, please contact us to further discuss possible other formats for producing the data, and/or how we could narrow the search and tailor ICE's queries to obtain additional data (as the appeal decision letter recommended that we work together to tailor the search).

Please don't hesitate to call me at 301-405-3175 if you think a phone call to discuss these issues would be productive. I look forward to hearing from you.

Sincerely,

Robert Koulish, Ph.D.
Director, MLaw Programs
College of Behavioral and Social Sciences
Joel J. Feller Research Professor
University of Maryland

College Park, MD 20742
Lecturer at Law at UMB Carey School of Law
ph: 301-405-3175
email: rkoulish@umd.edu
homepage:
mlaw.umd.edu